IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL LAIDIG, *et al.*, ) | |
| ) | Case No.: 1:22-cv-01296 |
| Plaintiffs, ) | |
| ) | Hon. Mary M. Rowland |
| v. ) | |
| ) | |
| GREATBANC TRUST COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**BRUNNER DEFENDANTS'**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

I.  **Introduction**

As a general rule, shareholders who sell stock to an ESOP owe no ERISA fiduciary obligations and bear no ERISA liability *even if* a participant could show that the ESOP's trustee imprudently caused the ESOP to pay the sellers more than "adequate consideration" for their stock. *See* 29 U.S.C. § 1108(e) (permitting ESOP stock transactions if for "adequate consideration"). This is because Congress made a deliberate decision, after nearly a decade of debate, to exclude selling shareholders from general liability for allegedly improper ERISA-plan transactions. The Brunner Defendants, as alleged former shareholders who sold stock to the Plan[1] in a non-fiduciary capacity, are the exact type of non-fiduciary parties that Congress decided to exclude from general liability under ERISA.

These fundamental principles are extremely important to understanding why Plaintiffs' claim against the Brunner Defendants fails as a matter of law. Because Plaintiffs cannot hold the Brunner Defendants generally liable, they try to take advantage of a very narrow type of ERISA

---

[1] "Plan" refers to the Vi-Jon Employee Stock Ownership Plan.

claim that allows a court to fashion strictly equitable remedies against non-fiduciaries, only if such remedies would be appropriate to redress violations of ERISA. *See* 29 U.S.C. § 1132(a)(3). But the Supreme Court has made clear that equitable remedies against non-fiduciaries are appropriate only if tied directly to *ERISA plan assets* that are *currently in the possession* of the non-fiduciaries. *See id.*; *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000); ECF 44 at 6-7. In addition, the non-fiduciary must have received the ERISA plan assets with *knowledge that the transfer of plan assets was illegal or wrongful*.

Here, it is uncontested that the Complaint does not allege that John Brunner, individually, owned *any* stock in any Vi-Jon entity or received *any* Plan assets. With respect to the Brunner Trust, which is a separate legal entity, the Complaint alleges on only "information and belief"[2] that the Brunner Trust "received cash and/or notes for its interest in" some unspecified Vi-Jon entity. ECF 1, ¶ 26. Plaintiffs do not identify the Vi-Jon entity whose stock the Brunner Trust allegedly owned and do not allege that the Brunner Trust received *Plan* assets.[3]

Because the Complaint does not allege the most basic requirements to state a plausible ERISA claim for equitable relief against a non-fiduciary, Plaintiffs' claim against the Brunner Defendants should be dismissed. Allowing Plaintiffs to proceed despite these fundamental pleading deficiencies would violate Congress's clear intentions to cabin non-fiduciary liability under ERISA to very narrow circumstances Plaintiffs have not shown are present here.

## II. **Plaintiffs perpetuate myths about ESOPs.**

As a foundational matter, Plaintiffs' Response confirms that Plaintiffs have premised their

---

[2] Plaintiffs' Response does not distinguish between allegations made on information and belief and other allegations in the Complaint.
[3] The Brunner Defendants are referred to generally as "selling shareholders" in this brief. But the Complaint does not allege that John Brunner sold any stock. *See generally* ECF 1.

claims on fundamentally incorrect assertions about ESOPs and ERISA law. The entire Argument section begins with a myth: that employer contributions to an ESOP should be considered employee compensation, as if this case is about protecting employee wages. This misstatement traces back to a Seventh Circuit case *from 1948*—more than 25 years before ERISA and before ESOPs were federally permissible—that merely stated that benefits provided by employers are not a gift. *See* ECF 55 at 9 (discussing *Reich v. Valley Nat. Bank of Ariz.*, 837 F. Supp. 1259, 1286–87 (S.D.N.Y. 1993) (citing *Inland Steel Co. v. NLRB*, 170 F.2d 247 (7th Cir. 1948), *cert. denied*, 336 U.S. 960 (1949))). *But no one is arguing that ESOPs are a gift.* Rather, the Brunner Defendants explained that an ESOP is a very specific type of benefit plan that is subject to nuanced regulations and that derives its value from hard work of the plan sponsor's employees. *See* ECF 44, at 2-3, n.2. These characteristics show that Plaintiffs cannot hold non-fiduciaries (like the Brunner Defendants) liable if they do not sell stock for some lower price Plaintiffs might prefer. *Id.* at 28 (explaining that an ESOP is exempt from the requirement for a "fair return on employer stock"). This case is not about wages and it is not about whether the Brunner Defendants were obligated to accept a lowball price.

### III. <u>Argument</u>

#### A. Plaintiffs' claim against the Brunner Defendants does not seek "appropriate equitable relief" and thus fails as a matter of law.

Plaintiffs' § 502(a)(3) claim against the Brunner Defendants requires Plaintiffs to plead *facts* to show that they are seeking "appropriate equitable relief." 29 U.S.C. § 1132(a)(3); *see also* ECF 55 at 8 (admitting Plaintiffs must plead "sufficient factual matter"), 23 (admitting Plaintiffs can state a claim under § 502(a)(3) for only "appropriate equitable relief"). To satisfy this standard, Plaintiffs must plead facts demonstrating that their claim is equitable in nature and the remedies they seek—for restitution, disgorgement, constructive trust, and an accounting of

profits—are actually equitable, as opposed to legal. *See* ECF 55, pp. 26-28.

### 1. Appropriate equitable relief is a pleading requirement.

Plaintiffs' Response contests cases in the Brunner Defendants' opening brief, which held that a complaint must plead the factual basis for appropriate equitable relief. These decisions are grounded in ERISA's express statutory text, which limits a § 502(a)(3) claim to only "appropriate equitable relief." This language introduces a *statutory* limitation on the claim itself, which must be enforced, even at the pleading stage. Congress decided to preclude claims against non-fiduciaries for legal remedies to limit non-fiduciary liability.[4] As the Supreme Court explained, ERISA's limit on non-fiduciary liability was "certainly not nonsensical," because ERISA "resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

Consistent with these principles, many courts have, as Plaintiffs admit, required facts in a complaint to demonstrate that a non-fiduciary possesses traceable ERISA-plan funds. *See, e.g., Crawford & Co. Med. Ben. Tr. v. Repp*, No. 11 C 50155, 2012 WL 716921, at *4 (N.D. Ill. Mar. 6, 2012) (dismissing complaint because funds "were not traceable to [that] defendant"), *cause dismissed* (May 30, 2012); *see* ECF 55 at 29. As the *Del Castillo* court held, a § 502(a)(3) claim requires plaintiffs to plead traceability for each category of funds they seek to recover. There, the plaintiffs alleged that some funds were "traceable," but the primary relief the plaintiffs had requested, which was a return of funds the non-fiduciaries received, was not alleged to be

---

[4] Early bills had provisions that would have imposed personal liability on a party in interest, including a non-fiduciary, who participates in a prohibited transaction. *See, e.g.,* ERISA-LH 5, 1973 WL 172970 (A.&P.L.H.), 97; ERISA-LH 89, *184 (1974). Committee of Conferees staff ultimately recommended that "[t]he conferees . . . adopt the approach of the House bill ***and not provide civil liability for parties-in-interest***." ERISA-LH 71, *110-11 (1974) (emphasis added). ERISA, as passed, does not provide for civil liability for parties in interest.

traceable or "linked to a specific account. " *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *8 (N.D. Cal. Dec. 16, 2019); ECF 55 at 29-30. ERISA does not permit recovery of general assets from a non-fiduciary, so the *Del Castillo* court dismissed the plaintiffs' claims relating to the non-traceable compensation.

In their Response, Plaintiffs fail to adequately respond to other cases the Brunner Defendants cited, like *Urakhchin v. Allianz Asset Management of America, L.P.*, No. SACV 15-1614-JLS (JCGx), 2016 WL 4507117, at *8 (C.D. Cal. Aug. 5, 2016). In *Urakhchin*, the court dismissed a § 502(a)(3) claim for failure to plead traceability. ECF 55 at 30.[5] Plaintiffs argue that *Urakhchin* is distinct, because that court concluded the plaintiffs *also* had failed to plead facts showing that the non-fiduciary defendants had knowledge of circumstances rendering the transaction unlawful. *See id.* The fact that the complaint in *Urakhchin* suffered from two different pleading flaws did not mean that one flaw was not enough. And, as discussed later in this brief, Plaintiffs here also have failed to sufficiently plead that the Brunner Defendants had knowledge of an unlawful transaction. What *Urakhchin* clearly supports is the sensible requirement that Plaintiffs must plead *facts* to show that they are seeking equitable, not legal, relief. *See In re: Prime Healthcare ERISA Litig.,* 8:20-CV-01529-JLS-JDE, 2021 WL 3076649, at *9 (C.D. Cal. July 16, 2021) (dismissing (a)(3) claim for failure "to allege that the damages sought can be traced to 'particular funds or property in the defendant's possession'"); *Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC*, 3:20-CV-0077-D, 2020 WL 6321919,

---

[5] The *Urakhchin* court also rejected the argument Plaintiffs advance here about a supposed "limited exception" to the traceability requirement for an accounting of profits. *Compare Urakhchin*, 2016 WL 4507117 at *8, *with* ECF 55 at 28. That court observed that an accounting of profits is ordinarily considered legal relief when sought against a non-fiduciary, thus rendering the "limited exception" to the traceability requirement inapplicable to a § 502(a)(3) claim against a non-fiduciary. *Id.* This is consistent with the rule that equitable remedies are different against non-fiduciaries as compared to fiduciaries.

at *5 (N.D. Tex. Oct. 28, 2020) (dismissing (a)(3) complaint that did not allege "that the overpayments can 'clearly be traced to funds or property in the defendant's possession'").

The cases Plaintiffs rely on in their Response involved complaints with markedly different allegations. In *Will v. General Dynamics Corp.*, No. CIV. 06-698-GPM, 2009 WL 3835883, at *1, 5 (S.D. Ill. Nov. 14, 2009), the plaintiffs alleged that certain defendants were fiduciaries who had "allowed the Plans to pay unreasonable fees and expenses" to consultants or investment advisors, also alleged to be fiduciaries, and they sought a constructive trust on, and restitution of, "profits" the latter *fiduciaries* received from alleged prohibited transactions. *See* ECF 55 at 28 (citing *Will*). This is inapposite because the *Will* defendants were fiduciaries, and ERISA permits different equitable claims and remedies against fiduciaries. *See, e.g.*, 29 U.S.C. § 1109(a) (fiduciary can be liable for profits); *CIGNA Corp. v. Amara,* 563 U.S. 421, 438 (2011) (discussing traditional monetary remedy of surcharge available against a fiduciary trustee). Here, because Plaintiffs did not allege a fiduciary-breach claim against the Brunner Defendants, and they are not seeking profits from fiduciaries.

In *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950 (W.D. Wis. 2011), the complaint sought "*particular funds* . . . in the [non-fiduciary defendants'] possession" that "belong[ed] in good conscience to the [plan]." *See Chesemore*, 770 F. Supp. 2d at 956, 960, 978 (emphasis added). Similarly, in *Fish v. GreatBanc Trust Company*, 109 F. Supp. 3d 1037, 1041 (N.D. Ill. 2015), the complaint sought funds that were "directly traceable" to plan fiduciaries and an ESOP transaction. *Fish*, 109 F. Supp. 3d at 1042; *see also Gamino v. SPCP Grp., LLC*, No. 5:21-CV-01466-SB-SHK, 2022 WL 336469, at *1, 4 (C.D. Cal. Feb. 2, 2022) (explaining plaintiff had identified several different funds the defendant received from the plan in exchange for selling his shares of stock to the ESOP); *see* ECF 55 at 24 (citing *Gamino*). Moreover, the

*Fish* court distinguished the complaint in *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293, at *2 (N.D. Ill. Aug. 9, 2010), which, as the Brunner Defendants explained in their opening brief, and the *Fish* court observed, confirms that Plaintiffs must plead facts showing that the Brunner Defendants have Plan assets. *See* ECF 55 at 24 (citing *Neil*); *see also* ECF 44 at 9; *Fish*, 109 F. Supp. 3d at 1041-42.

The notion that *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), which Plaintiffs cite, relieves Plaintiffs of the obligation to plead facts showing that Brunner Defendants received and possess Plan assets is meritless.[6] *See* ECF 55 at 28. The Supreme Court in *Knudson* acknowledged that the plaintiff must first establish his entitlement to "a constructive trust *on particular property* held by the defendant" before he might obtain other relief, like an accounting for profits obtained through use of that particular property. *Knudson*, 534 U.S. at 214 n.2 (2002). The Supreme Court's earlier decision in *Mertens* is more to the point because the Court upheld the dismissal of counts in a complaint for failure to *plead* appropriate equitable relief, as opposed to monetary damages, in the first instance. 508 U.S. 248, 253 (1993).

The Brunner Defendants are not personally or generally liable under ERISA. Plaintiffs have not pleaded that they are seeking the return of particular, identifiable Plan assets in the Brunner Defendants' possession. The Court can dismiss the Brunner Defendants on this basis.

### 2. Plaintiffs' request for a constructive trust and restitution is not equitable in nature.

As noted above, the Complaint alleges on only "information and belief" that the Brunner Trust "received cash and/or notes for its interest in Vi-Jon." ECF 1, ¶ 26. Plaintiffs nowhere

---

[6] This Court does not have to consider Plaintiffs' argument about the necessity of "complete segregation" because Plaintiffs have nowhere alleged Brunner Defendants received *any* Plan assets *at all*. ECF 55 at 28-29; *see also* ECF 44 at 10-11.

7

allege that these were Plan assets or identify the Vi-Jon entity. *See generally* ECF 1. Nor do they allege that John Brunner himself owned any stock or received Plan assets. *Id.*, ¶ 25. Yet Plaintiffs' Response argues that all the Court needs to do is look at the label they used to determine that they are seeking equitable relief against the Brunner Defendants because 'constructive trust,' 'restitution,' and 'disgorgement' are terms that can refer to equitable remedies. *See* ECF 55 at 26-30. Labels are irrelevant under (a)(3) because, for example, "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." *Knudson*, 534 U.S. at 211, n.1; *see also Amara*, 563 U.S. at 439; *Phelan v. Wyo. Associated Builders*, 574 F.3d 1250, 1254 (10th Cir. 2009). Whether relief is "equitable" or "legal" requires *analysis* of the relief sought. *See Mertens*, 508 U.S. at 255 (holding that a claim seeking to make the plan whole for losses was not equitable under (a)(3) because such relief, at its core, sought "compensatory damages – monetary relief for all losses" (emphasis omitted)); *see also Knudson*, 534 U.S. at 212 (explaining that "not all relief falling under the rubric of restitution is available in equity").

As Plaintiffs admit, the *equitable* versions of restitution focus on "a subsequent holder" of trust property—like a painting, for example—which a court could order returned to an original owner pursuant to principles of equity. ECF 55 at 27; *see also, e.g.*, *Knudson*, 534 U.S. 204 at 213 (describing "restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff *could clearly be traced to particular funds or property* in the defendant's possession" (emphasis added)). Plaintiffs argue that they are seeking from the Brunner Defendants "ill-gotten funds that were the property of the ESOP," but to Plaintiffs, that means that they want the Brunner Defendants to pay *some* money to the Plan—not the "painting," using the analogy above.

8

*Compare* ECF 55 at 27-28, *with* ECF 44 at 11 (explaining that the Complaint concedes that Brunner never held Plan assets and fails to allege that the Brunner Trust did or does); *see also generally* ECF 55 (identifying no factual allegation in Complaint alleging either Brunner Defendant received Plan assets).

Plaintiffs' reliance on labels and superficial discussions of cases seeks a watered-down standard that would upset Congress's decision to generally keep non-fiduciaries free from the types of claims Plaintiffs brought. Plaintiffs have not stated a plausible claim against the Brunner Defendants for equitable relief. *Great-W. Life & Annuity Ins. Co.*, 534 U.S. at 213 (explaining that "not all relief falling under the rubric of restitution is available in equity").

3. **Plaintiffs' requests for declaratory relief, "other appropriate relief," and rescission fail.**

Plaintiffs ignored, and thus concede, the argument that their generic request for "other appropriate equitable relief" cannot support their § 502(a)(3) claim against the Brunner Defendants. *Compare generally* ECF 55, *with* ECF 44 at 8-9; *see also, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to argument concedes it and results in waiver). They argue, however, that the Court should not focus too much on the type of relief they seek because, under certain circumstances, a request for improper relief does not defeat a claim. ECF 55 at 30-31. Plaintiffs misconstrue the Brunner Defendants' argument. An element of Plaintiffs' *statutory* claim is appropriate equitable relief; the statute and case law demand that Plaintiffs identify proper relief in their pleading and support that relief with facts. The non-ERISA cases Plaintiffs cited to justify their failure to plead appropriate equitable relief are irrelevant. *See Bontkowski v. Smith*, 305 F.3d 757, 760, 763 (7th Cir. 2002) (alleging *non-ERISA* claims for conspiracy and perhaps conversion and explaining that district court should not dismiss complaint based on demand for improper relief); *Aku v. Chi. Bd. of Educ.*, No. 17-CV-

9

1226, 2018 WL 2984819, at *10 (N.D. Ill. June 14, 2018) (construing request for injunctive relief as form of relief requested, not claim); ECF 55 at 30-31 (citing *Bontkowski* and *Aku*). Plaintiffs also ignore the case the Brunner Defendants cited in their opening brief on this score. *Compare* ECF 55 at 30-31, *with* ECF 44 at 8.

Plaintiffs' discussion of rescission similarly misses the mark. Plaintiffs argue that "rescission," in the abstract, is a form of equitable relief. *See* ECF 55 at 31-32. But they ignored—and thus concede— the Brunner Defendants' argument that their Complaint does not plead facts to plausibly state that rescission is an appropriate equitable remedy *in this case*. *See* ECF 44 at 14-15. Plaintiffs did not sue all the parties to the ESOP Transaction, they do not seek to return all parties to the Transaction to their prior positions, and they have alleged no fraudulent or material misrepresentations that would support a claim for equitable rescission here. *See generally* ECF 1. Plaintiffs' claim against the Brunner Defendants should be dismissed on this basis, too.

### B. Plaintiffs' have alleged no facts to show the Brunner Defendants had knowledge of illegal conduct.

Plaintiffs also failed to adequately plead that the Brunner Defendants had knowledge that they were receiving Plan assets illegally. The Response confirms that Plaintiffs' 'knowledge' theory against the Brunner Defendants relies on only three factual allegations: (1) the Brunner Trust owned a minority stake in an *unspecified*, Vi-Jon-affiliated entity; (2) John Brunner, individually, sat on the board of an *unspecified*, Vi-Jon-affiliated entity; and (3) the Brunner Defendants allegedly knew of Berkshire's alleged unsuccessful attempt in 2014 (more than six years before the ESOP Transaction) to sell an *unspecified*, Vi-Jon-affiliated entity for the same price as the ESOP Transaction. *See* ECF 55 at 3, 4. Plaintiffs do not specify the particular Vi-Jon entities involved. *See generally* ECF 1; *see also* ECF 44 at 4 n.7 (explaining that Plaintiffs

10

deliberately disregard the corporate structures of the various Vi-Jon entities and attempt to lump them all together as "Vi-Jon"). Nor do they allege facts to show that the Brunner Defendants received financial information about the Vi-Jon entity that was subject to the ESOP Transaction. *See, e.g.*, ECF 55 at 10 (alleging GreatBanc caused the Plan to effect the ESOP transaction).

These allegations are not enough to plausibly allege that *six years later*, the Brunner Defendants had knowledge that they received Plan assets illegally. Importantly, Plaintiffs gravely misunderstand what is required to make an ESOP transaction illegal. Under ERISA, an ESOP stock transaction is permissible if it is for "adequate consideration," which ERISA defines as "fair market value of the asset as determined in good faith" by the ESOP's trustee, in this case, GreatBanc. 29 U.S.C. §§ 1108(e), 1102(18). This exemption focuses on the trustee's *conduct*, or *process*, in evaluating and approving the price that an ESOP pays for stock. *See, e.g., Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *62 (N.D. Ill. Sept. 1, 2016) ("ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing."); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983). Because of this, and as this District Court once explained, a fiduciary does not violate the adequate consideration exemption "even if the consideration paid differs somewhat from what the court determines to be adequate consideration." *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 936 (N.D. Ill. 1998) (citations omitted).

Thus, the focus of the adequate consideration exemption is *not* solely on the price; it is on the trustee's process in determining that price. In an ESOP stock transaction, a non-fiduciary seller, who is a *counterparty* to the transaction, might know, or have reason to know, that a transaction is illegal only if the non-fiduciary has knowledge of a lapse in the ESOP trustee's

11

process that falls to the level of a breach of fiduciary duty (or if there was obvious misconduct, like collusion or fraud). The Brunner Defendants, as alleged selling shareholders, are not alleged to have had any involvement whatsoever with GreatBanc or any knowledge of GreatBanc's process—or the process of GreatBanc's independent advisors that assisted with valuation issues. Additionally, as the co-defendants have argued in their briefs, which the Brunner Defendants adopt, Plaintiffs failed to plead facts to plausibly state that GreatBanc breached fiduciary duties in the first instance. *See* ECF 42-1 at 6-13; ECF 46 at 6-10.

Perhaps anticipating that this Court might search their Complaint for nonexistent allegations of precisely what the Brunner Defendants knew about the trustee's process, Plaintiffs instead argue that if the Brunner Defendants had knowledge of a "prohibited transaction," then they had knowledge of illegal conduct sufficient to state a § 502(a)(3) claim. ECF 55 at 24. This is wrong. In *Harris*, the Supreme Court repeatedly characterized the knowledge a non-fiduciary must have under § 502(a)(3) not as knowledge of a "prohibited transaction," but as knowledge of actual wrongfulness.[7] *Harris Trust*, 530 U.S. at 250-53; *see also id*. (requiring "actual or constructive knowledge of the circumstances that rendered [a fiduciary's] transaction ***unlawful***," and a third party who obtains property "through means or under circumstances which render it ***unconscientious***" for the holder to retain the property, and "a transferee of ***ill-gotten*** trust assets," and a transferee who "knew or should have known of . . . the circumstances that rendered the transfer ***in breach of the trust***" (emphasis added)).[8]

---

[7] This is consistent with the common law of trusts. The Restatement (Second) of Trusts consistently demands knowledge of actual breaches of trust, illegal activity, or misconduct for a third party to be liable to a trust beneficiary. Restatement (Second) of Trusts § 297, cmt. c (1959).

[8] Plaintiffs' reliance on *Neil v. Zell*, 753 F. Supp. 2d 724 (N.D. Ill. 2010) also is misplaced. *See* ECF 55 at 24. That opinion concerns a partial motion for summary judgment the plaintiffs filed against the plan fiduciary, and the Court set forth "[t]he standard for establishing

Under ERISA, a prohibited transaction is not wrongful in-and-of-itself because, as ERISA's prohibited-transactions section states, transactions are prohibited "***[e]xcept as provided in section [4]08*** . . ." 29 U.S.C. § 1106(a) (emphasis added). ERISA § 408, which is entitled "[e]xemptions from prohibited transactions," sets forth an "[e]numeration of transactions exempted from Section 1106 prohibitions." 29 U.S.C. § 1108(b). This dual statutory scheme begins by prohibiting "virtually all transactions between a plan and a party in interest," but tempers those prohibitions with exemptions. *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008). Courts have thus recognized that § 406 prohibitions are not "per se unlawful." *Martin v. Feilen*, 965 F.2d 660, 670 (8th Cir. 1992); *see also* 29 U.S.C. § 1103(a); *Donovan*, 716 F.2d at 1465 (prohibited transactions rules are not per se applicable to ESOP fiduciaries); *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995) (only "without a § 408 exemption, a per se violation of ERISA exists").

So, too, have courts held that knowledge of a prohibited transaction is not the same as knowledge of illegal conduct required for a § (a)(3) claim. *See Gamino*, 2022 WL 336469 at *4 (holding that "[m]ere knowledge that a transaction is (or might be) prohibited" is insufficient to state a claim under ERISA § 502(a)(3)); ECF 55 at 24 (citing *Gamino*); *Del Castillo*, 2019 WL 6841222 at *6 (holding that (a)(3) requires knowledge that an exemption does not apply, not just knowledge of a prohibited transaction).

In this case, Plaintiffs' core theory implicitly acknowledges that the ESOP transaction was not wrongful merely because it was prohibited; Plaintiffs plead that it was prohibited *and allegedly not subject to the adequate-consideration exemption*. To plausibly state that the

---

*fiduciary* liability," not *non-fiduciary* liability. *Neil*, 753 F. Supp. 2d at 732. Plaintiffs' argument that the Court's analysis addresses the standard for liability for non-fiduciaries seller shareholders to alleged prohibited transactions is simply incorrect.

13

Brunner Defendants knew or should have known of illegality, Plaintiffs have to plead facts to show that the Brunner Defendants had knowledge that GreatBanc was *acting* in bad faith when assessing fair market value, per the adequate consideration exemption. *See, e.g., Del Castillo*, 2019 WL 6841222 at *6 (requiring knowledge that an exemption does not apply to plead an (a)(3) claim); *Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*, No. CV 15-1435, 2016 WL 3087360, at *2 (E.D. Pa. June 2, 2016) (explaining plaintiffs must plead facts to show non-fiduciary defendants knew or should have known that the ESOP Transaction was not simply a prohibited transaction under ERISA § 406(a), but that it was "wrongful under ERISA"); *see also* ECF 44 at 11-14.

Plaintiffs' minimal allegations fall well short of this pleading standard and are a far cry from the allegations in the authority Plaintiffs cited. *See e.g., Gamino*, 2022 WL 336469 at *4 (explaining plaintiff alleged that non-fiduciary seller was longtime investor, aware of a 419% recent increase in price and substantial financial distress and poor performance); *Lysengen on behalf of Morton Buildings, Inc. Leverage Emp. Stock Ownership Plan v. Argent Tr. Co.*, No. 20-1177, 2022 WL 854818, at *5 (C.D. Ill. Mar. 22, 2022) (observing plaintiff plead that non-fiduciary sellers were family members who ran company, had influential positions of power, were directors and significant shareholders, had direct knowledge of various allegedly suspicious valuations of the company, and were involved in the details of the ESOP transaction; ECF 55 at 26 (citing *Lysengen*).

In this case, Plaintiffs are trying to do precisely what Congress determined ERISA does not permit—they are trying to hold the Brunner Defendants, as non-fiduciary sellers, liable. This Court should require more before allowing Plaintiffs' claim to proceed.

**IV.** <u>**Conclusion**</u>

14

For all of the reasons set forth in this and the Brunner Defendants' opening brief, the Complaint should be dismissed as against the Brunner Defendants.

FAEGRE DRINKER BIDDLE & REATH LLP

DATE:  August 10, 2022

 /s/ *Richard J. Pearl*
Richard J. Pearl
320 S. Canal St., Suite 3300
Chicago, Illinois 60606
Telephone: (312) 569-1000
rick.pearl@faegredrinker.com

Stephanie L. Gutwein
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
stephanie.gutwein@faegredrinker.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on August 10, 2022, and is being served via the court filing system on all parties registered in the above-captioned matter.

*/s/ Richard J. Pearl*