## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Paul Laidig, et al. | |
| Plaintiffs, | |
| v. | Case No. 22-cv-1296 |
| GreatBanc Trust Company, et al. | Judge Mary M. Rowland |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Paul Laidig, Peter Lewis, and Michael Robbins are or were employees of Vi-Jon, a manufacturer of personal care products including hand sanitizer, and are participants in Vi-Jon's employee stock ownership plan (the Plan). They bring a putative class action complaint alleging that, in 2020, Defendants GreatBanc Trust Company, Berkshire Fund VI, LP (Berkshire), John Brunner, and the John G. Brunner Revocable Trust violated the Employee Retirement Income Security Act (ERISA) by causing and/or knowingly participating in the transaction leaving Vi-Jon 100% employee-owned. Defendants have all moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [42]; [43]; [45]. For the reasons explained below, this Court denies GreatBanc's motion to dismiss [42], denies in large part the Brunner Defendants' motion to dismiss [43], and denies Berkshire's motion to dismiss [45].

## I. Background

### A. The Plan

Non-party Vi-Jon manufactures personal care products including hand sanitizer. [1] ¶ 7. Vi-Jon established the Plan with an effective date of January 1, 2020. *Id.* ¶ 11. According to Plaintiffs, the Plan constitutes an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" (ESOP)[1] under 29 U.S.C. § 1007(d)(6). *Id.* ¶ 12.

In August 2020, in a series of related transactions (the ESOP Transaction), Defendant Berkshire and the Brunner Defendants sold Vi-Jon to the Plan making Vi-Jon a 100% employee-owned company as the Plan's participants are Vi-Jon's employees. *Id* ¶ 9.

Through the ESOP Transaction, the Plan acquired 1,203,711 shares of Vi-Jon stock, representing 100% of the issued shares, for a total of $398,512,583. *Id.* ¶ 14. The Plan did not possess capital prior to the ESOP Transaction and therefore borrowed 100% of the purchase price; as a result, the Plan became indebted to the company for the outstanding principal and interest, to be paid over forty-nine years. *Id.* The Plan releases shares of stock to participant accounts in proportion to the amount of the total debt paid each year. *Id.* The ESOP Transaction closed on or around August 20, 2020. *Id.*

As of December 31, 2020, 1,031 individuals participated in the Plan with shares allocated to their individual accounts. *Id.* ¶ 15. Under the Plan and ERISA,

---

[1] An ESOP is an employee stock ownership plan and is subject to ERISA. *Summers v. State St. Bank & Tr. Co.*, 453 F.3d 404, 405 (7th Cir. 2006).

participants may receive a retirement benefit based on the value of the shares allocated to their accounts upon retirement. *Id.*

### B. The Parties

Plaintiff Paul "David" Laidig resides in Tennessee and has worked for Vi-Jon or its predecessor companies for thirty-five years. *Id.* ¶ 16. Laidig holds company shares in his individual account in the Plan and is a vested participant in the Plan as defined under 29 U.S.C. § 1002(7). *Id.* Plaintiff Peter Lewis also lives in Tennessee, has worked for Vi-Jon or its predecessor companies for twenty-seven years, holds company shares in his individual account in the Plan, and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7). *Id.* ¶ 17. Plaintiff Michael Robbins lives in Tennessee, worked for Vi-Jon between 2018 and 2021, holds company shares allocated to his individual account in the Plan, and is a vested participant in the Plan as defined under 29 U.S.C. § 1002(7). *Id.* ¶ 18.

Defendant Berkshire operates as a Massachusetts limited partnership, controlled by its general partner, Sixth Berkshire Associates LLC (Berkshire GP). *Id.* ¶ 19. Both Berkshire and Berkshire GP are affiliated with Berkshire Partners LLC (Berkshire Firm), a private equity investment firm. *Id.* ¶ 20. Through Berkshire, Berkshire GP, and other vehicles, Berkshire Firm members use their capital and capital raised from other investors to acquire privately held companies for investment. *Id.* In 2006, Berkshire acquired a majority stake in Vi-Jon's predecessors and merged them under the Vi-Jon name. *Id.* ¶ 21. Berkshire elected Vi-Jon's board of directors, including three directors employed by Berkshire Firm, at least one of

whom was also a member of Berkshire GP. *Id.* In 2020, through the ESOP Transaction, Berkshire unloaded its Vi-Jon stake. *Id.* ¶ 22. Plaintiffs allege, on information and belief, that Berkshire received cash and/or notes for its interest in Vi-Jon. *Id.*

Defendant Brunner is a natural person residing in Missouri; his grandfather founded Vi-Jon. *Id.* ¶ 24. Prior to 2006, Brunner served as Vi-Jon's controlling shareholder and member of its board of directors. *Id.* In 2006, he sold a majority stake in Vi-Jon to Berkshire and retained a minority stake and his board seat. *Id.* ¶ 25. Brunner held his minority stake through the Brunner Trust, another named Defendant. *Id.* Brunner is the settlor of the Brunner Trust, and upon Plaintiffs' information and belief, a trustee and beneficiary. *Id.* Through the ESOP Transaction, Brunner liquidated the Brunner Trust's Vi-Jon stake, and upon Plaintiffs' information and belief, the Brunner Trust received cash and/or notes for its interest in Vi-Jon. *Id.* ¶ 26. Plaintiffs allege that the Brunner Trust qualified as a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because it held 10% or more of the Plan employer's stock. *Id.* ¶ 27. Plaintiffs also assert that Brunner was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because he served as a director of the Plan's employer. *Id.* ¶ 28.

GreatBanc is an Illinois corporation and is the "surviving independent wing" of a banking group largely subsumed by Citizens Bank in 2007. *Id.* ¶ 31. GreatBanc generates most of its revenue from services to employee benefit plans. *Id.* Through its board, Vi-Jon appointed GreatBanc as the trustee of the Plan. *Id.* ¶ 34. As trustee,

GreatBanc possessed sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan. *Id.* In August 2020, GreatBanc approved the terms of the ESOP Transaction, including the $398 million sale price and forty-nine-year loan term, on behalf of the Plan. *Id.* ¶ 35. According to Plaintiffs, GreatBanc acted as a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Plan's trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. *Id.* ¶ 36. GreatBanc was also a named fiduciary of the Plan under ERISA § 402(a), 29 U.S.C. § 1102(a) and under the terms of other written instruments. *Id.* ¶ 37.

### C.    Defendants' Alleged Wrongdoing

Plaintiffs allege that the ESOP Transaction was illegal. *Id.* ¶ 43. According to Plaintiffs, Berkshire tried to sell Vi-Jon the "usual way," and in 2014 attempted to shop the company to the marketplace for $400 million. *Id.* ¶ 45. No buyer wanted to pay the asking price, likely because of the company's high debt load and lack of pricing flexibility in the industry. *Id.* ¶¶ 46–47. In fact, in 2012, the credit rating agency Moody's downgraded Vi-Jon's credit rating. *Id.* ¶ 47. By 2020, Vi-Jon was among Berkshire's top five longest-held investments with no impending deal. *Id.* ¶ 48.

Plaintiffs allege that Berkshire and the Brunner Defendants turned to a new type of transaction—an ESOP transaction—after failing to find a buyer "at their desired price in the usual places." *Id.* ¶ 49. This allowed Defendants to create the buyer (the Plan) on their own terms and choose the agent that would sit on the other side of the table (GreatBanc). *Id.* Berkshire and Brunner controlled the Plan formation and trustee hiring process through their control of the company's board. *Id.* ¶ 50.

In January 2020, at the beginning of the COVID-19 pandemic, Vi-Jon ramped up hand sanitizer production to meet and anticipate demand for such products. *Id.* ¶ 51. Vi-Jon did well as the pandemic escalated in the first half of 2020. *Id.* ¶ 52. The sharp increase in profits was, however, temporary; by June 2020, many new competitors entered the space and widely reported studies should have put Defendants on notice that demand would decrease by August 2020. *Id.* ¶¶ 53, 54. Thus, according to Plaintiffs, "there were a number of reasons to discount early pandemic profits" when Defendants valued the company in August 2020. *Id.* ¶ 54. Nevertheless, Plaintiffs assert, Berkshire and the Brunner Defendants pushed the deal through and determined the valuation with their advisors, latching on to pandemic-driven sales figures notwithstanding the temporary nature of the underlying market conditions. *Id.* ¶¶ 55–56. Plaintiffs allege that Defendants knew that ERISA's provisions prohibited the ESOP Transaction. *Id.* ¶ 57.

As a result of the ESOP Transaction—where the purchase price was inflated, and debt load unsustainable—employee participants in the new Plan are the "losers"

as they suffer harm from the inflated sale price. *Id.* ¶ 61. That is, according to Plaintiffs, it takes more capital to pay off the financing required to obtain the shares, limiting the funds available to make the company (and the participants' shares) more valuable. *Id.* ¶ 62. It also takes longer to pay off debt, meaning that the Plan releases fewer shares to participants each year. *Id.* Under the current term, Plan participants will not fully own the company until well after its youngest employees pass retirement age. *Id.*

### D.    The Claims

Plaintiffs bring this derivative action on behalf of the Plan. *Id.* ¶¶ 66–67. Additionally and alternatively, they seek to represent a putative class defined as follows: All participants and beneficiaries of the Vi-Jon Employee Stock Ownership Plan at any time since its inception, excluding Defendants, any fiduciary of the Plan, the directors of Vi-Jon or of any entity in which a Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded person. *Id.* ¶ 70.

Plaintiffs assert two causes of action under ERISA: (1) Count I alleges that GreatBanc caused a prohibited transaction in contravention of 29 U.S.C. § 1106(a); and (2) Count II seeks equitable relief under 29 U.S.C. § 1132(a)(3) against Berkshire and the Brunner Defendants. [1] ¶¶ 79–88.

Defendants have all moved to dismiss the complaint. GreatBanc moves to dismiss Count I under Rule 12(b)(1) for failure to adequately allege Article III standing and under Rule 12(b)(6) for failure to plead a remediable loss. [42]. The

Brunner Defendants move to dismiss under Rule 12(b)(6), arguing that Plaintiffs have not adequately alleged facts to support a claim for appropriate equitable relief under ERISA. [43]. Berkshire moves to dismiss under Rule 12(b)(1) for failure to plausibly allege standing and under Rule 12(b)(6) for failure to state a claim. [45].

## II. Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir.

2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

A standing challenge under Rule 12(b)(1) typically "can take the form of a facial or a factual attack on the plaintiff's allegations." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (quoting *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020)). Where, as here, Defendants bring a facial challenge, this Court construes Plaintiffs' complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

### III. Analysis

GreatBanc and Berkshire have moved to dismiss for lack of Article III standing, and all three sets of Defendants have moved to dismiss for failure to state a claim. The Court will address the parties' Article III standing argument first. *See In Re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) (describing Article III standing as a threshold jurisdictional issue); *Flynn v. FCA US LLC*, 39 F.4th 946, 951 (7th Cir. 2022) (recognizing that "jurisdictional challenges come before merits challenges").

### A. Article III Standing

Article III of the Constitution limits federal jurisdiction to the adjudication of live "cases" and "controversies." *Cook County v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1), *cert. dismissed sub nom. Mayorkas v. Cook County*, 141 S. Ct. 1292 (2021). To establish a justiciable case or controversy under

Article III, the party invoking federal jurisdiction must possess standing to sue. *Id.* Standing requires (1) an injury in fact (2) caused by the defendants' conduct and (3) redressable by a favorable decision. *Woodring v. Jackson County*, 986 F.3d 979, 984 (7th Cir. 2021); *see also In Re Helmstetter*, 44 F.4th at 679. An Article III injury must be "actual or imminent, concrete and particularized." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020).

GreatBanc and Berkshire argue that Plaintiffs have failed to allege a concrete injury. This Court disagrees because Plaintiffs have pled concrete financial harm to their shares in the Plan as a result of the company's inflated sale price. [1] ¶ 62. This alleged monetary harm readily qualifies as a concrete injury. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021); *see, e.g.*, *Placht on behalf of Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co.*, No. 21 C 5783, 2022 WL 3226809, at *3 (N.D. Ill. Aug. 10, 2022) (rejecting lack of standing argument where the plaintiff alleged that in an ESOP transaction the company's stock "was significantly devalued . . . following the purchase"); *see also, e.g.*, *Lloyd v. Argent Tr. Co.*, No. 22CV4129 (DLC), 2022 WL 17542071, at *2 (S.D.N.Y. Dec. 6, 2022) (holding that allegations that the company's "shares were overvalued when purchased, and that this harmed" the plaintiff's "financial interest in the ESOP" is the "kind of traditional monetary harm [that] is sufficient to support Article III standing").

Defendants rely heavily on two out-of-circuit decisions alleging similar violations of ERISA based on ESOP transactions, where courts have dismissed for

lack of standing. In *Lee v. Argent Trust Company*, the plaintiff alleged that her employer created an ESOP in late 2016; that ESOP paid $198 million for company stock; that the transaction was fully leveraged; that less than one month after the creation of the ESOP the ESOP's stock was valued at $64.8 million; and that based on that valuation, the $198 million the ESOP paid was excessive. No. 5:19-CV-156-BO, 2019 WL 3729721, at *1 (E.D.N.C. Aug. 7, 2019). Upon the defendants' motion to dismiss, the court found that the plaintiff failed to allege a concrete injury sufficient to establish Article III standing. *Id.* at *3. The court analogized the ESOP transaction to a real estate transaction, where if a buyer obtains a mortgage for her house at its correct value, she should experience no change in equity from the transaction—in the court's example, a buyer taking on a $198,000 mortgage and receiving a $198,000 asset experiences no change in equity in the transaction. *Id.* But, the court reasoned, if the house were actually worth $262,800 and the buyer purchased the house at a discount, she has now $64,800 in equity (the difference between the correct valuation and the mortgage). *Id.* Thus, applying that analogy to an ESOP transaction, the fact that the company's valuation was $64.8 million immediately after the ESOP transaction reflected an immediate equitable benefit. *Id.* at *4. Following *Lee*, another district court in New York, in an opinion affirmed by the Second Circuit, dismissed a case for failure to plead a concrete injury where the plaintiff asserted that an ESOP bought company shares for more than fair market value based on allegations that the purchase price was $133,430,000 and the valuation was only $13,250,000 after the transaction. *Plutzer on behalf of Tharanco Grp., Inc. Emp. Stock*

*Ownership Plan v. Bankers Tr. Co. of S. Dakota*, No. 1:21-CV-3632 (MKV), 2022 WL 596356, at *4–5 (S.D.N.Y. Feb. 28, 2022), *aff'd sub nom. Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-561-CV, 2022 WL 17086483 (2d Cir. Nov. 21, 2022).

This Court declines to follow the non-binding reasoning in the *Lee* and *Plutzer* decisions for several reasons. First, the Seventh Circuit emphasizes that at "the pleading stage, general factual allegations of [Article III] injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (internal quotation marks and citation omitted). "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013). Given this liberal pleading standard in the Seventh Circuit, this Court cannot find the absence of a concrete injury, where Plaintiffs expressly plead pecuniary harm resulting from the overvaluation of the company.

Second, this case includes more allegations than in the *Lee* and *Plutzer* complaints, where the plaintiffs asked the court to presume injury from the mere decline in stock value immediately following the purchase. Here, Plaintiffs' allegations lend plausibility to their overvaluation theory. They allege that as early as 2012, Berkshire faced challenges finding a buyer to pay its asking price for Vi-Jon

12

of $400 million, due to the company's high debt load and lack of pricing flexibility, which Moody's recognized in 2014 when it downgraded Vi-Jon's credit rating. [1] ¶¶ 46–47. Plaintiffs additionally allege that Defendants ignored the reality that, when finalizing the ESOP Transaction, Vi-Jon's surge in profits during the early part of the pandemic was temporary and that multiple publicly available articles and studies put Defendants on notice that they should have expected a lower demand for hand sanitizer after the first few months of the pandemic. *Id.* ¶¶ 52–54. These allegations support Plaintiffs' theory that Vi-Jon's stock was overvalued, and ultimately caused Plaintiffs' concrete harm. *See, e.g.*, *Lloyd*, 2022 WL 17542071, at *2 (distinguishing *Lee* and *Argent* because the plaintiff included additional allegations to support overvaluation theory, including that the purchase price of stock "was greater than its market price was even before it took on the debt, and that the Seller Loan was offered at an unreasonably high interest rate").

Third, as another court in this district recognized in distinguishing *Lee* and *Plutzer*, the *Lee* court's analogy to real estate deals is flawed: "Unlike real estate, for which valuation estimations are widely publicly available and mortgages are secured by outside providers, privately held stock valuations typically are not public, and the transaction is financed by parties to the transaction." *Placht*, 2022 WL 3226809, at *3 (internal citation omitted).  In the context of a privately held stock sale, there "is no objective price of the stock to serve as a baseline. Rather than the price of the stock being set by the 'wisdom of the crowd,' the price is simply what the buyer ultimately pays." *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 745 (E.D.

13

Cal. 2019). It follows that ESOP transactions like the one at issue here are more susceptible to overvaluation and manipulation, resulting in harm to Plan participants.

In sum, Plaintiffs have adequately stated a concrete Article III injury. This Court accordingly rejects Defendants' motions as they relate to lack of standing.

## B.    Merits

### 1.    Count I: GreatBanc

In Count I Plaintiffs allege that GreatBanc, a Plan fiduciary, caused the Plan to engage in a prohibited transaction—namely, a direct or indirect sale or exchange of any property with parties in interest—in violation of 29 U.S.C. § 1106(a)(1)(A). [1] ¶ 80. If successful, Section 409 of ERISA provides that, in addition to equitable relief that a court may impose, a liable fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from [a fiduciary breach], and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a).

In moving to dismiss, GreatBanc advances a single argument—that Plaintiffs speculate that the company was overvalued but do not state a cognizable loss redressable under Section 409. [42-1] at 15. This argument is essentially a repackaging of its standing arguments and has no merit. Plaintiffs plausibly allege that the Plan overpaid by not only pointing to the valuation immediately following the transaction, but by alleging facts about how the company failed to sell at similar prices for the decade leading up to the ESOP Transaction and how the Defendants'

14

valuation failed to account for the prospect of declining profitability after the initial boom from the onset of the COVID-19 pandemic. These allegations raise an inference that the company was overvalued and that GreatBanc, as the Plan fiduciary, is liable for any losses as a result. *See, e.g.*, *Register v. Cameron & Barkley Co.*, 467 F. Supp. 2d 519, 529 (D.S.C. 2006) ("As with any loss caused by a fiduciary's breach, the losses to the C & B ESOP due to the distribution of benefits at an improper valuation and the diminution in the amount of plan assets transferred to the CSI ESOP constitute losses to a plan under ERISA § 409(a)."); *Horn v. McQueen*, 215 F. Supp. 2d 867, 877 (W.D. Ky. 2002) (noting that "an ESOP's payment of more than adequate consideration for employer stock constitutes a compensable loss").

### 2. Count II: Berkshire and Brunner Defendants

In Count II, Plaintiffs attempt to hold Berkshire and the Brunner Defendants liable under 29 U.S.C. § 1132(a)(3). That section allows plan participants to obtain "appropriate equitable relief" from a party, including a nonfiduciary, who knowingly participate in an ERISA violation. *Godfrey v. Greatbanc Tr. Co.*, No. 18 C 7918, 2019 WL 4735422, at *7 (N.D. Ill. Sept. 26, 2019) (first quoting 29 U.S.C. § 1132(a)(3); then citing *Harris Tr. & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245–46 (2000)); *see also Halperin v. Richards*, 7 F.4th 534, 553 n.3 (7th Cir. 2021). To state a claim under this section, "the plaintiff must [plausibly] allege only that a fiduciary violated a substantive provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted the violation." *Godfrey*, 2019 WL

4735422, at *7 (alteration in original) (quoting *Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004)).

Initially, Berkshire argues that Count II should be dismissed in the event Count I is dismissed, because liability for non-fiduciaries is derivative of a fiduciary's liability. [46] at 14–15. Berkshire correctly recognizes that its liability is derivative of GreatBanc's. *See Godfrey*, 2019 WL 4735422, at *7. As discussed above, however, Plaintiffs sufficiently pleaded loss, and the Court has declined to dismiss Count I. Because Plaintiffs' claim against GreatBanc stands, Berkshire's also remains viable, unless subject to dismissal for other reasons.

Berkshire and the Brunner Defendants argue that Plaintiffs fail to plead its knowing participation of an ERISA violation, arguing that it is insufficient for Plaintiffs to allege merely that the ESOP Transaction took place. [46] at 16–18; [44] at 12–14. True, mere knowledge about a transaction does not meet the "knowing" requirement under Section 1132(a)(3). *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019). But Plaintiffs here plead more than mere knowledge of the transaction against both sets of Defendants. As to Berkshire, Plaintiffs allege that Berkshire had three members on Vi-Jon's board, and thus, had direct control of the ESOP valuation process and created and/or approved the financial forecasts that failed to discount temporary market conditions, leading to the company's overvaluation. [1] ¶¶ 59–60. Brunner, according to the complaint, also sat on the V-Jon board and had similar control and knowledge of the valuation process. *Id.* ¶ 60. Additionally, the Brunner

Trust had a minority stake in Vi-Jon and thus had knowledge, through Brunner, about the company's valuation. *Id.* These allegations more than sufficiently raise an inference that both Berkshire and the Brunner Defendants had not only knowledge of the ESOP Transaction, but knowingly participated in the allegedly prohibited ESOP Transaction.

Berkshire next contends that Plaintiffs fail to adequately allege entitlement to equitable relief. Specifically, they argue that the complaint's allegations reveal that Plaintiffs impermissibly seek monetary damages for their alleged injuries, in the form of the alleged overpayment the Plan made to purchase Vi-Jon. *See* [46] at 19. As the Supreme Court has explained, for an action to lie in equity, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). In their brief, Plaintiffs clarify that they do not seek money damages, but rather seek the equitable remedy of disgorging the ill-gotten gains that Berkshire and the Brunner Defendants received as a result of GreatBanc causing the prohibited ESOP Transaction. [55] at 36–37. This argument is consistent with the complaint's allegation that Berkshire and the Brunner Defendants benefited from the prohibited ESOP Transaction by receiving cash or notes in exchange for their equity in Vi-Jon and that those cash or notes constitute "undue proceeds." [1] ¶ 88. Based on this allegation and Plaintiffs' representations in their brief, the Court is satisfied that Plaintiffs appropriately seek an equitable remedy against non-fiduciaries Berkshire and the Brunner Defendants. *See, e.g., Will*

*v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2009 WL 3835883, at *5 (S.D. Ill. Nov. 14, 2009) ("Here . . . the reasonable inference to be drawn from the allegations of Plaintiffs' complaint is that the funds sought are in Piper Jaffray's possession, and therefore the relief sought is equitable within the meaning of ERISA.").

Berkshire and the Brunner Defendants also argue that Plaintiffs have not, as they must, adequately alleged that any ESOP property can be traced to any particular fund or account within their control. [46] at 19; [44] at 10–11. This Court disagrees. The Supreme Court has observed that equitable relief is appropriate "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-W. Life*, 534 U.S. at 213. Here, Plaintiffs clearly allege that Defendants received ill-gotten gains from the ESOP Transaction, thus raising the inference that those gains are currently kept in Defendants' accounts. *See* [1] ¶ 88. The law demands no more specificity at the pleadings stage. Indeed, at this stage, "plaintiffs cannot be expected to identify a specific account in which the funds are held or string of transactions that show that the proceeds can be traced. To require as much would shut the door on most, if not all, claims for such equitable relief." *Chesemore v. All. Holdings, Inc.*, 770 F. Supp. 2d 950, 979 (W.D. Wis. 2011).

The Brunner Defendants move to dismiss Plaintiffs' request for declaratory arguing that such relief generally is unavailable for past acts like the ESOP Transaction. [44] at 8–9. Standing to seek declaratory relief depends on Plaintiffs showing that their "threatened injury is certainly impending, or there is a substantial

18

risk that the harm will occur." *Holmes v. Progressive Universal Ins. Co.*, No. 22 C 894, 2023 WL 130477, at *9 (N.D. Ill. Jan. 9, 2023) (quoting *Santiago v. City of Chicago*, 446 F. Supp. 3d 348, 364 (N.D. Ill. 2020)). Because "any violation or liability is alleged to have already occurred, declaratory relief serve no purpose." *Guerrero v. Howard Bank*, No. 20 C 2980, 2022 WL 1211480, at *2 (N.D. Ill. Apr. 25, 2022). Here, Plaintiffs ask this Court to declare that: (1) GreatBanc caused the Plan to engage in prohibited transactions; (2) such prohibited transactions did not satisfy requirements for exemption under ERISA; and (3) Berkshire and Brunner Defendants knowingly participated in prohibited transactions in violation of ERISA. [1] (prayer for relief). These are requests for the Court to declare violations of a transaction that already occurred, which is not appropriate. Indeed, "courts typically decline to grant declaratory relief when plaintiffs are merely seeking a declaration of liability, which plaintiffs appear to do here." *Guerrero*, 2022 WL 1211480, at *2. Thus, this Court strikes Plaintiffs' request for declaratory relief.

The Brunner Defendants next move to dismiss Plaintiffs' request for rescission of the ESOP Transaction, which they request in the alternative to equitable relief. [44] at 14–15; *see* [1] (prayer for relief). They argue that what Plaintiffs seek is not true rescission because Plaintiffs seek to cause defendants to return profits to the Plan, not to return the parties to their pre-Transaction positions. [44] at 14. On the contrary, as Plaintiffs explain in their opposition brief, they request rescission to "return the parties to their pre-ESOP Transaction positions: returning the company shares to the original shareholders in exchange for the employee compensation used

in the prohibited transactions." [55] at 41. This is an appropriate request for relief under ERISA. *See, e.g.*, *Hurtado v. Rainbow Disposal Co.*, No. 817CV01605JLSDFM, 2018 WL 3372752, at *15 (C.D. Cal. July 9, 2018) (finding rescission an appropriate remedy in the context of an ESOP transaction and explaining that a "rescissionary measure of damages" would restore losses to the plan without entitling the plaintiffs to a windfall). The Brunner Defendants also argue that Plaintiffs fail to plead a fraudulent or material misrepresentation, [44] at 14–15, but they have not cited any controlling authority requiring Plaintiffs to specifically plead that element in order to maintain a request for rescission in their prayer for relief. Similarly, the Brunner Defendants contend that Plaintiffs have not, as they must, sue all parties to the ESOP Transaction, but they cite no authority requiring Plaintiffs to do so. For these reasons, this Court declines to strike Plaintiffs' request for rescission at the pleadings stage.

The Brunner Defendants also move to dismiss Plaintiffs' request for "other appropriate relief" because it is vague and non-specific as to the form of relief sought. [44] at 8–9; *see* [1] (prayer for relief). Because Plaintiffs do not substantively address this argument, *see* [55], this Court deems their silence a waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). This Court therefore strikes Plaintiffs' vague request for "other appropriate relief."

## IV.  Conclusion

For the reasons explained above, this Court denies GreatBanc's motion to dismiss [42], denies in large part the Brunner Defendants' motion to dismiss [43], and

denies Berkshire's motion to dismiss [45]. As a result of this Court's rulings, Plaintiffs' requests for declaratory relief and for "other appropriate relief" are hereby stricken from the complaint's prayer for relief. The complaint otherwise stands as pled. Defendants are directed to answer the complaint by February 21, 2023.

Dated: January 31, 2023

Entered:

Mary M. Rowland
United States District Judge

21