IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Paul Laidig, Peter Lewis, and Derek Kemp, as representatives of a class of similarly situated persons, and on behalf of the Vi-Jon Employee Stock Ownership Plan,<br><br>Plaintiffs,<br>v.<br>GreatBanc Trust Company, Berkshire Fund VI, Limited Partnership, John G. Brunner, John G. Brunner Revocable Trust dated 06-09-1992, and John and Jane Does 1-20,<br><br>Defendants. | Case No. 1:22-cv-01296<br><br>Hon. LaShonda A. Hunt<br><br>Hon. Heather K. McShain<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' <u>OPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT** |

## <u>INTRODUCTION</u>

Plaintiffs Paul Laidig, Peter Lewis, and Derek Kemp ("Plaintiffs") submit this Memorandum in support of their <u>Opposed</u> Motion for Preliminary Approval of Partial Class Action Settlement with Defendants John Brunner ("Brunner"), the John G. Brunner Revocable Trust dated 06-09-1992 (the "Brunner Trust"), and eleven affiliated family trusts (with Brunner and the Brunner Trust, the "Brunner Defendants") relating to the purchase of company stock by the Vi-Jon (n/k/a Emprise Group, Inc.) Employee Stock Ownership Plan ("Plan"). Under the terms of the proposed Settlement, $1 million will be paid to resolve the claims against the Brunner Defendants. Plaintiffs' claims against the remaining defendants are not released and will be vigorously pursued. For now, this partial settlement represents an appropriate down payment towards the losses Plaintiffs allege the Plan suffered resulting from the sale of Vi-Jon to the Plan at an inflated price. Thus, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits

1

preliminary approval so that notice may be disseminated to the class. Plaintiffs respectfully request the Court enter an order: (1) preliminarily approving the Settlement;[1] (2) approving the proposed Notices and authorizing distribution of the Notices to the Settlement Class; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the accompanying Preliminary Approval Order. The Brunner Defendants, as parties to the Settlement, do not oppose this motion.

## BACKGROUND

### I. THE PLEADINGS AND MOTION TO DISMISS

On March 10, 2022, Plaintiffs Laidig, Lewis, and Michael Robbins filed this action. Dkt. 1. In their Complaint, they alleged that Defendant GreatBanc Trust Company, as a fiduciary to the Plan, caused the Plan to engage in a prohibited transaction with a party in interest, as barred by ERISA. *Id.* at ¶ 80. They also alleged that Defendants Berkshire Fund VI, L.P. ("Berkshire"), Brunner, and the Brunner Trust are liable to the Plan as transferees of proceeds of the transaction. *Id.* at ¶ 88. On June 6, 2022, Defendants moved to dismiss via three separate motions. Dkts. 42, 43, 45.On January 31, 2023, the Court denied GreatBanc and Berkshire's motions in their entirety, and "denie[d] in large part the Brunner Defendants' motion."[2] Dkt. 70, at 1.

### II. MOTIONS TO AMEND AND SETTLEMENT WITH THE BRUNNER DEFENDANTS

On December 6, 2023, Plaintiffs moved to amend the Complaint, seeking to add Mr. Kemp as a plaintiff. *See* Dkt. 112-1, at ¶ 19. On December 7, 2023, the Court granted this request. Dkt. 114. On June 4, 2024, Plaintiff Robbins requested to be withdrawn as a named plaintiff. Dkt. 155. The Court granted Robbins' request the next day. Dkt. 157. Plaintiffs moved to amend the

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Third Declaration of Brock J. Specht ("3d Specht Decl.").
[2] The Court dismissed Plaintiff's requests for declaratory relief and "other appropriate relief." Dkt 70 at 19–20.

2

Complaint a second time to add three corporations, eleven corporate officers (cumulatively the "Vi-Jon Defendants"), and the John and Janell Brunner Family Trust Dated May 27, 2020, as defendants. Dkt. 162; Dkt. 164-4, at 1–2. They also sought to add a claim for co-fiduciary liability against the Vi-Jon Defendants. Dkt. 164-4 at 47–49. Berkshire and the Brunner Defendants opposed the motion to amend. Dkt. 180. This motion to amend remains pending at this time.

Settlement negotiations began around April 2023 and continued throughout that year. Dkt. 95 at ¶ 1–2. While Plaintiffs' motion to amend was pending, the Parties continued negotiations facilitated by Magistrate Judge Heather K. McShain. Four such negotiations were held between November 20, 2023, and January 4, 2024. Dkt. 125 at 2–3. During a January 19, 2024, conference, the Parties indicated that global settlement discussions were at an impasse, had become unproductive, and were ultimately terminated. Dkt. 132 at 3–4. But counsel for the Plaintiffs and Brunner Defendants remained in contact. 3d Specht Decl. at ¶ 18. After extensive arm's-length negotiations, they reached a settlement in principle and prepared the agreement at issue here. *Id.*

### III. OVERVIEW OF SETTLEMENT TERMS

#### A. The Settlement Class

The Settlement applies to the following Settlement Class:

> All participants and beneficiaries of the Vi-Jon Employee Stock Ownership Plan (n/k/a Emprise Group, Inc. Employee Stock Ownership Plan) at any time since its inception with a vested Plan balance on or prior to October 29, 2024, excluding Defendants, the directors of Vi-Jon or of any entity in which a Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded person.

Settlement ¶ 1.52. There are approximately 1,200 Settlement Class Members. 3d Specht Decl. ¶ 4.

#### B. Monetary Relief

Under the Settlement, the Brunner Defendants will contribute $1 million to a common settlement fund. Settlement ¶¶ 1.31, 4.2, 5.1. After accounting for any attorneys' fees and costs,

3

administrative expenses, and class representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members. *Id.* ¶¶ 1.34, 5.1–5, 6.1–2.

Payments to Class Members will allocated *pro rata* by dividing each individual's number of vested shares of Plan stock by the total number of vested shares of stock allocated to the Plan accounts of all Settlement Class Members on or prior to October 29, 2024, then multiplying that percentage by the Net Proceeds of the Settlement. *Id.* ¶ 5.2. If the dollar amount payable to a Non-Active ESOP Participant is less than $10, then that Class Member's proceeds will be reallocated among the other Class Members. *Id.* ¶ 5.4. Active ESOP Participants' accounts will be automatically credited with their share. *Id.* ¶ 5.3(a). Non-Active ESOP Participants will have the opportunity to submit a Rollover Form allowing them to roll their distribution into a qualified retirement account. *Id.* ¶ 5.3(b). Non-Active ESOP Participants who do not timely submit a Rollover Form will be sent a check. *Id.* Under no circumstances will any funds revert to any of the Defendants. Any uncashed checks or other funds remaining will be deposited in the Plan and allocated to Active ESOP Participants equally on a *per capita* basis. *Id.* ¶ 5.6.

### D. Release of Claims

In exchange for the foregoing relief, the Settlement Class will release the Brunner Defendants from all claims:

> that were asserted in the Action against the Brunner Defendants or could have been asserted in the Action or any other court, forum, or proceeding against the Brunner Defendants and/or the Affiliated Family Trusts based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints . . . .

*Id.* ¶ 1.38, 7.1(a)–(b). The released claims do not include claims to enforce the Settlement Agreement. *Id.* ¶¶ 1.38, 7.1(c). Specifically, the Settlement Class releases its claims against:

a. John Brunner;
b. John G. Brunner Revocable Trust dated 06-09-1992;

4

    c.  Elizabeth Brunner Kline 2012 Irrevocable Trust Dated November 30, 2012;
    d.  Elizabeth Lorton Brunner Irrevocable Trust Dated August 1, 2001;
    e.  John And Janell Brunner Family Trust Dated May 27, 2020;
    f.  John B. Brunner, III 2012 Irrevocable Trust Dated November 30, 2012;
    g.  John Burgess Brunner, III Irrevocable Trust Dated August 1, 2001;
    h.  John G. Brunner Irrevocable Trust F/B/O Elizabeth Sally Pratte Dated March 30, 2007;
    i.  John G. Brunner Irrevocable Trust F/B/O Robin Peregrine White Moores Dated March 30, 2007;
    j.  John G. Brunner Irrevocable Trust FBO Gabrielle G. Alves Dated March 30, 2007;
    k.  John G. Brunner Irrevocable Trust FBO Lucas B. Alves Dated March 30, 2007;
    l.  John G. Brunner Irrevocable Trust FBO Nicholas N. Alves Dated March 30, 2007;
    m.  Virginia Brunner Becker 2012 Irrevocable Trust Dated November 30, 2012; and
    n.  Virginia White Brunner Irrevocable Trust Dated August 1, 2001.

*Id.* at ¶ 1.4, 1.10, 1.38.

### E.    Class Notice and Settlement Administration

Class Members will receive notice of the settlement via first-class U.S. Mail. *Id.* ¶ 3.2(b), (e); *see also id.* Exs. 1–2 (providing form of Notices for approval by the Court). The Notice sent to Non-Active ESOP Participants also will include a Non-Active ESOP Participant Rollover Form enabling them to make the rollover election described above. *Id.* ¶ 3.2(c); *see also id.* Ex. 3 (providing Rollover Form for approval by the Court). To the extent Class Members would like more information, the Settlement Administrator[3] will establish a Settlement Website and post the Settlement Agreement, Notices, Rollover Form, and relevant case documents, including the Amended Complaint and a copy of all Court orders related to the Settlement. *Id.* ¶ 3.3(a)–(b). The Settlement Administrator also will establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id.* ¶ 3.3(c).

### F.    Attorneys' Fees and Administrative Expenses

The Settlement requires that Class Counsel file their Motion for Attorneys' Fees and Costs

---

[3] Atticus Administration LLC has been selected as the Settlement Administrator, and has extensive experience administering similar ERISA class action settlements. Settlement ¶ 1.50; 3d Specht Decl. ¶ 28 & Ex. C.

at least 14 days before the deadline for objections to the proposed Settlement. *Id.* ¶ 6.1. Under the Settlement, the requested fees may not exceed one-third of the Gross Settlement Amount. *Id.* ¶ 1.6. In addition, the Settlement provides for recovery of Administrative Expenses related to the Settlement, and for service awards up to $5,000 per Class Representative. *Id.* ¶¶ 6.1–6.2.

        **G.**    **Review by Independent Fiduciary**

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id.* ¶¶ 2.20, 9.1(a); *see also* Prohibited Transaction Exemption 2003–39, 68 Fed. Reg. 75632 (Dec. 31, 2003), *as amended*, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report at least 30 days before the final Fairness Hearing, Settlement ¶ 2.2(b), so it may be considered by the Court.

## ARGUMENT

**I.    STANDARD OF REVIEW**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent class members, but the court's "inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.* This involves a two-step process. *See Manual for Complex Litigation (Fourth)* §§ 21.61–.63 (2004) (hereinafter "MCL"). First, counsel submit the proposed settlement terms to the court, and the court makes a preliminary fairness evaluation. *Id.* § 21.632. Second, following preliminary approval, class members are provided notice of a fairness hearing, at which time arguments and evidence may be presented in support of, or opposition to, the settlement. *Id.* §§ 21.633–.634.

In 2018, Rule 23 was amended to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e), Comm. Notes on Rules—2018 Amend. The amended rule states that, at the preliminary approval stage, the court must determine whether it "will likely be able" to approve

the proposal. *Id.* 23(e)(1)(B). In turn, Rule 23(e)(2) specifies the following factors the court should consider at the final approval stage in determining whether a settlement should be approved:[4]

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class;
>     (iii) the terms of any proposed award of attorney's fees; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

At this stage, the proposed agreement is viewed "in a light most favorable to settlement." *Isby*, 75 F.3d at 1199 (quotation omitted). The ultimate fairness determination is left for final approval, after class members receive notice of the settlement and have an opportunity to be heard. MCL §§ 21.632–.634 (citing *In re Amino Acid Lysine Antitrust Litig.*, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996)). For the reasons that follow, this Court should grant preliminary approval of the Settlement and authorize notice to the Settlement Class.

## II. THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

### A. The Class is adequately represented

The record reflects that the Class is adequately represented. Class Counsel are experienced ERISA litigators with a proven track record. *See* 3d Specht Decl. ¶¶ 19–23. Class Counsel has committed significant time and resources litigating these claims and will continue to do so. *Id.* ¶¶

---

[4] Prior to the 2018 amendments to Rule 23(e), the Seventh Circuit required courts to consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby*, 75 F.3d at 1199). As these factors overlap, they are considered together with the Rule 23(e)(2) factors below. *See In re NCAA Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019), *aff'd sub nom. Walker v. NCAA*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).

10–18. The named Plaintiffs are also adequate class representatives who have diligently pursued this action on behalf of the Class after acknowledging their duties to the class. *Id.* ¶ 15.

**B.     The proposal was negotiated at arm's-length**

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INBA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. 2012) (quotation omitted); *see also Newberg and Rubenstein on Class Actions* § 13:45 (6th ed. 2022) (discussing the historic and present view "that the process of an arms-length negotiation supports a presumption that the settlement is fair" (emphasis omitted)). That is exactly the situation here. As noted above, Class Counsel are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans." *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y Sept. 5, 2017) (appointing Nichols Kaster, PLLP as class counsel). Further, the settlement negotiations were conducted at arm's length with counsel for the Brunner Defendants. *See* 3d Specht Decl. ¶ 17–18.

The "length and expense of the litigation, ... opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement" are also pertinent to the Court's review. *Synfuel Techs., Inc.*, 463 F.3d at 653 (quotation omitted). Relevant here: (1) Class Counsel extensively investigated the factual and legal bases for Plaintiffs' claims, 3d Specht Decl. ¶ 10; (2) this case was filed against some of the Brunner Defendants almost three years ago, *id.*; (2) the parties' legal positions were staked out via motion to dismiss, *id.* ¶ 11; (3) fact discovery just concluded after almost two years, Dkt. 74 (opening discovery on February 15, 2023); Dkt. 255 (jointly requesting a proposed cutoff date January 24, 2025), during which time Defendants have produced a significant amount of documents, 3d Specht Decl. at ¶ 12; and (4) Class Counsel has the necessary experience and qualifications to evaluate the Parties' legal

positions and the discovery that has been produced, *id.* ¶¶ 19–23. These circumstances further favor approval of the Settlement. *See In re NCAA*, 332 F.R.D at 219 (discussing the 26 months of discovery leading up to settlement and noting that if the "case were to continue, litigation likely would take several more years to complete").

**III.    THE SETTLEMENT TERMS ARE FAIR AND ADEQUATE**

    **A.    The relief obtained is significant with regard to the Brunner Defendants**

The product of these serious and informed negotiations is a Settlement that provides significant benefits to the Class. This litigation is approaching three years old with significant steps still to come. Fact discovery only just closed and expert discovery is ongoing, no schedule for a class certification motion has been set, and summary judgment is still far off. The Settlement provides immediate financial relief to at least some of the harm suffered by Class Members. While $1 million is not a high proportion of what Plaintiffs believe will be recovered for the Class in the overall case, it is a significant recovery against a subset of minor defendants. Brunner is just one corporate officer among many, and the Second Amended Complaint seeks to add eleven more corporate officers. *See* Prop. 2d Am. Compl."), Dkt. 164-4, at ¶¶ 1, 30–47. Similarly, recovery against the Brunner Trust and non-party affiliated family trusts may be less fruitful than recovery against the three corporate entity defendants Plaintiffs seek to add to the case. *Id.*

Meanwhile, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001). While this partial settlement "would not provide a complete victory to Plaintiffs, it does not need to do so." *Koerner v. Copenhaver*, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014). It provides them some "present victory, meaning they will not need to await a result of uncertain and potentially lengthy litigation" to obtain relief. *See id.* Where this is a partial settlement against secondary defendants that has no effect on Plaintiffs' claims against any of the

other Defendants, and where Plaintiffs are seeking to bring more defendants into the case, $1 million in immediate relief to the Class is a significant recovery at this stage of litigation.

### B. The risks, costs, and delay of further litigation were significant

Plaintiffs face potential risks in this litigation. At this time, Defendants' second motion to amend the complaint is pending, with no guarantee all of the Brunner Defendants will be added to this case. With fact discovery recent closed, Plaintiffs face the specter of summary judgment, and there is a risk that the Court might dismiss the claims at that juncture.[5] If the case proceeds to trial, Defendants still might prevail.[6] Finally, even if Plaintiffs prevail on liability, issues regarding proof of loss with regard to the Brunner Defendants will remain.[7] Thus, in the absence of a partial settlement with the Brunner Defendants, it is possible Plaintiffs could walk away with nothing from these parties. Meanwhile, Brunner himself is just one corporate officer among many involved in this matter. *See* Prop. 2d Am. Compl., Dkt. 164-4, at ¶¶ 1, 30–47 (seeking to add eleven additional executives as defendants). Obtaining $1 million midstream during litigation from a single secondary defendant and his affiliated family trust, is a strong result for Plaintiffs and the proposed Class. This is particularly true when this recovery does not release any claim against the multiple large corporations and host of executives against whom Plaintiffs seek relief.

At a minimum, continuing litigation against the Brunner Defendants would have resulted in more complex and costly proceedings and could significantly delay relief to the Class. ERISA cases such as this can extend up to a decade before final resolution, sometimes going through

---

[5] *See, e.g.*, *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1304 (N.D. Ga. 2022.
[6] *See, e.g.*, *Reetz v. Lowe's Cos., Inc.*, 2021 WL 4771535, at *60 (W.D.N.C. Oct. 12, 2021).
[7] *See, e.g.*, Restatement (Third) of Trusts § 100, Cmt. on Liab. of Tr. Under Clause (a) at b(1) (determination of losses in breach of fiduciary duty cases is "difficult").

multiple appeals.[8] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott*, 2015 WL 4398475, at *2 (noting that ERISA cases such as this are "particularly complex"). None of this is to say that Plaintiffs lack confidence in their claims against the remaining defendants. However, given the risks and costs of litigation, it is reasonable for Plaintiffs to reach a settlement on these terms with a subset of defendants. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582–83 (N.D. Ill. 2011); *accord Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

### C. The proposed method of distributing relief to the class is effective

Consistent with other ERISA settlements that have received court approval,[9] Active Participants will have their Plan accounts automatically credited with their share of the Settlement, Non-Active Participants may elect to receive a check or a rollover to an IRA or other tax-qualified plan. *See supra* at 3–4. This method of distribution is both effective and efficient.

### D. The Settlement imposes a reasonable limitation on attorney's fees

The amount of any fee award is reserved to the Court's discretion. *See* Settlement ¶ 6.1. However, Class Counsel have agreed to limit their request to one-third of the settlement amount. *Id.* This is the amount typically awarded in complex ERISA cases such as this. *See Bell v. Pension Comm. of ATH Holding Co.*, 2019 WL 4193376, at *3 (S.D. Ind. Sept. 4, 2019) (collecting cases).

### D. No separate agreements bear on the adequacy of relief to the Class

There are no side agreements relating to the Settlement. As Paragraph 11.16 of the

---

[8] *See, e.g., Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31, 2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (more than 7 years).
[9] *See, e.g., Dolins v. Cont'l Cas. Co.*, No. 16-CV-08898, at § 9 (N.D. Ill. Aug. 6, 2018) (ECF No. 122-1), *approved by* ECF No. 133.

Settlement plainly and expressly states:

> This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Settling Parties with respect to the subject matter of the Action and supersede any prior agreement, whether written or oral, as to that subject matter. No representations or inducements have been made by any Settling Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents.

### IV. THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY

Finally, the Settlement also treats Class Members equitably. As noted above, the Net Settlement Amount will be allocated among eligible Class Members on a *pro rata* basis, the same allocation formula is used to calculate settlement payments for all eligible Class Members, and that formula is tailored to the claims asserted in the case. *See supra* at 3–4; 3d Specht Decl. ¶ 7. This further supports approval of the Settlement.[10]

### V. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

The Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here, as the Settlement Administrator will individually mail notices of the Settlement to Class Members. Settlement ¶ 3.2(b). This type of notice is presumptively reasonable. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985). The content of the Notices is also reasonable, as they contain information regarding the terms of the Settlement, the claims asserted in the action, the definition of the class, the scope of released claims, the opportunity for Non-Active Participants to submit a Rollover Form, the process for making an objection, the right to appear at the Fairness Hearing, and the proposed attorneys' fees, expenses, and service awards. *See* Settlement Exs. 1–2.

---

[10] *See, e.g.*, *Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014).

**I.     THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

The Court should certify a class for settlement purposes.[11] "ERISA class actions are commonly certified" because ERISA breach of fiduciary duty claims are brought on behalf the plan as a whole. *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011). That is precisely the nature of this action. *See* Am. Compl., Dkt. 116, at ¶ 67–69 (citing 29 U.S.C. §§ 1109, 1132(a)(2)).

**A.     The Proposed Settlement Class satisfies Rule 23(a)**

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Each of these requirements is met in this case.

***Numerosity.*** As noted above, there are approximately 1,200 Class Members. *See supra* at 3. This far exceeds the threshold for numerosity. *See Neil*, 275 F.R.D. at 260 (holding that "a class of forty is generally sufficient to satisfy Rule 23(a)(1)" (quotation omitted)).

***Commonality.*** "[T]he commonality requirement is typically easily satisfied in ERISA cases." *Shanechian v. Macy's, Inc.*, 2011 WL 883659, at *3 (S.D. Ohio Mar. 10, 2011); Here, as in other ERISA cases, there are common questions, such as (1) whether GreatBanc engaged the Plan in a prohibited transaction; (2) whether the Brunner Defendants were transferred proceeds from the prohibited transaction; and (3) whether the Plan suffered loss from the alleged misconduct. Accordingly, commonality is satisfied. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all

---

[11] This Settlement Class is only for purposes of the present Settlement between Plaintiffs and the Brunner Defendants. Plaintiffs will separately move for certification of a class for purposes of litigating their claims against the remaining defendants. Class certification is more easily attained for a settlement because the court need not inquire whether trial would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

13

participants and beneficiaries." (quotation omitted)).

*Typicality*. Typicality "tend[s] to merge" with commonality. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Godfrey v. GreatBanc Tr. Co.*, 2021 WL 679068, at *5 (N.D. Ill. Feb. 21, 2021) (quotation omitted). Here "the named representatives' ERISA claims share the same 'essential characteristics' of the 'claims of the class at large' in that they seek to (1) obtain recovery owed to the Plan and (2) hold fiduciaries accountable for breaching their duties." *Id.* (citation omitted).

*Adequacy*. The adequate representation inquiry considers the adequacy of the named plaintiffs and class counsel. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified*, (Sept. 22, 2011). The named plaintiffs must "not have interests antagonistic to those of the class" and "be willing and able to 'vigorously pursue the litigation on behalf of the class,'" while class counsel must be "qualified, experienced and able to conduct the litigation." *Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (quotations omitted). Both are adequate here for the reasons noted above. *See supra* at 7–8. The named Plaintiffs have no known conflicts of interest with other Class Members, have assisted in pursuing the action, and have acknowledged their duties as class representatives. 3d BJS Decl. at ¶ 15 & Ex. B. This is sufficient to demonstrate adequacy. As members of the Plan, their interests are aligned with other class members. *See Rush v. GreatBanc Tr. Co.*, 2021 WL 2453070, at *7 (N.D. Ill. June 16, 2021). For their part, Class Counsel are experienced ERISA litigators. *See supra* at 7; 3d Specht Decl. ¶¶ 19–23. Indeed, "Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik*, 2021 WL 757123, at *9. Thus, Class Counsel are also adequate to represent the Class.

### B. The Proposed Class satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed Class satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). The claims here plainly satisfy this test because they are brought derivatively on behalf of the Plan under ERISA, *see* Am. Compl., Dkt. 116, at ¶ 67–69 (citing 29 U.S.C. §§ 1109, 1132(a)(2)), and the outcome will necessarily affect the participants in the Plans and the Plans' fiduciaries. *See Godfrey*, 2021 WL 679068, at *7. Indeed, courts have held that "breach of fiduciary duty claims brought [Section 1132(a)(2)] are 'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" *Neil*, 275 F.R.D. at 267–68 (quotation omitted) (collecting cases).[12] This case is no exception.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Parties' Class Action Settlement Agreement; (2) approve the proposed Settlement Notices and authorize distribution of the Notices to the Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

---

[12] The 1966 Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust."

Dated: January 27, 2025            **NICHOLS KASTER, PLLP**

s/Brock J. Specht
Paul J. Lukas
Brock J. Specht (*pro hac vice*)
Patricia C. Dana (*pro hac vice*)
Laura A. Farley (*pro hac vice*)
Benjamin Bauer (*pro hac vice*)
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
lukas@nka.com
bpsecht@nka.com
pdana@nka.com
lfarley@nka.com
bbauer@nka.com

**BAILEY & GLASSER, LLP**

Patrick O. Muench
Gregory Y. Porter (*pro hac vice*)
Ryan Jenny
1055 Thomas Jefferson Street NW
Suite 540
Washington, D.C. 20007
Telephone: (202) 463-2101
pmuench@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: January 27, 2025                          s/Brock J. Specht
                                                 Brock J. Specht