## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| Paul Laidig, Peter Lewis, and Derek Kemp, as representatives of a class of similarly situated persons, and on behalf of the Vi-Jon Employee Stock Ownership Plan,<br><br>Plaintiffs,<br><br>v.<br><br>GreatBanc Trust Company, Berkshire Fund VI, Limited Partnership, John G. Brunner, John G. Brunner Revocable Trust dated 06-09-1992, John and Janell Brunner Family Trust Dated May 27, 2020, Gerald Bowe, Jane Brock-Wilson, Gregory Delaney, Gerald Greiman, Sharlyn C. Heslam, Edward Kolodzieski, Lawrence J. LeGrand, Spencer Murray, Rich Koulouris, Keith Grypp, Scott Mekus, VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp.,<br><br>Defendants. | Case No: 1:22-cv-01296 |

## ANSWER BY DEFENDANT GREATBANC TRUST COMPANY TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant GreatBanc Trust Company ("GreatBanc") Answers Plaintiffs' Second Amended Complaint ("Complaint") as follows:

### Preliminary Statement

GreatBanc initially notes that many of the paragraphs of Plaintiffs' Complaint purport to refer to the contents of documents that are not attached to the Complaint. GreatBanc has not attempted herein to verify either the contents of any such documents, whether Plaintiffs have accurately and completely quoted such documents, or whether Plaintiffs have referred to any

1

7446878

such documents out of context. To the extent that Plaintiffs inaccurately quote or characterize such documents, or refer to the contents of those documents out of context, GreatBanc hereby denies, generally and specifically, each and every allegation of the applicable paragraphs, and incorporates this paragraph into each and every paragraph of this answer that refers to Plaintiffs' allegations that relate in turn to the contents of documents not attached to the Complaint.

Moreover, the Complaint in many instances refers to "Vi-Jon" without identifying or defining what entity or entities are intended to be referred to by that term. GreatBanc hereby denies the allegations of the Complaint to the extent they inaccurately or incompletely refer to the entity or entities involved with respect to any particular transaction or event, and denies, generally and specifically, each and every allegation of the applicable paragraphs and incorporates this paragraph each and every paragraph of this answer that refers to Plaintiffs' allegations in this regard.

1. Plaintiffs Paul Laidig, Peter Lewis, and Derek Kemp ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Vi-Jon Employee Stock Ownership Plan (the "Plan" or the "ESOP"), bring this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), against Defendants GreatBanc Trust Company ("GreatBanc"), Berkshire Fund VI, Limited Partnership ("Berkshire"), John G. Brunner ("Brunner"), the John G. Brunner Revocable Trust dated 06-09-1992 (the "1992 Brunner Trust"); the John and Janell Brunner Family Trust Dated May 27, 2020 (the "Brunner Family Trust") (together with the 1992 Brunner Trust, the "Brunner Trusts" and, together with Brunner, the "Brunner Defendants"), and Gerald Bowe, Jane Brock-Wilson, Gregory Delaney, Gerald Greiman, Sharlyn C. Heslam, Edward Kolodzieski, Lawrence J. LeGrand, Spencer Murray, Rich Koulouris, Keith Grypp, Scott Mekus, VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp. (collectively "Defendants"). [FN1: VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp. are referred to herein as the Vi-Jon Entity Defendants.]

**ANSWER:** Answering paragraph 1 of the Complaint, GreatBanc lacks sufficient information

2

7446878

upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

2.      As described herein, Defendants orchestrated a prohibited transaction with respect to the Plan in violation of ERISA, to the detriment of the Plan and its participants. Having acquired a controlling interest in Vi-Jon in 2006, Berkshire, a private-equity investor that typically purchases and sells businesses with relatively frequent turnover, found itself unable to unload its stake in the company after holding it for well over a decade. After failing for years to sell Vi-Jon at the inflated asking price of $400 million, Berkshire and the Brunner Defendants capitalized on the temporary surge in the sale of hand sanitizer (which Vi-Jon manufactures) during the early months of the COVID-19 pandemic to try again. But this time, rather than courting sophisticated buyers on the open market—who would negotiate at arm's-length and understand that the pandemic-related boost in hand-sanitizer sales was likely temporary and not a realistic predictor of long-term performance—Berkshire and the Brunner Defendants unloaded their interest onto the ESOP. This allowed Brunner and agents of Berkshire, in their capacity as Vi-Jon directors, to hand-select their counterparty in the transaction: GreatBanc. And GreatBanc played along and approved Brunner and Berkshire's above-market asking price on behalf of the Plan. In order to artificially support the $400 million price, Defendants relied on overly optimistic financial projections based on temporary market conditions that had already started to expire before the deal closed. Business has only continued to slow down since, leaving the company short of Defendants' targets while stuck paying 49-years of installments on Defendants' carelessly negotiated price.

**ANSWER:**     Answering paragraph 2 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

3.      Such transactions violate ERISA. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 675 (7th Cir. 2016) (absent "adequate consideration," the "purchase of employer stock by the Plan ... [is] indisputably prohibited"). GreatBanc is liable as the fiduciary that "caused the ESOP

7446878

to ... overpay[] ... for the stock," see *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 772 (4th Cir. 2019), and Berkshire and the Brunner Defendants are liable as "gratuitous transferee[s]" of excess proceeds of the unfair deal. *See Fish v. GreatBanc Tr. Co.*, 109 F. Supp. 3d 1037, 1043 (N.D. Ill. 2015). Plaintiffs bring this action to remedy this unlawful conduct, recover losses to the Plan, and obtain other appropriate relief as provided by ERISA.

**ANSWER:** Answering paragraph 3 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof. To the extent said paragraph refers to case law decisions, said paragraph states conclusions of law as to which no response is required.

4. Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.

**ANSWER:** Answering paragraph 4 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent that a response may be required to said paragraph, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

5. This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**ANSWER:** Answering paragraph 5 of the Complaint, GreatBanc admits that the Court has subject matter jurisdiction over this action.

6. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because Defendant GreatBanc may be found in this district and underlying ERISA violations occurred in this district.

**ANSWER:** Answering paragraph 6 of the Complaint, GreatBanc admits that GreatBanc may be found in this district. Except as so expressly admitted, GreatBanc denies, generally and

4

7446878

specifically, each and every allegation of said paragraph and the whole thereof.

7. Vi-Jon is a private-label manufacturer of personal care products, including hand sanitizer. Vi-Jon's legacy companies are more than 100 years old.

**ANSWER:** Answering paragraph 7 of the Complaint, GreatBanc admits that one or more entities in the "Vi-Jon" family of companies is/are a private-label manufacturer of personal care products. Except as so specifically admitted, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

8. In 2006, Berkshire acquired a controlling interest in Vi-Jon from Brunner and merged it with a competitor under the Vi-Jon name. Brunner retained a minority interest in the company through the 1992 Brunner Trust.

**ANSWER:** Answering paragraph 8 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

9. On August 20, 2020, in a series of related transactions (the "ESOP Transaction"), Berkshire and the Brunner Defendants sold Vi-Jon and the ESOP acquired it, making Vi-Jon a 100% employee-owned company. [FN2: During the time between the ESOP effective date and the ESOP Transaction, Vi-Jon was organized as a Tennessee corporation, Vi-Jon Inc. Berkshire and the Brunner Defendants owned Vi-Jon Inc. through a Delaware holding company, VJCS Holdings Inc. In connection with the ESOP Transaction, the Vi-Jon operating entity was reestablished as a new Delaware limited liability company, Vi-Jon LLC, and the Plan's equity interest was issued through a new Delaware holding company, Vi-Jon Holding Inc. References to "Vi-Jon" throughout this complaint relate to the relevant entity or entities, as context requires.] The ESOP's participants are Vi-Jon's employees.

**ANSWER:** Answering paragraph 9 of the Complaint, GreatBanc admits that through a series of transactions that took place in August 2020, the Vi-Jon Employee Stock Ownership Plan (the

7446878

"ESOP" or the "Plan") acquired a 100% ownership interest in VJCS Holdings, Inc.

10. Vi-Jon is the "employer of the Plan within the meaning of 29 U.S.C. § 1002(5), and the "plan sponsor" of the Plan within the meaning of 29 U.S.C. § 1002(16)(B). According to the Plan's annual report filed with the Department of Labor in 2021, Vi-Jon is also the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). In these capacities, Vi-Jon is a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(A) & (C).

**ANSWER:** Answering paragraph 10 of the Complaint, as to the first sentence of said paragraph, GreatBanc alleges that said sentence sets forth conclusions of law as to which no response is required. As to the second sentence of said paragraph, GreatBanc alleges that said sentence refers to the contents of a document that speaks for itself and sets forth conclusions of law as to which no response is required. As to the third sentence of said paragraph, GreatBanc alleges that said sentence sets forth conclusions of law as to which no response is required.

11. The Plan was established by Vi-Jon with an effective date of January 1, 2020.

**ANSWER:** Answering paragraph 11 of the Complaint, GreatBanc admits that the Plan referred to in said paragraph has an effective date of January 1, 2020.

12. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" within the meaning of 29 U.S.C. § 1107(d)(6).

**ANSWER:** Answering paragraph 12 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

13. The Plan was designed to invest primarily in "qualifying employer securities," as defined in 29 U.S.C. § 1107(d)(5).

**ANSWER:** Answering paragraph 13 of the Complaint, GreatBanc alleges that said paragraph refers to the contents of documents that speak for themselves. GreatBanc further alleges that said paragraph sets forth conclusions of law as to which no response is required.

7446878

14.     Through the ESOP Transaction, the Plan acquired 1,203,711 shares of Vi-Jon stock, representing 100% of the issued shares, for $398,512,583. The Plan did not possess any capital prior to the ESOP Transaction and had to borrow 100% of the purchase price. Through refinancing contemplated as part of the ESOP Transaction, the Plan became indebted to the company for the outstanding principal and interest, to be paid over 49 years. Shares of stock are released to participant accounts from an undivided ESOP account in proportion to the amount of the total debt paid each year. The ESOP Transaction closed on or around August 20, 2020.

**ANSWER:**     Answering paragraph 14 of the Complaint, GreatBanc alleges that the number of shares of employer stock acquired in connection with the transactions at issue are determinable via the documents pursuant to which the transactions were completed. As to the second sentence of said paragraph, GreatBanc admits that the ESOP borrowed the funds used to acquire the shares of employer stock at issue. As to the remaining allegations of said paragraph, GreatBanc admits the allegations of said paragraph. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

15.     As of December 31, 2020, the Plan had 1,031 participants with shares allocated to their individual accounts. Pursuant to the terms of the Plan and ERISA, participants are eligible to receive a retirement benefit based on the value of the shares allocated to their individual accounts at retirement.

**ANSWER:**     Answering paragraph 15 of the Complaint, as to the first sentence of said paragraph, GreatBanc lacks sufficient information upon which to base a response to the allegations of said sentence, and on that basis denies, generally and specifically, the allegations of said sentence.  As to the second sentence of said paragraph, GreatBanc alleges that said sentence refers to the contents of documents that speak for themselves.  GreatBanc further alleges that said sentence consists of conclusions of law to which no response is required.

16.     Plaintiff Paul "David" Laidig resides in Rockvale, Tennessee. Plaintiff Laidig has worked for Vi-Jon or its predecessor companies for 35 years. Plaintiff Laidig holds company

7

7446878

shares allocated to his individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Answering paragraph 16 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

17. Plaintiff Peter Lewis resides in Smyrna, Tennessee. Plaintiff Lewis has worked for Vi-Jon or its predecessor companies for 27 years. Plaintiff Lewis holds company shares allocated to his individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Answering paragraph 17 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

18. Plaintiff Derek Kemp resides in Cahokia, Illinois. Plaintiff Kemp worked for Vi-Jon for 21 years as a chemical operator. Plaintiff Kemp holds company shares allocated to his individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Answering paragraph 18 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

19. Berkshire is a Massachusetts limited partnership. Berkshire is controlled by its general partner, Sixth Berkshire Associates LLC ("Berkshire GP"), a Massachusetts limited liability company.

**ANSWER:** Answering paragraph 19 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

20. Berkshire and Berkshire GP are affiliated with Berkshire Partners LLC

8

7446878

("Berkshire Firm"), a private equity investment firm based in Boston. The individual managers and members of Berkshire GP are managers and members of Berkshire Firm. Through Berkshire, Berkshire GP, and similar vehicles, Berkshire Firm members use their own capital and capital raised from other institutional investors (i.e., limited partners) to acquire privately held companies for investment purposes. Berkshire Firm investment vehicles typically hold a stake in a company for 3-7 years before selling that stake and distributing proceeds to members and other investors. [FN3: Based on the 78 portfolio company investments for which Berkshire Firm identifies start and end dates on its website, the median amount of time between a Berkshire Firm investment vehicle acquiring its stake and exiting its stake was 5 years. In more than half of the 78 reported investments, the Berkshire Firm vehicle held its stake for between 3 and 7 years, and in 85% of all cases the Berkshire Firm vehicle held its stake for less than 10 years.]

**ANSWER:** Answering paragraph 20 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

21. In 2006, Berkshire acquired a majority stake in Vi-Jon's predecessors, Missouri's Vi-Jon Laboratories Inc. and Tennessee's Cumberland Swan Holdings Inc., and merged them under the Vi-Jon name. Berkshire also elected Vi-Jon's Board of Directors, including three directors employed by Berkshire Firm, at least one of which was also a member of Berkshire GP.

**ANSWER:** Answering paragraph 21 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

22. Fourteen years later, in 2020, Berkshire still held its Vi-Jon stake and Board seats. Through the ESOP Transaction, Berkshire unloaded its stake. Upon information and belief, through financing and refinancing agreements made part of the ESOP Transaction, Berkshire received cash and/or notes for its interest in Vi-Jon.

7446878

**ANSWER:** Answering paragraph 22 of the Complaint, GreatBanc admits that, in connection with the ESOP Transaction referred to in said paragraph, Berkshire Fund VI, Limited Partnership ("Berkshire") received cash and/or notes for its interest in the company that was the subject of the transaction. Except as so expressly admitted herein, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

23. In connection with the ESOP Transaction, Berkshire was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because Berkshire held, directly or indirectly, 10% or more of the Plan employer's stock.

**ANSWER:** Answering paragraph 23 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc admits that prior to the transaction at issue, Berkshire held, directly or indirectly, 10% or more of the stock of the company whose stock was acquired in the ESOP Transaction.

24. Brunner is a natural person. Upon information and belief, he resides in Missouri.

**ANSWER:** Answering paragraph 24 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

25. Brunner's grandfather founded Vi-Jon. Prior to 2006, Brunner was the controlling shareholder of Vi-Jon and a member of its Board of Directors.

**ANSWER:** Answering paragraph 25 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

26. In 2006, Brunner sold a majority stake in Vi-Jon to Berkshire and retained a minority stake and his Board seat. Brunner held his minority stake through the 1992 Brunner Trust. Brunner is the settlor of the 1992 Brunner Trust and, upon information and belief, a trustee

10

7446878

and beneficiary of the Brunner Trust.

**ANSWER:** Answering paragraph 26 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this paragraph and on that basis denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

27. In 2020, Brunner still held his Vi-Jon stake through the 1992 Brunner Trust, the Brunner Family Trust, and his Board seat with VJCS Holdings, Inc., Vi-Jon, Inc. and Vi-Jon Holding, Inc. Through the ESOP Transaction, Brunner liquidated his Vi-Jon stake. Upon information and belief, through financing and refinancing agreements made part of the ESOP Transaction, the Brunner Trusts received cash and/or notes for its interest in Vi-Jon.

**ANSWER:** Answering paragraph 27 of the Complaint, GreatBanc admits that, in connection with the ESOP transaction at issue in this lawsuit, the Brunner Trusts received cash and/or notes for their interest in the company.

28. In connection with the ESOP Transaction, the Brunner Trusts were each a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because, at relevant times, the Brunner Trusts held, directly or indirectly, 10% or more of the Plan employer's stock. [FN4: On his Personal Financial Disclosure Statement submitted in connection with his candidacy for Missouri governor in 2016, Brunner classified the 1992 Brunner Trust's interest in Vi-Jon as a 10% or more stake.]

**ANSWER:** Answering paragraph 28 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc admits that prior to the transaction at issue, the Brunner Trusts held, directly or indirectly, 10% or more of the stock of the company whose stock was acquired in the ESOP Transaction.

29. Brunner was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because he was a director of the Plan's employer.

**ANSWER:** Answering paragraph 29 of the Complaint, GreatBanc alleges that said paragraph

7446878

sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc admits that prior to the transaction at issue, the Brunner Trusts held, directly or indirectly, 10% or more of the stock of the company whose stock was acquired in the ESOP Transaction.

30. From the beginning of 2020, up to the ESOP Transaction, Vi-Jon was owned and operated through two companies, Defendant VJCS Holdings, Inc. ("VJCS") and Defendant Vi-Jon, Inc. VJCS and Vi-Jon, Inc. had the same Board of Directors consisting of nine individuals: John G. Brunner, Gerald Bowe ("Bowe"), Jane Brock-Wilson ("Brock-Wilson"), Gregory Delaney ("Delaney"), Gerald Greiman ("Greiman"), Sharlyn C. Heslam ("Heslam"), Edward Kolodzieski ("Kolodzieski"), Lawrence J. LeGrand ("LeGrand"), and Spencer Murray ("Murray").

**ANSWER:** Answering paragraph 30 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

31. Defendant Bowe was chairman of the board of directors of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Bristol, New Hampshire.

**ANSWER:** Answering paragraph 31 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

32. Defendant Brock-Wilson was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, she resides in Boston, Massachusetts.

**ANSWER:** Answering paragraph 32 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

7446878

33.     Defendant Delaney was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Ponta Vedra Beach, Florida.

**ANSWER:**     Answering paragraph 33 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

34.     Defendant Greiman was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in St. Louis, Missouri.

**ANSWER:**     Answering paragraph 34 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

35.     Defendant Heslam was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, she resides in Weston, Massachusetts.

**ANSWER:**     Answering paragraph 35 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

36.     Defendant Kolodzieski was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Manchester, Pennsylvania.

**ANSWER:**     Answering paragraph 36 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

37.     Defendant LeGrand was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, at the time of the ESOP Transaction, and after the ESOP Transaction for the

13

7446878

surviving entity Vi-Jon Holding, Inc. Upon information and belief, he resides in St. Louis, Missouri.

**ANSWER:** Answering paragraph 37 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

38. Defendant Murray was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in San Diego, California.

**ANSWER:** Answering paragraph 38 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

39. GreatBanc signed an engagement letter with Vi-Jon, Inc. on June 1, 2020.

**ANSWER:** Answering paragraph 39 of the Complaint, GreatBanc admits the allegations of said paragraph.

40. On June 10, 2020, subsequent to GreatBanc's engagement by Vi-Jon, Inc., an entity called VJ Holding Corp. ("VJHC") was formed. GreatBanc also signed an engagement letter with VJHC on June 11, 2020.

**ANSWER:** Answering paragraph 40 of the Complaint, GreatBanc admits the allegations of said paragraph.

41. The board members of VJHC between June 10, 2020 and August 21, 2020 were Defendants Rich Koulouris ("Koulouris"), Keith Grypp ("Grypp"), and Scott Mekus ("Mekus" and together with Brunner, Bowe, Brock-Wilson, Delaney, Greiman, Heslam, Kolodzieski, LeGrand, and Murray the "Director Defendants"). VJHC had no assets or business.

**ANSWER:** Answering paragraph 41 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

14

7446878

42. Defendant Koulouris was Chief Executive Officer of VJHC and Vi-Jon, Inc. in 2020 and at the time of the ESOP Transaction.

**ANSWER:** Answering paragraph 42 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

43. Defendant Mekus was Chief Financial Officer in 2020 of VJHC and Vi-Jon, Inc. and at the time of the ESOP Transaction.

**ANSWER:** Answering paragraph 43 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

44. Defendant Grypp was Vice President, General Counsel and Secretary in 2020 of VJHC and Vi-Jon, Inc. and at the time of the ESOP Transaction.

**ANSWER:** Answering paragraph 44 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

45. VJHC and VJCS were merged into Vi-Jon Parent, Inc. on August 21, 2020. Vi-Jon Parent, Inc. was formed on August 19, 2020. The board members of Vi-Jon Parent, Inc. were Koulouris, Grypp, and Mekus. According to the Plan document, Vi-Jon Parent, Inc. was the primary sponsor of the ESOP.

**ANSWER:** Answering paragraph 45 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves. To the extent a further response to said paragraph may be required, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

15

7446878

46.     Each of the Director Defendants is individually a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because each was a director of the entities (VJCS, VJHC, Vi-Jon, Inc., and Vi-Jon Parent, Inc.) that after a series of mergers, became the Plan's employer.

**ANSWER:**     Answering paragraph 46 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.  To the extent a further response to said paragraph may be required, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

47.     As parties in interest, the Director Defendants each benefited from the unfair sale price through transfers of excess proceeds of the ESOP Transaction. See Fish, 109 F. Supp. 3d at 1043 ("[The] defendants [that] can be required to disgorge the proceeds of the [prohibited transaction include] a knowing, gratuitous transferee[.]")[.]").

**ANSWER:**     Answering paragraph 47 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.  To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

48.     The Director Defendants comprised the boards of directors for the entities that retained GreatBanc.

**ANSWER:**     Answering paragraph 48 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

49.     As appointing fiduciaries, the Director Defendants had a duty to ensure that GreatBanc was qualified and would represent the best interest of the Plan. The corporate records of the Vi-Jon Entity Defendants, including board of directors' minutes, do not reflect a diligent investigation of GreatBanc's qualifications. There is an absence of evidence that the Vi-Jon

16

7446878

Entity Defendants performed any evaluation of whether GreatBanc would protected the best interest of the Plan.

**ANSWER:** Answering paragraph 49 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

50. As appointing fiduciaries, the Director Defendants had an ongoing duty to monitor GreatBanc prior to the ESOP Transaction. The corporate records of the Vi-Jon Entity Defendants, including board of directors' minutes, do not reflect any monitoring of GreatBanc's activities. There is an absence of evidence that the Vi-Jon Entity Defendants performed any evaluation of whether GreatBanc was protecting the best interest of the Plan.

**ANSWER:** Answering paragraph 50 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

51. The Director Defendants comprised the Vi-Jon Boards of Directors prior to the ESOP Transaction, at the time of the ESOP Transaction, and in two instances after the ESOP Transaction. The Director Defendants had the fiduciary power to appoint and remove other Plan fiduciaries, to wit, the Plan's trustee. The Director Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

**ANSWER:** Answering paragraph 51 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each

17

7446878

and every allegation of said sentence and the whole thereof.

52.     GreatBanc is an Illinois corporation headquartered in Lisle, Illinois. GreatBanc is the surviving independent wing of a banking group that was largely subsumed by Citizens Bank in 2007. GreatBanc generates 90% of its revenue from services to employee benefit plans and promotes ESOP trustee services as its core line of employee benefits service.

**ANSWER:**     Answering paragraph 52 of the Complaint, as to the first sentence of said paragraph, GreatBanc admits the allegations therein. As to the second sentence of said paragraph, GreatBanc denies the allegations of said sentence. As to the third sentence of said paragraph, GreatBanc admits the allegations of said sentence. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

53.     The market for ESOP fiduciary services is competitive. Each year, GreatBanc competes for jobs doled out by a small group of firms that regularly advise business owners on company valuation and ESOP formation.

**ANSWER:**     Answering paragraph 53 of the Complaint, as to the first sentence of said paragraph, GreatBanc lacks sufficient information upon which to base a response to this sentence and on that basis denies, generally and specifically, each and every allegation of said sentence and the whole thereof.  As to the second sentence of said paragraph, GreatBanc admits that it competes with other firms offering ESOP fiduciary services.  Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

54.     Although technically a stand-in for the employee plan, an ESOP trustee is hired, paid, and may be removed by counterparties bent on closing a deal—and doing so at the highest possible price. An ESOP trustee's need to appease the customer to stay employed and earn repeat business from sell-side advisor firms "make[s] it ... difficult for a fiduciary to maintain its independence from its counterparts[.]" *See Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610,

7446878

643 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019).

**ANSWER:** Answering paragraph 54 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

55. Vi-Jon, through its Board of Directors, appointed GreatBanc as the trustee of the Plan. As trustee, GreatBanc had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

**ANSWER:** Answering paragraph 55 of the Complaint, GreatBanc admits that it had authority to authorize and negotiate the ESOP Transaction on behalf of the ESOP. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

56. On or around August 20, 2020, GreatBanc approved the terms of the ESOP Transaction, including the $398 million sale price and 49-year loan term, on behalf of the Plan.

**ANSWER:** Answering paragraph 56 of the Complaint, GreatBanc admits that on or around August 20, 2020, it approved, on behalf of the Plan, the terms of the ESOP transaction at issue in this lawsuit pursuant to the terms of the several documents evidencing that transaction.

57. In connection with the ESOP Transaction, GreatBanc acted as a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Plan's trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

**ANSWER:** Answering paragraph 57 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent that a further

19

7446878

response to said paragraph may be required, GreatBanc admits that it acted as a fiduciary to the ESOP in connection with the ESOP Transaction at issue.

58. As trustee, Defendant GreatBanc was also a named fiduciary of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), and under the terms of the written instruments under which the Plan was established and maintained.

**ANSWER:** Answering paragraph 58 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves. To the extent that a further response to said paragraph may be required, GreatBanc admits that it acted as a fiduciary to the ESOP in connection with the ESOP Transaction at issue.

59. At the time Vi-Jon appointed GreatBanc as trustee, GreatBanc had been sued at least 10 times by private plaintiffs and the Department of Labor related to its role as trustee for ESOPs and in ESOP transactions. Information related to those lawsuits was publicly available at the time Vi-Jon appointed GreatBanc.

**ANSWER:** Answering paragraph 59 of the Complaint, GreatBanc admits that it was appointed as a trustee and acted as a fiduciary to the ESOP in connection with the ESOP Transaction at issue. GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves. To the extent a further response may be required to said paragraph, GreatBanc admits that at the time of its engagement to act as Trustee in this matter, GreatBanc had been named as a Defendant in certain civil actions relating to services that it provided to other clients and that the number of such actions is a matter of public record and alleges that no court has ever concluded that GreatBanc has breached its fiduciary duty in connection with a matter in which GreatBanc has been engaged to provide services as an ESOP trustee. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

60. ERISA prohibits transactions between a Plan and a party in interest, and

20

7446878

transactions designed to benefit a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A) & (D). "[P]urchase of employer stock by [a] Plan ... [is] indisputably [a] prohibited transaction[] within the meaning of [29 U.S.C. § 1106]." *Allen*, 835 F.3d at 675.

**ANSWER:** Answering paragraph 60 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

61. ERISA includes a qualified exception to this prohibition in employer stock cases. If the parties to the transaction can prove that the "the acquisition or sale by a plan of qualifying employer securities ... was for adequate consideration," 29 U.S.C. § 1108(e)(1), the prohibition does not apply. *See also Allen*, 835 F.3d at 675 ("The exceptions ... include the acquisition of employer stock if it is for 'adequate consideration.'").

**ANSWER:** Answering paragraph 61 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

62. "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18). "Fair market value" is customarily considered to be the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset.

*See Proposed Regulation Relating to the Definition of Adequate Consideration,* 53 Fed. Reg. 17637 (May 17, 1988). [FN5: Courts and practitioners customarily use this definition for guidance, although the regulation was never enacted. *See Brundle*, 919 F.3d at 770 ("DOL[] has proposed, but never enacted, regulations [defining "adequate consideration."] … [C]ourts look to these regulations for guidance[.]").]

**ANSWER:** Answering paragraph 62 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. GreatBanc further alleges that

21

said paragraph refers to the contents of a document that speaks for itself.

63. A fiduciary is liable for causing a Plan to enter into a non-exempt prohibited transaction. *See* 29 U.S.C. § 1106(a) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [prohibited transaction]."); *see also Brundle*, 919 F. 3d at 772.

**ANSWER:** Answering paragraph 63 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

64. Any other person is liable for knowingly participating in and benefiting from a prohibited transaction. *See Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 244–45 (2000) ("[ERISA] authorize[s] a civil action against a nonfiduciary who participates in a transaction prohibited by § [1106](a)(1).").

**ANSWER:** Answering paragraph 64 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

65. The ESOP Transaction was a prohibited transaction and, based on the information available to Plaintiffs at this stage, it is reasonable to infer that Defendants are liable to the Plan.

**ANSWER:** Answering paragraph 65 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

66. Unlike most private owners who sell their company via an ESOP transaction, selling companies is the Berkshire Firm's business. In the last 35 years, the Berkshire Firm, through its affiliated investment vehicles, has sold interests in at least 78 companies. Yet, until Vi-Jon, the Berkshire Firm does not appear to have ever sold a company to an ESOP. [FN6: The companies on the Berkshire Firm's public list of closed investments, see s*upra* at note 2, do not appear in Department of Labor ESOP filings, nor did a search for press releases or other public statements regarding ESOP or "employee-owned" status of such companies yield any results.]

**ANSWER:** Answering paragraph 66 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

67. Berkshire attempted to sell Vi-Jon in its usual way. In 2014, Berkshire hired two investment banks to shop the company in the marketplace. *See* Lillian Rizzo and Gillian Tan, *Personal-Care Products Maker Vi-Jon Is Up for Sale: Owner Berkshire Partners Could Fetch Up to $400 million, WALL STREET JOURNAL (Aug. 1, 2014 12:38 p.m. ET),* https://www.wsj.com/articles/personal-care-products-maker-vi-jon-is-up-for-sale-1406911097. The target price in early discussions was $400 million. *See id.*

**ANSWER:** Answering paragraph 67 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof. GreatBanc further alleges that said paragraph refers to the contents of a document that speaks for itself.

68. No buyer agreed to pay the price Berkshire wanted, despite the company being shopped around by investment banks.

**ANSWER:** Answering paragraph 68 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

69. Although the negotiations were not aired publicly, the challenge to finding a buyer willing to pay Berkshire's price was likely related to the company's high debt load and lack of pricing flexibility in the industry. In 2012, crediting rating agency Moody's downgraded Vi-Jon's credit rating, explaining that "lower profitability has lead to weak cash flow generation, increased leverage and a weaker liquidity profile." *See* MOODY'S INVESTORS SERVICE, *Moody's Downgrades Vi-Jon's CFR to B2* (Apr. 11, 2012), https://www.moodys.com/research/Moodys-Downgrades-Vi-Jons-CFR-to-B2--PR_242910 (hereinafter "*Moody's Downgrades Vi-Jon*"). Berkshire placed $245 million of debt on the

7446878

company to buy it in 2006, and the company still owed at least $167 million in 2012. *See id.*; *see also* MOODY'S INVESTORS SERVICE, *Moody's Assigns First-Time Ratings to VJCS Acquisition* (July 27, 2006). According to Moody's, the company's debt-to-income ratio suffered over time as the company's operating costs increased without corresponding price increases. *See Moody's Downgrades Vi-Jon. Moody's* analyst predicted that Vi-Jon's credit and pricing issues would persist: "restoring credit metrics to historic levels will be challenging and may take longer than management anticipates given the highly competitive nature of the private label business and lack of near-term pricing flexibility." [FN7: Moody's did not adjust its ratings of Vi-Jon's debt after the 2012 downgrade and withdrew its ratings of Vi-Jon altogether in 2013.]

**ANSWER:** Answering paragraph 69 of the Complaint, as to the first sentence of said paragraph GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof. As to the remainder of said paragraph, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof. GreatBanc further alleges that said paragraph refers to the contents of a document that speaks for itself. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

70. Berkshire and the Brunner Defendants remained focused on selling the company after 2014 to no avail. Berkshire had long passed the end of its typical investment timeline. *See supra* at note 2. Based on reports from management, Plaintiffs Laidig and Lewis understood that Berkshire installed a new CEO from outside the company in March 2019 to improve its sale prospects. The new CEO brought consumer brands mergers and acquisitions experience. By 2020, Vi-Jon was among Berkshire's top five longest-held investments, and still no deal was in place.

**ANSWER:** Answering paragraph 70 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and

24

7446878

specifically, each and every allegation of said paragraph and the whole thereof.

71.     After failing to find a buyer at their desired price in the usual places, Berkshire and the Brunner Defendants turned to a new type of transaction: an ESOP. While Berkshire typically sits at arm's-length from buyers in sales mediated through investment banks or public exchanges (IPOs), an ESOP transaction is something short of that. Berkshire and the Brunner Defendants created the buyer (the Plan) on their own terms and chose the agent that would sit on the other side of the table (GreatBanc).

**ANSWER:**     Answering paragraph 71 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

72.     Berkshire and Brunner were able to control the Plan formation and trustee hiring process through their control of the company's Board. As Vi-Jon's majority shareholder, Berkshire elected the Board members and could replace Board members that frustrated its wishes. It does not appear, however, that such measures were necessary. The nine-member Board already consisted of five persons tied to ownership: three active Berkshire Firm members (Sharlyn C. Heslam, Managing Director and General Counsel at Berkshire; Jane Brock-Wilson, Senior Advisor at Berkshire; Spencer Murray, Principal at Berkshire), a professional corporate officer regularly installed by Berkshire as an officer of its portfolio companies, and Brunner. This seller-affiliated majority was able to steer the company toward the ESOP Transaction. Plaintiffs and other Plan participants were not invited to participate in the process.

**ANSWER:**     Answering paragraph 72 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

73.     The worldwide spread of COVID-19 slowly entered public consciousness at the end of 2019 and start of 2020. In January 2020, Vi-Jon ramped up hand sanitizer production to meet and anticipate the growing demand for hygiene products to slow the spread of the disease. In March 2020, transmission and public awareness of the disease escalated dramatically. By March 23, 2020, the U.S. Food and Drug Administration issued several policies designed to

25

7446878

address shortages of hand sanitizer. *See Policy for Temporary Compounding of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency*, 85 Fed. Reg. 16370 (Mar. 23, 2020) ("[C]onsumers and healthcare professionals are currently experiencing difficulties accessing alcohol-based hand sanitizers.").

**ANSWER:**    Answering paragraph 73 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.   GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves.

74.    As a maker of hand sanitizer, Vi-Jon did well as the COVID-19 pandemic escalated and demand for hand sanitizer peaked in the first half of 2020. *See* U.S. INT'L TRADE COMM'N, *COVID-19 Related Goods: The U.S. Industry, Market, Trade, and Supply Chain Challenges*, 194¬201 (Dec. 2020), https://www.usitc.gov/publications/332/pub5145.pdf (analyzing trajectory and peak of COVID-related demand for hand sanitizer and other goods) (hereinafter "*COVID-19 Related Goods*").

**ANSWER:**    Answering paragraph 74 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.   GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves.

75.    However, Vi-Jon's surge in profits was temporary. Plaintiffs Laidig and Lewis, as longtime workers in Vi-Jon's factories, recall that past public health emergencies brought periods of increased demand for the company's hygiene products followed by production slowdowns as conditions changed. The company's books should have shown the same rises and falls and cautioned that increased demand during public health emergencies is part of the business, not a paradigm shift. Further, by June 2020, many new competitors had entered an already competitive space, threatening Vi-Jon's market share and its ability to sustain increased profits over the long-term through higher prices. *See COVID-19 Related Goods*, at 197-98; *supra*

26

at ¶ 47. By July 2020, scientific studies began to emerge that deemphasized surface contact as a COVID-19 transmission vehicle. *See, e.g.*, Emanuel Goldman, *Exaggerated risk of transmission of COVID-19 by fomites*, THE LANCET (July 3, 2020), https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30561-2/fulltext. These studies were widely reported at the time and altered prevailing assumptions, which should reasonably have been expected to lower demand for hand sanitizer compared to the early months of the pandemic. See, e.g., Derek Thompson, *Hygiene Theater Is a Waste of Time*, THE ATLANTIC (July 27, 2020), ttps://www.theatlantic.com/ideas/archive/2020/07/scourge-hygiene-theater/614599. [FN8: The fall after August 2020 was significant. Imports fell more than 75% by October 2020 from their July 2020 peak, and overall demand "dropped considerably" by December 2020. *See id.*] By certain indicators, the hand sanitizer market started to decline the next month, just as Defendants were finalizing the ESOP Transaction. *See COVID-19 Related Goods*, at 198-99 (finding that imports of hand sanitizer started to decline in August 2020). [FN9: See also Linsey C. Marr, Yes, the Coronavirus Is in the Air, NEW YORK TIMES (July 30, 2020), https://www.nytimes.com/2020/07/30/opinion/coronavirus-aerosols.html.]

**ANSWER:** Answering paragraph 75 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof. GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves.

76. In short, there were a number of reasons to discount early pandemic profits when Defendants valued the company on August 20, 2020. This appears to be corroborated by the fact that no open market buyer materialized to buy Vi-Jon at Berkshire's preferred price in response to the booming market conditions of the early months of the pandemic.

**ANSWER:** Answering paragraph 76 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

7446878

77.     Berkshire and the Brunner Defendants, however, were able to push the deal through with their hand-picked trustee, GreatBanc. The price to be paid by the Plan to acquire Vi-Jon was determined between Defendants and their advisors. The company assisted by preparing financial projections.  The $398 million price that Defendants settled was 99.5% of the $400 million that Berkshire had previously failed to obtain from arms-length buyers. [FN10: Berkshire's obstinance is partly explained, but not excused, by the compensation structure and incentives in place for Berkshire Firm, Berkshire GP, and their individual managers. Private equity firms are generally paid 20% of the profits associated with the sale of portfolio companies—their primary form of compensation. *See* CONGRESSIONAL RESEARCH SERVICE, *Taxation of Carried Interest*, at 3 (July 9, 2020), https://crsreports.congress.gov/product/pdf/R/R46447. But these fees generally only accrue if the profits exceed some threshold, known as a hurdle. *Id.* Indeed, Berkshire Firm has disclosed that its managers and general partner entities receive a share of profits earned for all investors if those profits exceed a hurdle rate. *See* Lisa Ward, THE DEAL PIPELINE (Sept. 3, 2012), https://berkshirepartners.com/wpcontent/uploads/2020/11/invested_final_locked.pdf. Thus, the potential receipt of millions of dollars in compensation by Berkshire's managers in connection with the sale of Vi-Jon was likely dependent upon selling Vi-Jon for a high-enough price to exceed Berkshire GP's compensation hurdle.] *See supra* at ¶¶ 45-46.

**ANSWER:**    Answering paragraph 77 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof. GreatBanc further alleges that said paragraph refers to the contents of documents that speak for themselves.

78.     Upon information and belief, Defendants failed to appropriately discount pandemic-driven sales figures in their valuation process. Instead, it appears that Defendants latched onto pandemic-driven sales figures to attempt to justify Berkshire's asking price, notwithstanding the temporary nature of the underlying market conditions. In a meeting with Vi-Jon's management in 2021, management informed a group of employees that included Plaintiff

28

7446878

Lewis that 2020 profits were the company's "new baseline" for financial performance, including in its arrangements with creditors. This statement implies that the company created, and Defendants relied upon, financial forecasts that failed to appropriately discount temporary market conditions in the first half of 2020 in the process of negotiating the purchase price and arranging financing for the ESOP Transaction. Defendants' unreasonably optimistic forecasts resulted in an inflated sale price in excess of the fair market value of the company.

**ANSWER:** Answering paragraph 78 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

79. Defendants knew that the transaction was prohibited by ERISA. GreatBanc is a professional ESOP trustee and aware of ERISA's proscription against party-in-interest transactions involving employer stock. [FN11: GreatBanc typically attempts to shift its fiduciary risk back to the sellers or the sponsor company to the maximum extent possible without violating ERISA's anti-exculpatory provision. *See* 29 U.S.C. § 1110(a)). The precise location of that line is the subject of recurring dispute. *See, e.g.*, *McMaken v. GreatBanc Tr. Co.*, 2019 WL 1468157, at \*5 (N.D. Ill. Apr. 3, 2019); *Hurtado v. Rainbow Disposal Co., Inc.*, 2018 WL 3372752, at \*16 (C.D. Cal. July 9, 2018); *Harris v. GreatBanc Tr. Co.*, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013).] While the underlying stock purchase agreement and valuation documents are not available to Plaintiffs, it is customary for such documents to acknowledge that the ESOP transaction is a prohibited transaction, before reciting the claimed "adequate consideration" exception. Each Defendant likely reviewed and affirmed documents containing similar acknowledgements in this case.

**ANSWER:** Answering paragraph 79 of the Complaint, answering the first sentence of said paragraph, GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof. As to the second sentence of said paragraph, GreatBanc admits that it is a professional ESOP trustee and that it is aware of the general legal framework surrounding ESOP transactions. As to the footnote, to the extent said paragraph refers to case

law decisions, said paragraph states conclusions of law as to which no response is required. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

80.     It is also reasonable to infer that Berkshire and the Brunner Defendants knew that the sale price exceeded fair market value. Berkshire, through Berkshire GP and its individual managers that also manage Berkshire Firm, is in the business of valuing private companies. Earning attractive returns for its members and investors depends on Berkshire's ability to create favorable financial metrics in its portfolio companies and then find buyers that will place a high value on those metrics. Despite its efforts here, Berkshire failed to find a Vi-Jon buyer using its typical means. Berkshire thus knew that the market's appraisal of the underlying financial metrics did not support its asking price yet proceeded to extract that price from the ESOP anyway.

**ANSWER:**     Answering paragraph 80 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

81.     Berkshire also was in position to control the ESOP valuation process and select the financial metrics that would be considered. Berkshire Firm had three active members on the company's Board, plus a longtime agent that previously served as Vi-Jon's CEO and as the CEO of other Berkshire portfolio companies. Berkshire also installed a new CEO for the purpose of steering the company toward a sale. Berkshire could, and upon information and belief did, create or approve financial forecasts that failed to reasonably discount temporary market conditions.

**ANSWER:**     Answering paragraph 81 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

82.     The Brunner Defendants also had knowledge of failed sales attempts and the ESOP valuation process. Any proposed sale of the company necessarily implicated the Brunner Trust's minority stake. The Brunner Trusts, through their agent Brunner, were informed of failed attempts to sell the company. Brunner also maintained a relationship with Berkshire Firm outside

30

7446878

of Vi-Jon and invested Brunner Trust funds in other Berkshire investment vehicles. Brunner also served continuously on Vi-Jon's Board.

**ANSWER:** Answering paragraph 82 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

83. The Members of the Board, including Brunner, had additional knowledge of failed sales attempts, received regular financial reports regarding the company, participated in the creation and administration of the ESOP, and was in position to create or approve financial forecasts used in connection with the ESOP valuation process.

**ANSWER:** Answering paragraph 83 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

84. In leveraged deals like the ESOP Transaction, if the "purchase price [i]s inflated and the debt load [i]s unsustainable", the "losers" are the "employee participants in the new ... ESOP." *Chesemore v. Fenkell*, 829 F.3d 803, 807 (7th Cir. 2016).

**ANSWER:** Answering paragraph 84 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. GreatBanc further denies that the purchase price of the stock acquired by the ESOP in connection with the ESOP Transaction was "inflated."

85. Even if Vi-Jon could have fortuitously met Defendants' overly optimistic performance expectations after the ESOP Transaction, participants would be harmed by the inflated sale price. It takes more capital just to pay off the financing required to obtain the shares, limiting the funds that can be used to make the company (and thus, participants' shares) more valuable. It also takes longer to pay off the debt, which means that fewer shares are released to participants each year. Under the current term, Plan participants will not fully own the company until well after its youngest employees pass retirement age.

**ANSWER:** Answering paragraph 85 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

7446878

86. The company, however, has struggled to meet Defendants' unreasonable expectations, further endangering participants' interests. In a late 2021 meeting with management attended by Plaintiff Lewis, management informed employees that the company was short of its 2021 performance expectations under key financial metrics. A shortfall would allow the company's lenders to raise its interest rates—protecting the lenders' investment at the expense of the equity holders, the Plan and its participants.

**ANSWER**: Answering paragraph 86 of the Complaint, as to the first sentence of said paragraph, GreatBanc denies, generally and specifically, each and every allegation of said sentence and the whole thereof. As to the remainder of said paragraph, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

87. Other recent events have caused Plaintiffs concern. In 2022, management informed employees, including Plaintiffs Laidig and Lewis, that the company is selling significant assets including real estate and equipment and leasing them back from the buyers. Management has given Plaintiffs the impression that such transactions are aimed at appeasing lenders after the company fell behind financial performance expectations in 2021. Plaintiffs are concerned that the company is already on defense due to the excessive sale price and debt load and is being forced to make decisions that will detract from the long-term viability of the company and value of their shares.

**ANSWER:** Answering paragraph 87 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

88. Plaintiffs are further discouraged by what they see around the factory. An entire 750,000 square foot warehouse has been full of inventory at times, and the company has paused production multiple times due to the excess supply. [FN12: This is consistent with media reporting on retail supply of hand sanitizer after demand subsided. *See* Jaewon Kang, *Retailers*

7446878

*Couldn't Stock Hand Sanitizer Fast Enough. Now They Can't Give It Away*, WALL STREET JOURNAL (May 20, 2021 11:00 a.m. ET), https://www.wsj.com/articles/america-is-awash-in-hand-sanitizer-11621522829; Petula Dvorak, *Last year, hand sanitizer was a precious commodity. Now, they're giving it away*, WASHINGTON POST (June 24, 2021 2:02 p.m. ET), https://www.washingtonpost.com/local/last-year-hand-sanitizer-was-a-precious-commodity-now-theyre-giving-it-away/2021/06/24/351f1278-d504-11eb-9f29-e9e6c9e843c6_story.html.] Worker turnover is also high, as the company appears to have little flexibility to increase employee compensation in a tight labor market. The ESOP participants now bear the risk that the company will not sustain sufficient value to provide the retirement benefits that the Plan was supposed to create.

**ANSWER:** Answering paragraph 88 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

89. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the Plan pursuant to this statutory provision.

**ANSWER:** Answering paragraph 89 of the Complaint, as to the first sentence of said paragraph, said sentence sets forth conclusions of law as to which no response is required. As to the second sentence of said paragraph, GreatBanc lacks sufficient information upon which to base a response to said sentence and, on that basis, denies, generally and specifically, each and every allegation of said sentence and the whole thereof.

90. Plaintiffs seek recovery for injuries to the Plan sustained as a result of the prohibited transactions during the statutory period and seek equitable relief on behalf of the Plan as a whole.

**ANSWER:** Answering paragraph 90 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof and deny that the

7446878

Plan sustained "injuries" or losses as alleged in said paragraph.

91. Plaintiffs additionally seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

**ANSWER:** Answering paragraph 91 of the Complaint, GreatBanc admits that Plaintiffs purport to seek certification of this action as a class action. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

92. Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the Vi-Jon Employee Stock Ownership Plan at any time since its inception, excluding Defendants, the directors of Vi-Jon or of any entity in which a Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded person.

**ANSWER:** Answering paragraph 92 of the Complaint, GreatBanc admits that Plaintiffs purport to assert their claims on behalf of a class of participants and beneficiaries of the Plan. Except as so expressly admitted, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

93. Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The Plan had over 1,000 participants as of the end of 2020.

**ANSWER:** Answering paragraph 93 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

94. Typicality: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

**ANSWER:** Answering paragraph 94 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

34

7446878

95. _Adequacy:_ Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

**ANSWER:** Answering paragraph 95 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

96. _Commonality:_ Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

    a. Whether GreatBanc served as a trustee in the Plan's acquisition of Vi-Jon stock;

    b. Whether GreatBanc is a fiduciary with respect to the Plan;

    c. Whether GreatBanc caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Vi-Jon stock and take a loan from parties in interest;

    d. Whether GreatBanc engaged in a good faith valuation of Vi-Jon stock in connection with the ESOP Transaction;

    e. Whether GreatBanc caused the Plan to pay more than fair market value for Vi-Jon stock;

    f. Whether the ESOP Transaction satisfied the "adequate consideration" exemption in all respects;

    g. Whether Vi-Jon was a party in interest and gave a loan to the Plan;

    h. Whether Berkshire and the Brunner Defendants, and other potential parties, were parties in interest;

    i. Whether Berkshire and the Brunner Defendants and other potential parties, knowingly participated in the prohibited stock transaction;

    j. Whether Berkshire and the Brunner Defendants, and other potential parties, are liable as transferees of proceeds of the ESOP Transaction;

    k. The proper form of equitable and injunctive relief; and

    l. The proper measure of monetary relief.

35

7446878

**ANSWER:** Answering paragraph 96 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

97. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

**ANSWER:** Answering paragraph 97 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

98. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as removal of GreatBanc as a fiduciary, rescission or amendment of the ESOP Transaction, or appointment of an independent fiduciary would be dispositive of non-party participants' interests. The accounting and restoration of property to the Plan that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

**ANSWER:** Answering paragraph 98 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

99. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims

36

7446878

of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**ANSWER:** Answering paragraph 99 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

100. Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**ANSWER:** Answering paragraph 100 of the Complaint, GreatBanc lacks sufficient information upon which to base a response to said paragraph and, on that basis, denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

101. Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:** Answering paragraph 101 of the Complaint, GreatBanc incorporates the foregoing paragraphs of this answer as though fully set forth herein.

102. The ESOP Transaction constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a direct or indirect sale or exchange of any property with parties in interest, Berkshire and the Brunner Defendants. In the alternative, the ESOP Transaction constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a direct or indirect sale or exchange of any property with a party in interest, Vi-Jon.

**ANSWER:** Answering paragraph 102 of the Complaint, GreatBanc denies that the ESOP Transaction was a prohibited transaction and alleges that the ESOP Transaction was exempt

37

7446878

from ERISA's prohibited transaction provisions because the ESOP Transaction was for adequate consideration.

103. The ESOP Transaction also constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(B) because GreatBanc, a Plan fiduciary, caused the Plan to enter into a credit transaction with a party in interest, Vi-Jon.

**ANSWER:** Answering paragraph 103 of the Complaint, GreatBanc denies that the ESOP Transaction was a prohibited transaction and alleges that the ESOP Transaction was exempt from ERISA's prohibited transaction provisions because the ESOP Transaction was for adequate consideration.

104. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Berkshire and the Brunner Defendants, of any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to Berkshire and the Brunner Defendants as payment for Vi-Jon stock. The ESOP Transaction also violated 29 U.S.C. § 1106(a)(1)(D) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a transaction that constituted the direct or indirect use of assets of the Plan for the benefit of parties in interest, Berkshire and the Brunner Defendants.

**ANSWER:** Answering paragraph 104 of the Complaint, GreatBanc denies that the ESOP Transaction was a prohibited transaction and alleges that the ESOP Transaction was exempt from ERISA's prohibited transaction provisions because the ESOP Transaction was for adequate consideration.

105. Although Plaintiffs are not required to plead facts to negate Defendants' anticipated "adequate consideration" defense, see *Allen*, 835 F.3d at 676 ("We now hold squarely that ... exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them."), the circumstances around the ESOP Transaction show that the sale price was excessive and is causing ongoing harm to the company, the Plan, and Plan

7446878

participants. The Plan and the company must bear the excessive price through nearly 50 years of debt. The excessive price and resulting debt adversely affect the value of participants' retirement benefits. GreatBanc did not conduct an adequate, good faith, investigation into the value of the stock.

**ANSWER:** Answering paragraph 105 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

106. ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any improper profits, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:** Answering paragraph 106 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

107. ERISA, 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:** Answering paragraph 107 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

108. GreatBanc caused losses to the Plan resulting from the above-mentioned prohibited transactions and is liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:** Answering paragraph 108 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

109. Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:** Answering paragraph 109 of the Complaint, GreatBanc incorporates the foregoing paragraphs of this answer as though fully set forth herein.

7446878

110.     Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" The Supreme Court and courts in this district have held that such "appropriate equitable relief" includes recovering proceeds of a prohibited transaction from a knowing participant in the transaction. *See Harris Trust*, 530 U.S. 238; *Fish*, 109 F. Supp. 3d at 1043.

**ANSWER:**     Answering paragraph 110 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

111.     Berkshire and the Brunner Trusts, and Brunner indirectly through his interest in the Brunner Trusts, knowingly benefited from the ESOP Transaction by receiving cash or notes in exchange for their equity in Vi-Jon. Berkshire and the Brunner Defendants knew that their receipt of such consideration was caused by, and conditioned upon, the Plan buying Vi-Jon for $398 million—a prohibited transaction. *See supra* at ¶¶ 55, 57-60, 79-85. Berkshire and the Brunner Defendants orchestrated the ESOP Transaction for their own benefit after failing to sell Vi-Jon for the same price in the marketplace. Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Berkshire and the Brunner Defendants are liable to the Plan for undue proceeds of the ESOP Transaction.

**ANSWER:**     Answering paragraph 111 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

112. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:**     Answering paragraph 112 of the Complaint, GreatBanc incorporates the foregoing paragraphs of this answer as though fully set forth herein.

113. ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

**ANSWER:**     Answering paragraph 113 of the Complaint, GreatBanc alleges that said

paragraph sets forth conclusions of law as to which no response is required.

114. ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

**ANSWER:** Answering paragraph 114 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

115. ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

**ANSWER:** Answering paragraph 115 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required.

116. The Director Defendants were members of the boards of the Vi-Jon Entity Defendants with authority to appoint and remove a fiduciary ESOP Committee and the fiduciary trustee and to control the fiduciary Plan Administrator, and thus each Director Defendant was a fiduciary with respect to the Plan at the time of the ESOP Transaction.

**ANSWER:** Answering paragraph 116 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

117. Given the sale of their company to their employees through their company's ESOP; their positions as directors (and as an officer in the case of Bowe, Koulouris, Mekus and Grypp); their involvement in conceiving of, facilitating, and executing the ESOP Transaction; their approval of board resolutions and consents to facilitate the ESOP Transaction; their access to company financial information and provision of such information to the Trustee; and their appointment of the Trustee, the Director Defendants knew or should have known of the fiduciary

41

breaches of the Trustee in connection with its faulty due diligence and imprudent approval of the stock purchase for more than fair market value, knowingly participated in the Trustee's fiduciary breaches, and enabled the Trustee's fiduciary breach by themselves failing to monitor or to take action on information known to them, as required of an appointing fiduciary.

**ANSWER:** Answering paragraph 117 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

118. As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), the Director Defendants are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

**ANSWER:** Answering paragraph 118 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

119. The Director Defendants failed to make reasonable efforts to remedy the Trustee's violations of ERISA associated with the ESOP Transaction despite knowing of such violations, such as preventing the Plan's overpayment, reimbursing the Plan, or bringing the matter to the attention of the Secretary of Labor.

**ANSWER:** Answering paragraph 119 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof and further denies that GreatBanc engaged in any violations of ERISA associated with the Transaction at issue..

120. There was publicly available information at the time the Vi-Jon Entity Defendants, through their board of directors, appointed GreatBanc as trustee that GreatBanc had been sued numerous times by both private plaintiffs and the Department of Labor related to its role as trustee in ESOP transactions.

**ANSWER:** Answering paragraph 120 of the Complaint, GreatBanc admits that publicly available information was available at the time GreatBanc was engaged to provide services as

Trustee with respect to separate matters in which GreatBanc was named a Defendant regarding Trustee services that it provided in those matters. GreatBanc further alleges that no court has ever concluded that GreatBanc has breached its fiduciary duty in connection with a matter in which GreatBanc has been engaged to provide services as an ESOP trustee.

121. There is no evidence that any of the Director Defendants sufficiently vetted GreatBanc before the Vi-Jon Entity Defendants retained GreatBanc.

**ANSWER:** Answering paragraph 121 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

122. There are no minutes reflecting that the Director Defendants or Vi-Jon Entity Defendants adequately monitored GreatBanc during the ESOP Transaction process.

**ANSWER:** Answering paragraph 122 of the Complaint, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

123. The Director Defendants and Vi-Jon Entity Defendants created a structure in which GreatBanc would be retained by an entity with no assets and no business.

**ANSWER:** Answering paragraph 123 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

124. Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), the Director Defendants are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

**ANSWER:** Answering paragraph 124 of the Complaint, GreatBanc alleges that said paragraph sets forth conclusions of law as to which no response is required. To the extent a further response to said paragraph may be required, GreatBanc denies, generally and specifically, each and every allegation of said paragraph and the whole thereof.

7446878

**ANSWER TO PRAYER FOR RELIEF:** GreatBanc denies that Plaintiffs are entitled to any of the relief requested in the Complaint, including the relief sought in paragraphs A through P in the section prayer for relief.

## AFFIRMATIVE DEFENSES

GreatBanc hereby sets forth the affirmative defenses on which it may rely in this matter. In referring to the following affirmative defenses, GreatBanc does not intend to concede that it has the burden of proof relative to the matter asserted therein, or that any of the matters referred to is not a part of Plaintiff's affirmative's burden of proof.

### FIRST AFFIRMATIVE DEFENSE

125. As and for a first, separate and affirmative defense, GreatBanc alleges that the Complaint and each claim for relief set forth therein fail to set forth a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

126. As and for a second, separate and affirmative defense, GreatBanc alleges that Plaintiffs' claims for relief are barred, in whole or in part, because GreatBanc's conduct was at all times lawful, privileged and/or justified.

### THIRD AFFIRMATIVE DEFENSE

127. As and for a third, separate, and affirmative defense, GreatBanc alleges that Plaintiffs' claims are barred, in whole or in part, because GreatBanc did not directly, indirectly, or proximately cause or contribute to any alleged damage, loss, or injury sustained by Plaintiffs or by the ESOP.

### FOURTH AFFIRMATIVE DEFENSE

128. As and for a fourth, separate, and affirmative defense, GreatBanc alleges that, at all relevant times, GreatBanc acted in good faith and did not induce, assist, participate, or engage in any act or omission that constitutes a violation of law, as alleged in the Complaint or otherwise.

7446878

## FIFTH AFFIRMATIVE DEFENSE

129.    As and for a fifth, separate and affirmative defense, GreatBanc alleges that any losses alleged by Plaintiffs in the Complaint, which GreatBanc denies, were not caused by any alleged breach of fiduciary duty by GreatBanc but resulted from economic causes and events not related to any alleged breaches of fiduciary duty and from matters over which GreatBanc had no control.

## SIXTH AFFIRMATIVE DEFENSE

130.    As and for a sixth, separate and affirmative defense, GreatBanc presently has insufficient knowledge or information on which to form a belief as to whether GreatBanc may have additional, yet unstated affirmative defenses. GreatBanc reserves the right to assert additional affirmative defenses in the event discovery or further investigation indicates that asserting additional affirmative defenses would be warranted.

## SEVENTH AFFIRMATIVE DEFENSE

131.    As and for a seventh, separate and affirmative defense, GreatBanc alleges that the extent of its fiduciary obligations in this action was limited by the terms and provisions of its Trustee Engagement Agreement as amended, the applicable trust agreement as amended, and such other and further documents that governed and defined GreatBanc's relationship with the ESOP and ESOP sponsor at issue in this lawsuit.

## EIGHTH AFFIRMATIVE DEFENSE

132.    As and for an eighth, separate and affirmative defense, GreatBanc alleges that the sale of company stock at issue in this matter was for adequate consideration as defined by ERISA §§408(b)(12), 408(b)(17) and 408(e), and by other relevant provisions of ERISA and regulations promulgated thereunder and was therefore exempt from the provisions of ERISA §406.

7446878

**NINTH AFFIRMATIVE DEFENSE**

133.     As and for a ninth, separate and affirmative defense, GreatBanc alleges that pursuant to ERISA §408(b)(3), the loan to the ESOP that is the subject of this lawsuit was made primarily for the benefit of participants and beneficiaries of the ESOP, and that such loan is at a reasonable interest rate, and was therefore exempt from the provisions of ERISA §406.

**TENTH AFFIRMATIVE DEFENSE**

134.     As and for a tenth, separate and affirmative defense, GreatBanc alleges that pursuant to ERISA §408(b)(2), no more than reasonable compensation was paid to GreatBanc and/or others for services rendered to the ESOP that is the subject of this lawsuit, and that such payment of compensation was therefore exempt from the provisions of ERISA §406.

**ELEVENTH AFFIRMATIVE DEFENSE**

135.     As and for an eleventh, separate and affirmative defense, GreatBanc alleges that at no time did it have knowledge of any breach of duty on the part of any other fiduciary in this case, or on the part of any non-fiduciary.

**TWELFTH AFFIRMATIVE DEFENSE**

136.     As and for a twelfth, separate and affirmative defense, GreatBanc alleges that Plaintiffs lack constitutional standing to pursue the relief sought in their Complaint.

///

///

///

///

///

///

///

///

///

7446878

46

WHEREFORE, GreatBanc prays for judgment as follows:

1.       That the Court enter judgment in favor of GreatBanc, and against Plaintiffs;

2.       That Plaintiffs take nothing by their Complaint;

3.       For costs of suit herein, including reasonable attorneys' fees;

4.       For such other and further relief as the Court deems just and proper.


DATED:  June 4, 2025                      Respectfully submitted,


By:      /s/ *Joseph C. Faucher*

Joseph C. Faucher (CA SBN 137353)
(*Admitted Pro Hac Vice*)
Brian D. Murray (CA SBN 294100)
(*Admitted Pro Hac Vice*)
TRUCKER ✦ HUSS
A Professional Corporation
15760 Ventura Blvd., Ste. 910
Encino, CA 91436
Telephone:  (213) 537-1016
Facsimile:  (213) 537-1020
Email:      jfaucher@truckerhuss.com
             bmurray@truckerhuss.com

Catherine L. Reagan (CA SBN 327702)
(*Admitted Pro Hac Vice*)
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105
Phone:      (415) 788-3111
Facsimile:  (415) 421-2017
Email:      creagan@truckerhuss.com

Roger H. Stetson
David B. Lurie
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG, LLP
200 W. Madison St., Suite 3900
Chicago, Illinois 60606
Telephone:  (312) 984-3100
Email:      roger.stetson@bfkn.com
             david.lurie@bfkn.com

*Attorneys for Defendant*
*GreatBanc Trust Company*

7446878

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on June 4, 2025, he caused a copy of the foregoing document to be filed with the Court's CM/ECF system, which provides notice to all counsel of record via electronic mail.

/s/ *Joseph C. Faucher*
Joseph C. Faucher

7446878