**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Paul Laidig, Peter Lewis, and Derek Kemp, as representatives of a class of similarly situated persons, and on behalf of the Vi-Jon Employee Stock Ownership Plan,<br><br>Plaintiffs,<br><br>v.<br><br>GreatBanc Trust Company, Berkshire Fund VI, Limited Partnership, John G. Brunner, John G. Brunner Revocable Trust dated 06-09-1992, John and Janell Brunner Family Trust Dated May 27, 2020, Gerald Bowe, Jane Brock-Wilson, Gregory Delaney, Gerald Greiman, Sharlyn C. Heslam, Edward Kolodzieski, Lawrence J. LeGrand, Spencer Munay, Rich Koulouris, Keith Giypp, Scott Mekus, VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp.,<br><br>Defendants. | Case No. 1:22-cv-1296 |

**BERKSHIRE FUND VI, LIMITED PARTNERSHIP'S ANSWER TO PLAINTIFFS'**
**SECOND AMENDED COMPLAINT**

Defendant Berkshire Fund VI, Limited Partnership ("Berkshire"), by and through its attorneys, answers Plaintiffs' Amended Complaint as follows:

1.      Plaintiffs Paul Laidig, Peter Lewis, and Derek Kemp ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Vi-Jon Employee Stock Ownership Plan (the "Plan" or the "ESOP"), bring this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), against Defendants GreatBanc Trust Company ("GreatBanc"), Berkshire Fund VI, Limited Partnership ("Berkshire"), John G. Brunner ("Brunner"), the John G. Brunner Revocable Trust dated 06-09-1992 (the "1992 Brunner Trust"); the John and Janell Brunner Family Trust Dated May 27, 2020 (the "Brunner Family Trust") (together with the 1992 Brunner Trust, the "Brunner Trust" and, together with Brunner, the

"Brunner Defendants"), Gerald Bowe, Jane Brock-Wilson, Gregory Delaney, Gerald Greiman, Sharlyn C. Heslam, Edward Kolodzieski, Lawrence J. LeGrand, Spencer Murray, Rich Koulouris, Keith Grypp, Scott Mekus, VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp.[1] (collectively "Defendants").

**ANSWER:** The statements in this paragraph and its footnote are neither averments nor allegations to which a response is required.

2. As described herein, Defendants orchestrated a prohibited transaction with respect to the Plan in violation of ERISA, to the detriment of the Plan and its participants. Having acquired a controlling interest in Vi-Jon in 2006, Berkshire, a private-equity investor that typically purchases and sells businesses with relatively frequent turnover, found itself unable to unload its stake in the company after holding it for well over a decade. After failing for years to sell Vi-Jon at the inflated asking price of $400 million, Berkshire and the Brunner Defendants capitalized on the temporary surge in the sale of hand sanitizer (which Vi-Jon manufactures) during the early months of the COVID-19 pandemic to try again. But this time, rather than courting sophisticated buyers on the open market—who would negotiate at arm's-length and understand that the pandemic-related boost in hand-sanitizer sales was likely temporary and not a realistic predictor of long-term performance—Berkshire and the Brunner Defendants unloaded their interest onto the ESOP. This allowed Brunner and agents of Berkshire, in their capacity as Vi-Jon directors, to hand-select their counterparty in the transaction: GreatBanc. And GreatBanc played along and approved Brunner and Berkshire's above-market asking price on behalf of the Plan. In order to artificially support the $400 million price, Defendants relied on overly optimistic financial projections based on temporary market conditions that had already started to expire before the deal closed. Business has only continued to slow down since, leaving the company short of Defendants' targets while stuck paying 49-years of installments on Defendants' carelessly negotiated price.

---

[1] VJCS Holdings, Inc., Vi-Jon, Inc., and VJ Holding Corp. are referred to herein as the Vi-Jon Entity Defendants.

**ANSWER:** Berkshire denies the allegations in this paragraph.

3.　　Such transactions violate ERISA. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 675 (7th Cir. 2016) (absent "adequate consideration," the "purchase of employer stock by the Plan … [is] indisputably prohibited"). GreatBanc is liable as the fiduciary that "caused the ESOP to … overpay[] … for the stock," see *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 772 (4th Cir. 2019), and Berkshire and the Brunner Defendants are liable as "gratuitous transferee[s]" of excess proceeds of the unfair deal. *See Fish v. GreatBanc Tr. Co.*, 109 F. Supp. 3d 1037, 1043 (N.D. Ill. 2015). Plaintiffs bring this action to remedy this unlawful conduct, recover losses to the Plan, and obtain other appropriate relief as provided by ERISA.

**ANSWER:** With respect to the final sentence of this paragraph, Berkshire denies that it violated ERISA or engaged in any unlawful conduct. The remaining sentences of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

## JURISDICTION AND VENUE

4.　　Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.

**ANSWER:** Berkshire admits Plaintiffs have brought this action under 29 U.S.C. § 1132(a)(2) and (3) and that Plaintiffs seek the requested relief set forth in this paragraph, but denies Plaintiffs are entitled to such relief against Berkshire. With respect to the remaining allegations, this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

5. This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**ANSWER:** Berkshire admits the Court has subject matter jurisdiction over this case.

6. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because Defendant GreatBanc may be found in this district and underlying ERISA violations occurred in this district.

**ANSWER:** Berkshire denies that it committed any ERISA violations in this or any other district. Further responding, Berkshire admits that venue is proper in this district but denies the remaining allegations.

<u>**RELEVANT PARTIES**</u>

**THE COMPANY**

7. Vi-Jon is a private-label manufacturer of personal care products, including hand sanitizer. Vi-Jon's legacy companies are more than 100 years old.

**ANSWER:** Berkshire admits that during at least some of the class period, Vi-Jon Inc., through itself and/or its affiliates, acted as a private-label manufacturer of personal care products, including hand sanitizer. With respect to the remaining allegations, Berkshire lacks information sufficient to form a response and therefore denies said allegations.

8. In 2006, Berkshire acquired a controlling interest in Vi-Jon, Inc. from Brunner and merged it with a competitor under the Vi-Jon name. Brunner retained a minority interest in the company through the 1992 Brunner Trust.

**ANSWER:** Berkshire admits that it and Brunner (and others) indirectly acquired a controlling interest in Vi-Jon, Inc. through the formation of a holding company. Berkshire denies the remaining allegations in this paragraph.

9.     In August 20, 2020, in a series of related transactions (the "ESOP Transaction"), Berkshire and the Brunner Defendants sold Vi-Jon and the ESOP acquired it, making Vi-Jon a 100% employee-owned company.[2] The ESOP's participants are Vi-Jon's employees.

**ANSWER:**  Berkshire admits that through a series of transactions that took place in or around August 2020, the Vi-Jon Employee Stock Ownership Plan (the "ESOP" or the "Plan"), directly or indirectly, acquired an ownership interest in Vi-Jon, Inc.  Berkshire lacks information sufficient to form a belief as to whether the ESOP's participants are only current Vi-Jon, Inc. employees, and therefore denies same.  Berkshire admits that the Sellers in the ESOP Transaction (as that term is defined in the closing documents), directly or indirectly, owned some or all of Vi-Jon, Inc. before the ESOP Transaction.  Further responding, Berkshire denies the remaining allegations contained in the footnote to the extent that they are inconsistent with the closing documents executed in connection with the ESOP Transaction.  Berkshire lacks information sufficient to form a belief as to the remaining allegations in this paragraph and its footnote and therefore denies same.

10.     Vi-Jon is the "employer" of the Plan within the meaning of 29 U.S.C. § 1002(5), and the "plan sponsor" of the Plan within the meaning of 29 U.S.C. § 1002(16)(B). According to the Plan's annual report filed with the Department of Labor in 2021, Vi-Jon is also the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). In these capacities, Vi-Jon is a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(A) & (C).

**ANSWER:**  This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

---

[2] During the time between the ESOP effective date and the ESOP Transaction, Vi-Jon was organized as a Tennessee corporation, Vi-Jon Inc. Berkshire and the Brunner Defendants owned Vi-Jon Inc. through a Delaware holding company, VJCS Holdings Inc. In connection with the ESOP Transaction, the Vi-Jon operating entity was reestablished as a new Delaware limited liability company, Vi-Jon LLC, and the Plan's equity interest was issued through a new Delaware holding company, Vi-Jon Holding Inc. References to "Vi-Jon" throughout this complaint relate to the relevant entity or entities, as context requires.

**THE PLAN**

11. The Plan was established by Vi-Jon with an effective date of January 1, 2020.

**ANSWER:** Berkshire admits that the Plan contains an effective date of January 1, 2020.

12. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" within the meaning of 29 U.S.C. § 1107(d)(6).

**ANSWER:** This paragraph contains legal conclusions to which no response is required.

13. The Plan was designed to invest primarily in "qualifying employer securities," as defined in 29 U.S.C. § 1107(d)(5).

**ANSWER:** This paragraph contains legal conclusions to which no response is required.

14. Through the ESOP Transaction, the Plan acquired 1,203,711 shares of Vi-Jon stock, representing 100% of the issued shares, for $398,512,583. The Plan did not possess any capital prior to the ESOP Transaction and had to borrow 100% of the purchase price. Through refinancing contemplated as part of the ESOP Transaction, the Plan became indebted to the company for the outstanding principal and interest, to be paid over 49 years. Shares of stock are released to participant accounts from an undivided ESOP account in proportion to the amount of the total debt paid each year. The ESOP Transaction closed on or around August 20, 2020.

**ANSWER:** Berkshire denies the first sentence in this paragraph to the extent that it is inconsistent with the August 20, 2020 transaction documents. Further responding, Berkshire admits that the ESOP borrowed at least some funds used to acquire the shares. Further responding, Berkshire denies the remaining allegations to the extent that they are inconsistent with the Plan's terms and/or the August 20, 2020 transaction documents.

15. As of December 31, 2020, the Plan had 1,031 participants with shares allocated to their individual accounts. Pursuant to the terms of the Plan and ERISA, participants are eligible to receive a retirement benefit based on the value of the shares allocated to their individual accounts at retirement.

**ANSWER:** Berkshire lacks information sufficient to form a response as to the number of participants with shares allocated to individual accounts as of December 31, 2020, and therefore denies said allegations. Berkshire denies the remaining allegations to the extent that they are inconsistent with the terms of the Plan and/or ERISA.

## PLAINTIFFS

16. Plaintiff Paul "David" Laidig resides in Rockvale, Tennessee. Plaintiff Laidig has worked for Vi-Jon or its predecessor companies for 35 years. Plaintiff Laidig holds company shares allocated to his individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Berkshire lacks information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

17. Plaintiff Peter Lewis resides in Smyrna, Tennessee. Plaintiff Lewis has worked for Vi-Jon or its predecessor companies for 27 years. Plaintiff Lewis holds company shares allocated to his individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Berkshire lacks information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

18. Plaintiff Derek Kemp resides in Cahokia, Illinois. Plaintiff Kemp worked for Vi-Jon for 21 years as a chemical operator. Plaintiff Kemp holds company shares allocated to his

individual account in the Plan and is a vested participant in the ESOP as defined by 29 U.S.C. § 1002(7).

**ANSWER:** Berkshire lacks information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

### DEFENDANTS

#### BERKSHIRE

19.     Berkshire is a Massachusetts limited partnership. Berkshire is controlled by its general partner, Sixth Berkshire Associates LLC ("Berkshire GP"), a Massachusetts limited liability company.

**ANSWER:** Berkshire admits the allegations in this paragraph.

20.     Berkshire and Berkshire GP are affiliated with Berkshire Partners LLC ("Berkshire Firm"), a private equity investment firm based in Boston. The individual managers and members of Berkshire GP are managers and members of Berkshire Firm. Through Berkshire, Berkshire GP, and similar vehicles, Berkshire Firm members use their own capital and capital raised from other institutional investors (i.e., limited partners) to acquire privately held companies for investment purposes. Berkshire Firm investment vehicles typically hold a stake in a company for 3-7 years before selling that stake and distributing proceeds to members and other investors.[3]

**ANSWER:** Berkshire admits the allegations in the first sentence of this paragraph. Berkshire denies the remaining allegations in this paragraph.  Further responding, Berkshire notes that the Berkshire Firm (as defined in the Complaint) usually forms limited partnerships that raise funds from outside investors and then uses funds (from other vehicles that are not from the Berkshire Firm), as well as funds from those limited partnerships, to make investments.  Further

---

[3] Based on the 78 portfolio company investments for which Berkshire Firm identifies start and end dates on its website, the median amount of time between a Berkshire Firm investment vehicle acquiring its stake and exiting its stake was 5 years. In more than half of the 78 reported investments, the Berkshire Firm vehicle held its stake for between 3 and 7 years, and in 85% of all cases the Berkshire Firm vehicle held its stake for less than 10 years.

responding, Berkshire states that the Berkshire Firm's affiliated funds also invest in public companies and that there is no "typical" period in which the Berkshire Firm's affiliated funds hold a stake in a company. Berkshire denies the allegations in the accompanying footnote to the extent they are inconsistent with what is contained on its website.

21. In 2006, Berkshire acquired a majority stake in Vi-Jon's predecessors, Missouri's Vi-Jon Laboratories Inc. and Tennessee's Cumberland Swan Holdings Inc., and merged them under the Vi-Jon name. Berkshire also elected Vi-Jon's Board of Directors, including three directors employed by Berkshire Firm, at least one of which was also a member of Berkshire GP.

**ANSWER:** Berkshire denies the allegations in this paragraph.

22. Fourteen years later, in 2020, Berkshire still held its Vi-Jon stake and Board seats. Through the ESOP Transaction, Berkshire unloaded its stake. Upon information and belief, through financing and refinancing agreements made part of the ESOP Transaction, Berkshire received cash and/or notes for its interest in Vi-Jon.

**ANSWER:** Berkshire admits that in or around August 2020 it and others received cash and/or notes for its interest in Vi-Jon and that financing and/or refinancing agreements were included as part of the ESOP Transaction. Berkshire admits that it and Brunner had the right to designate directors pursuant to a Shareholders Agreement in effect during the relevant period. Berkshire denies the remaining allegations in this paragraph.

23. In connection with the ESOP Transaction, Berkshire was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because Berkshire held, directly or indirectly, 10% or more of the Plan employer's stock.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

**BRUNNER DEFENDANTS**

24.     Brunner is a natural person. Upon information and belief, he resides in Missouri.

**ANSWER:** Berkshire lacks information sufficient to respond to the allegations in this paragraph and therefore denies same.

25.     Brunner's grandfather founded Vi-Jon. Prior to 2006, Brunner was the controlling shareholder of Vi-Jon and a member of its Board of Directors.

**ANSWER:** Berkshire lacks information sufficient to respond to the allegations in this paragraph and therefore denies same.

26.     In 2006, Brunner sold a majority stake in Vi-Jon to Berkshire and retained a minority stake and his Board seat. Brunner held his minority stake through the 1992 Brunner Trust. Brunner is the settlor of the 1992 Brunner Trust and, upon information and belief, a trustee and beneficiary of the Brunner Trust.

**ANSWER:** Berkshire admits the accuracy of the first sentence of this paragraph to the extent that it applies to Brunner and/or any trusts affiliated with Brunner. Berkshire lacks information sufficient to respond to the remaining allegations in this paragraph.

27.     In 2020, Brunner still held his Vi-Jon stake through the 1992 Brunner Trust, the Brunner Family Trust, and his Board seat with VJCS Holdings, Inc., Vi-Jon, Inc., and Vi-Jon Holding, Inc. Through the ESOP Transaction, Brunner liquidated his Vi-Jon stake. Upon information and belief, through financing and refinancing agreements made part of the ESOP Transaction, the Brunner Trusts received cash and/or notes for its interest in Vi-Jon.

**ANSWER:** Berkshire lacks information sufficient to respond to the allegations in this paragraph and therefore denies same.

10

28.     In connection with the ESOP Transaction, the Brunner Trusts were each a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because, at relevant times, the Brunner Trusts held, directly or indirectly, 10% or more of the Plan employer's stock.[4]

**ANSWER:**  This paragraph and footnote contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

29.     Brunner was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because he was a director of the Plan's employer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

### VI-JON COMPANY DEFENDANTS

30.     From the beginning of 2020, up to the ESOP Transaction, Vi-Jon was owned and operated through two companies, Defendant VJCS Holdings, Inc. ("VJCS") and Defendant Vi-Jon, Inc. VJCS and Vi-Jon, Inc. had the same Board of Directors consisting of nine individuals: John G. Brunner, Gerald Bowe ("Bowe"), Jane Brock-Wilson ("Brock-Wilson"), Gregory Delaney ("Delaney"), Gerald Greiman ("Greiman"), Sharlyn C. Heslam ("Heslam"), Edward Kolodzieski ("Kolodzieski"), Lawrence J. LeGrand ("LeGrand"), and Spencer Murray ("Murray").

**ANSWER:**  Berkshire denies that "Vi-Jon" was "owned and operated" by both VJCS and Vi-Jon, Inc. Upon information and belief, Berkshire admits the remaining allegations in this paragraph.

---

[4] On his Personal Financial Disclosure Statement submitted in connection with his candidacy for Missouri governor in 2016, Brunner classified the Brunner Trust's interest in Vi-Jon as a 10% or more stake.

11

31. Defendant Bowe was chairman of the board of directors of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Bristol, New Hampshire.

**ANSWER:** Upon information and belief, Berkshire admits that Gerald Bowe was the chairman of the board of directors of Vi-Jon, Inc. and VJCS and lacks information sufficient to respond to the remaining allegations in this paragraph and therefore denies same.

32. Defendant Brock-Wilson was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, she resides in Boston, Massachusetts.

**ANSWER:** Upon information and belief, Berkshire admits the allegations in this paragraph.

33. Defendant Delaney was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Ponta Vedra Beach, Florida.

**ANSWER:** Berkshire admits that Gregory Delaney was a director of Vi-Jon, Inc. and VJCS and lacks information sufficient to respond to the remaining allegations in this paragraph and therefore denies same.

34. Defendant Greiman was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in St. Louis, Missouri.

**ANSWER:** Berkshire admits that Gerald Greiman was a director of Vi-Jon, Inc. and VJCS and lacks information sufficient to respond to the remaining allegations in this paragraph and therefore denies same.

35. Defendant Heslam was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, she resides in Weston, Massachusetts.

**ANSWER:** Upon information and belief, Berkshire denies that Sharlyn Heslam resides in Weston, Massachusetts and, upon information and belief, otherwise admits the allegations in this paragraph.

36. Defendant Kolodzieski was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in Manchester, Pennsylvania.

**ANSWER:** Berkshire admits that Edward Kolodzieski was a director of Vi-Jon, Inc. and VJCS and lacks information sufficient to respond to the remaining allegations in this paragraph and therefore denies same.

37. Defendant LeGrand was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, at the time of the ESOP Transaction, and after the ESOP Transaction for the surviving entity Vi-Jon Holding, Inc. Upon information and belief, he resides in St. Louis, Missouri.

**ANSWER:** Berkshire admits that Lawrence LeGrand was a director of Vi-Jon, Inc. and VJCS and lacks information sufficient to respond to the remaining allegations in this paragraph and therefore denies same.

38. Defendant Murray was a director of Vi-Jon, Inc. and VJCS prior to the ESOP Transaction, and at the time of the ESOP Transaction. Upon information and belief, he resides in San Diego, California.

**ANSWER:** Upon information and belief, Berkshire admits the allegations in this paragraph.

39.    GreatBanc signed an engagement letter with Vi-Jon, Inc. on June 1, 2020.

**ANSWER:** Berkshire admits that GreatBanc and Vi-Jon, Inc. entered into a trustee engagement agreement effective on June 1, 2020, and Berkshire denies the remaining allegations in this paragraph.

40.    On June 10, 2020, subsequent to GreatBanc's engagement by Vi-Jon, Inc., an entity called VJ Holding Corp. ("VJHC") was formed. GreatBanc also signed an engagement letter with VJHC on June 11, 2020.

**ANSWER:** Berkshire admits that on June 10, 2020, GreatBanc entered into a trustee engagement agreement that terminated and superseded the trustee engagement agreement between GreatBanc and Vi-Jon, Inc. on June 1, 2020, and Berkshire denies the remaining allegations in this paragraph.

41.    The board members of VJHC between June 10, 2020 and August 21, 2020 were Defendants Rich Koulouris ("Koulouris"), Keith Grypp ("Grypp"), and Scott Mekus ("Mekus" and together with Brunner, Bowe, Brock-Wilson, Delaney, Greiman, Heslam, Kolodzieski, LeGrand, and Murray the "Director Defendants"). VJHC had no assets or business.

**ANSWER:** Upon information and belief, Berkshire admits that Rich Koulouris, Keith Grypp, and Scott Mekus were board members of VJHC, and Berkshire denies the remaining allegations in this paragraph.

42.    Defendant Koulouris was Chief Executive Officer of VJHC and Vi-Jon, Inc. in 2020 and at the time of the ESOP Transaction.

**ANSWER:** Berkshire admits the allegations in this paragraph.

43.    Defendant Mekus was Chief Financial Officer in 2020 of VJHC and Vi-Jon, Inc. and at the time of the ESOP Transaction.

14

**ANSWER:** Berkshire admits the allegations in this paragraph.

44.     Defendant Grypp was Vice President, General Counsel and Secretary in 2020 of VJHC and Vi-Jon, Inc. and at the time of the ESOP Transaction.

**ANSWER:** Berkshire admits the allegations in this paragraph.

45.     VJHC and VJCS were merged into Vi-Jon Parent, Inc. on August 21, 2020. Vi-Jon Parent, Inc. was formed on August 19, 2020. The board members of Vi-Jon Parent, Inc. were Koulouris, Grypp, and Mekus. According to the Plan document, Vi-Jon Parent, Inc. was the primary sponsor of the ESOP.

**ANSWER:** Upon information and belief, Berkshire admits that Koulouris, Grypp, and Mekus were board members of Vi-Jon Parent, Inc. The Plan document speaks for itself and Berkshire denies the allegations in this paragraph to the extent they are inconsistent therewith. The remaining allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

46.     Each of the Director Defendants is individually a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(H) because each was a director of the entities (VJCS, VJHC, Vi-Jon, Inc., and Vi-Jon Parent, Inc.) that after a series of mergers, became the Plan's employer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

47.     As parties in interest, the Director Defendants each benefited from the unfair sale price through transfers of excess proceeds of the ESOP Transaction. See *Fish*, 109 F. Supp. 3d at 1043 ("[The] defendants [that] can be required to disgorge the proceeds of the [prohibited transaction include] a knowing, gratuitous transferee[.]").

15

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

48. The Director Defendants comprised the boards of directors for the entities that retained GreatBanc.

**ANSWER:** Berkshire admits that Vi-Jon, Inc. entered into a trustee engagement agreement with GreatBanc that was effective between June 1, 2020 and June 10, 2020, and that Brunner, Bowe, Brock-Wilson, Delaney, Greiman, Heslam, Kolodzieski, LeGrand, and Murray were on the board of directors of Vi-Jon, Inc., and Berkshire admits that on June 10, 2020, GreatBanc entered into a superseding trustee engagement letter with VJHC and, upon information and belief, that Koulouris, Grypp, and Mekus were on the board of directors of VJHC. Berkshire denies the remaining allegations in this paragraph.

49. As appointing fiduciaries, the Director Defendants had a duty to ensure that GreatBanc was qualified and would represent the best interest of the Plan. The corporate records of the Vi-Jon Entity Defendants, including board of directors' minutes, do not reflect a diligent investigation of GreatBanc's qualifications. There is an absence of evidence that the Vi-Jon Entity Defendants performed any evaluation of whether GreatBanc would protected the best interest of the Plan.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations. Further responding, and as explained in the Motion to Dismiss the Second Amended Complaint (Dkt #318), Berkshire states that Plaintiffs in this paragraph have conflated the Boards of three separate Vi-Jon related entities—VJ Holdings Corp., VJCS Holdings, Inc. and Vi-Jon, Inc.—and that only the Director Defendants who sat on the Board of VJ Holdings Corp. (Defendants Koulouris, Grypp and Mekus) maintained fiduciary duties to the ESOP during the ESOP Transaction.

50.     As appointing fiduciaries, the Director Defendants had an ongoing duty to monitor GreatBanc prior to the ESOP Transaction. The corporate records of the Vi-Jon Entity Defendants, including board of directors' minutes, do not reflect any monitoring of GreatBanc's activities. There is an absence of evidence that the Vi-Jon Entity Defendants performed any evaluation of whether GreatBanc was protecting the best interest of the Plan.

**ANSWER:**  This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.  Further responding, and as explained in other defendants' motions to dismiss the Second Amended Complaint, Berkshire states that Plaintiffs in this paragraph have conflated the Boards of three separate Vi-Jon related entities—VJ Holdings Corp., VJCS Holdings, Inc. and Vi-Jon, Inc.—and that only the Director Defendants who sat on the Board of VJ Holdings Corp. (Defendants Koulouris, Grypp and Mekus) maintained fiduciary duties to the ESOP during the ESOP Transaction.

51.     The Director Defendants comprised the Vi-Jon Boards of Directors prior to the ESOP Transaction, at the time of the ESOP Transaction, and in two instances after the ESOP Transaction. The Director Defendants had the fiduciary power to appoint and remove other Plan fiduciaries, to wit, the Plan's trustee. The Director Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

**ANSWER:**  This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations. Further responding, and as explained in other defendants' motions to dismiss the Second Amended Complaint, Berkshire states that Plaintiffs in this paragraph have conflated the boards of three separate Vi-Jon-related entities – VJ Holdings Corp., VJCS Holdings, Inc., and Ci-Jon, Inc. – and that only the Director

Defendants who sat on the Board of VJ Holdings Corp. (Defendants Koulouris, Grypp, and Mekus) maintained fiduciary duties to the ESOP during the ESOP Transaction.

### GREATBANC

52. GreatBanc is an Illinois corporation headquartered in Lisle, Illinois. GreatBanc is the surviving independent wing of a banking group that was largely subsumed by Citizens Bank in 2007. GreatBanc generates 90% of its revenue from services to employee benefit plans and promotes ESOP trustee services as its core line of employee benefits service.

**ANSWER:** Upon information and belief, Berkshire admits the allegations contained in the first and third sentences of this paragraph. Further responding, Berkshire lacks information sufficient to respond to the remaining allegations in this paragraph. To the extent a response is required, Berkshire denies said allegations.

53. The market for ESOP fiduciary services is competitive. Each year, GreatBanc competes for jobs doled out by a small group of firms that regularly advise business owners on company valuation and ESOP formation.

**ANSWER:** Berkshire lacks information sufficient to respond to this paragraph. To the extent Berkshire is required to respond to this paragraph, Berkshire denies the allegations contained therein.

54. Although technically a stand-in for the employee plan, an ESOP trustee is hired, paid, and may be removed by counterparties bent on closing a deal—and doing so at the highest possible price. An ESOP trustee's need to appease the customer to stay employed and earn repeat business from sell-side advisor firms "make[s] it … difficult for a fiduciary to maintain its independence from its counterparts[.]" *See Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 643 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019).

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

55. Vi-Jon, through its Board of Directors, appointed GreatBanc as the trustee of the Plan. As trustee, GreatBanc had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

**ANSWER:** Berkshire admits that on June 1, 2020, Vi-Jon, Inc., pursuant to a written agreement, committed to appointing GreatBanc to serve as the trustee of the Vi-Jon, Inc. Employee Stock Ownership Trust, and that agreement was terminated on June 10, 2020, when VJHC entered into an agreement with GreatBanc in which VJHC committed to appointing GreatBanc to serve as the trustee of the Vi-Jon, Inc. Employee Stock Ownership Trust. The remainder of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations and further denies the allegations in this paragraph to the extent they are contradicted by or inconsistent with the relevant agreements.

56. On or around August 20, 2020, GreatBanc approved the terms of the ESOP Transaction, including the $398 million sale price and 49-year loan term, on behalf of the Plan.

**ANSWER:** Berkshire admits that GreatBanc approved the terms of the ESOP Transaction. Further responding, Berkshire denies the remaining allegations to the extent that they are inconsistent with the transaction documents involving the ESOP Transaction.

57. In connection with the ESOP Transaction, GreatBanc acted as a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Plan's trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire admits that GreatBanc acted as a fiduciary of the Plan in connection with the ESOP Transaction.

58. As trustee, Defendant GreatBanc was also a named fiduciary of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), and under the terms of the written instruments under which the Plan was established and maintained.

**ANSWER:**This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire admits that GreatBanc acted as a fiduciary of the Plan in connection with the ESOP Transaction.

59. At the time Vi-Jon appointed GreatBanc as trustee, GreatBanc had been sued at least 10 times by private plaintiffs and the Department of Labor related to its role as trustee for ESOPs and in ESOP transactions. Information related to those lawsuits was publicly available at the time Vi-Jon appointed GreatBanc.

**ANSWER:**Berkshire lacks information sufficient to respond to this paragraph. To the extent Berkshire is required to respond to this paragraph, Berkshire denies the allegations contained therein.

## DEFENDANTS' ERISA VIOLATIONS

### THE STATUTE

60. ERISA prohibits transactions between a Plan and a party in interest, and transactions designed to benefit a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A) & (D). "[P]urchase of employer stock by [a] Plan … [is] indisputably [a] prohibited transaction[] within the meaning of [29 U.S.C. § 1106]." *Allen*, 835 F.3d at 675.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

61.     ERISA includes a qualified exception to this prohibition in employer stock cases. If the parties to the transaction can prove that the "the acquisition or sale by a plan of qualifying employer securities ... was for adequate consideration," 29 U.S.C. § 1108(e)(1), the prohibition does not apply. *See also Allen*, 835 F.3d at 675 ("The exceptions … include the acquisition of employer stock if it is for 'adequate consideration.'").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

62.     "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18). "Fair market value" is customarily considered to be the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset. *See Proposed Regulation Relating to the Definition of Adequate Consideration*, 53 Fed. Reg. 17637 (May 17, 1988).[5]

**ANSWER:** This paragraph and footnote contain legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

63.     A fiduciary is liable for causing a Plan to enter into a non-exempt prohibited transaction. *See* 29 U.S.C. § 1106(a) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [prohibited transaction]."); *see also Brundle*, 919 F. 3d at 772.

---

[5] Courts and practitioners customarily use this definition for guidance, although the regulation was never enacted. *See Brundle*, 919 F.3d at 770 ("DOL[] has proposed, but never enacted, regulations [defining "adequate consideration."] … [C]ourts look to these regulations for guidance[.]").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

64.     Any other person is liable for knowingly participating in and benefiting from a prohibited transaction. *See Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–45 (2000) ["ERISA] authorize[s] a civil action against a nonfiduciary who participates in a transaction prohibited by § [1106](a)(1)."].

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

65.     The ESOP Transaction was a prohibited transaction and, based on the information available to Plaintiffs at this stage, it is reasonable to infer that Defendants are liable to the Plan.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

### ABSENCE OF MARKET INTEREST IN VI-JON AT THE ESOP SALE PRICE

66.     Unlike most private owners who sell their company via an ESOP transaction, selling companies is the Berkshire Firm's business. In the last 35 years, the Berkshire Firm, through its affiliated investment vehicles, has sold interests in at least 78 companies. Yet, until Vi-Jon, the Berkshire Firm does not appear to have ever sold a company to an ESOP.[6]

**ANSWER:** Berkshire admits that Berkshire Partners LLC's affiliates have collectively sold interests in 78 or more companies over the past 35 years. Further responding, the statements contained in the footnote are neither averments nor allegations to which a response is required. Berkshire denies the remaining allegations in this paragraph.

---

[6] The companies on the Berkshire Firm's public list of closed investments, see s*upra* at note 2, do not appear in Department of Labor ESOP filings, nor did a search for press releases or other public statements regarding ESOP or "employee-owned" status of such companies yield any results.

22

67.     Berkshire attempted to sell Vi-Jon in its usual way. In 2014, Berkshire hired two investment banks to shop the company in the marketplace. *See* Lillian Rizzo and Gillian Tan, *Personal-Care Products Maker Vi-Jon Is Up for Sale: Owner Berkshire Partners Could Fetch Up to $400 million*, WALL STREET JOURNAL (Aug. 1, 2014 12:38 p.m. ET), https://www.wsj.com/articles/personal-care-products-maker-vi-jon-is-up-for-sale-1406911097. The target price in early discussions was $400 million. *See id.*

**ANSWER:** Berkshire admits that two investment banks were hired to consider a potential sale of Vi-Jon. Berkshire denies the remaining allegations contained in this paragraph.

68.     No buyer agreed to pay the price Berkshire wanted, despite the company being shopped around by investment banks.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

69.     Although the negotiations were not aired publicly, the challenge to finding a buyer willing to pay Berkshire's price was likely related to the company's high debt load and lack of pricing flexibility in the industry. In 2012, crediting rating agency Moody's downgraded Vi-Jon's credit rating, explaining that "lower profitability has lead to weak cash flow generation, increased leverage and a weaker liquidity profile." *See* MOODY'S INVESTORS SERVICE, *Moody's Downgrades Vi-Jon's CFR to B2* (Apr. 11, 2012), https://www.moodys.com/research/Moodys-Downgrades-Vi-Jons-CFR-to-B2--PR_242910 (hereinafter "*Moody's Downgrades Vi-Jon*"). Berkshire placed $245 million of debt on the company to buy it in 2006, and the company still owed at least $167 million in 2012. *See id.*; *see also* MOODY'S INVESTORS SERVICE, *Moody's Assigns First-Time Ratings to VJCS Acquisition* (July 27, 2006). According to Moody's, the company's debt-to-income ratio suffered over time as the company's operating costs increased without corresponding price increases. *See Moody's Downgrades Vi-Jon*. Moody's analyst predicted that Vi-Jon's credit and pricing issues would persist: "restoring credit metrics to historic

23

levels will be challenging and may take longer than management anticipates given the highly competitive nature of the private label business and lack of near-term pricing flexibility."[7]

**ANSWER:** Berkshire denies the allegations contained in the first sentence in this paragraph. With respect to the remaining allegations, Berkshire denies said statements to the extent that they are inconsistent with the source material cited therein. Berkshire lacks information sufficient to form a belief as to the allegations contained in the footnote and therefore denies said allegations.

70. Berkshire and the Brunner Defendants remained focused on selling the company after 2014 to no avail. Berkshire had long passed the end of its typical investment timeline. *See supra* at note 2. Based on reports from management, Plaintiffs Laidig and Lewis understood that Berkshire installed a new CEO from outside the company in March 2019 to improve its sale prospects. The new CEO brought consumer brands mergers and acquisitions experience. By 2020, Vi-Jon was among Berkshire's top five longest-held investments, and still no deal was in place.

**ANSWER:** Berkshire lacks information sufficient to form a belief as to what Plaintiffs "understood" with respect to Vi-Jon's executive management team and therefore denies same. Berkshire denies the remaining allegations contained in this paragraph.

### CREATING A BUYER

71. After failing to find a buyer at their desired price in the usual places, Berkshire and the Brunner Defendants turned to a new type of transaction: an ESOP. While Berkshire typically sits at arms-length from buyers in sales mediated through investment banks or public exchanges (IPOs), an ESOP transaction is something short of that. Berkshire and the Brunner Defendants created the buyer (the Plan) on their own terms and chose the agent that would sit on the other side of the table (GreatBanc).

---

[7] Moody's did not adjust its ratings of Vi-Jon's debt after the 2012 downgrade and withdrew its ratings of Vi-Jon altogether in 2013.

24

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

72.     Berkshire and Brunner were able to control the Plan formation and trustee hiring process through their control of the company's Board. As Vi-Jon's majority shareholder, Berkshire elected the Board members, and could replace Board members that frustrated its wishes. It does not appear, however, that such measures were necessary. The nine-member Board already consisted of five persons tied to ownership: three active Berkshire Firm members (Sharlyn C. Heslam, Managing Director and General Counsel at Berkshire; Jane Brock-Wilson, Senior Advisor at Berkshire; Spencer Murray, Principal at Berkshire), a professional corporate officer regularly installed by Berkshire as an officer of its portfolio companies, and Brunner. This seller-affiliated majority was able to steer the company toward the ESOP Transaction. Plaintiffs and other Plan participants were not invited to participate in the process.

**ANSWER:** Berkshire admits that Heslam[8], Brock-Wilson, and Murray were also affiliated with Berkshire and/or its affiliates.  Berkshire denies the remaining allegations in this paragraph.

**OVERRELIANCE ON A TEMPORARY SALE BOOST TO JUSTIFY THE ESOP SALE PRICE**

73.     The worldwide spread of COVID-19 slowly entered public consciousness at the end of 2019 and start of 2020. In January 2020, Vi-Jon ramped up hand sanitizer production to meet and anticipate the growing demand for hygiene products to slow the spread of the disease. In March 2020, transmission and public awareness of the disease escalated dramatically. By March 23, 2020, the U.S. Food and Drug Administration issued several policies designed to address shortages of hand sanitizer. *See Policy for Temporary Compounding of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency*, 85 Fed. Reg. 16370 (Mar. 23,

---

[8] Sharlyn Heslam is now known as Sharlyn Musslewhite.

25

2020) ("[C]onsumers and healthcare professionals are currently experiencing difficulties accessing alcohol-based hand sanitizers.").

**ANSWER:** Berkshire admits that Vi-Jon increased hand sanitizer production in 2020 due, in part, to increasing demand for some of its products. Berkshire denies the remaining allegations in this paragraph to the extent that they are inconsistent with the source material cited therein.

74. As a maker of hand sanitizer, Vi-Jon did well as the COVID-19 pandemic escalated and demand for hand sanitizer peaked in the first half of 2020. *See* U.S. INT'L TRADE COMM'N, *COVID-19 Related Goods: The U.S. Industry, Market, Trade, and Supply Chain Challenges*, 194-201 (Dec. 2020), https://www.usitc.gov/publications/332/pub5145.pdf (analyzing trajectory and peak of COVID-related demand for hand sanitizer and other goods) (hereinafter "*COVID-19 Related Goods*").

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

75. However, Vi-Jon's surge in profits was temporary. Plaintiffs Laidig and Lewis, as longtime workers in Vi-Jon's factories, recall that past public health emergencies brought periods of increased demand for the company's hygiene products followed by production slowdowns as conditions changed. The company's books should have shown the same rises and falls and cautioned that increased demand during public health emergencies is part of the business, not a paradigm shift. Further, by June 2020, many new competitors had entered an already competitive space, threatening Vi-Jon's market share and its ability to sustain increased profits over the long-term through higher prices. *See COVID-19 Related Goods, at 197-98; supra at* ¶ 47. By July 2020, scientific studies began to emerge that deemphasized surface contact as a COVID-19 transmission vehicle. *See, e.g.*, Emanuel Goldman, *Exaggerated risk of transmission of COVID-19 by fomites*, THE LANCET (July 3, 2020), https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30561-2/fulltext. These studies were widely reported at the time and altered prevailing assumptions, which should reasonably have been expected to lower demand for hand sanitizer

compared to the early months of the pandemic. *See, e.g.*, Derek Thompson, *Hygiene Theater Is a Waste of Time*, THE ATLANTIC (July 27, 2020), https://www.theatlantic.com/ideas/archive/2020/07/scourge-hygiene-theater/614599.[9] By certain indicators, the hand sanitizer market started to decline the next month, just as Defendants were finalizing the ESOP Transaction. *See COVID-19 Related Goods*, at 198-99 (finding that imports of hand sanitizer started to decline in August 2020).[10]

 **ANSWER:** Berkshire denies the allegations in this paragraph.

76. In short, there were a number of reasons to discount early pandemic profits when Defendants valued the company on August 20, 2020. This appears to be corroborated by the fact that no open market buyer materialized to buy Vi-Jon at Berkshire's preferred price in response to the boom market conditions of the early months of the pandemic.

 **ANSWER:** Berkshire denies that it did not properly account for "pandemic profits" when Vi-Jon was valued in August 2020. Berkshire denies the remaining allegations in this paragraph.

77. Berkshire and the Brunner Defendants, however, were able to push the deal through with their hand-picked trustee, GreatBanc. The price to be paid by the Plan to acquire Vi-Jon was determined between Defendants and their advisors. The company assisted by preparing financial projections. The $398 million price that Defendants settled on was 99.5% of the $400 million that Berkshire had previously failed to obtain from arms-length buyers.[11] *See supra* at ¶¶ 45-46.

---

[9] The fall after August 2020 was significant. Imports fell more than 75% by October 2020 from their July 2020 peak, and overall demand "dropped considerably" by December 2020. *See id.*

[10] *See also* Linsey C. Marr, *Yes, the Coronavirus Is in the Air*, NEW YORK TIMES (July 30, 2020), https://www.nytimes.com/2020/07/30/opinion/coronavirus-aerosols.html.

[11] Berkshire's obstinance is partly explained, but not excused, by the compensation structure and incentives in place for Berkshire Firm, Berkshire GP, and their individual managers. Private equity firms are generally paid 20% of the profits associated with the sale of portfolio companies—their primary form of compensation. *See* CONGRESSIONAL RESEARCH SERVICE, *Taxation of Carried Interest*, at 3 (July 9, 2020), https://crsreports.congress.gov/product/pdf/R/R46447. But these fees generally only accrue if the profits exceed some threshold, known as a hurdle. *Id.* Indeed, Berkshire Firm has disclosed that its managers and general partner entities receive a share of profits earned for all investors if those profits exceed a hurdle rate. *See* Lisa Ward, THE DEAL PIPELINE (Sept. 3, 2012), https://berkshirepartners.com/wp-content/uploads/2020/11/invested_final_locked.pdf. Thus, the potential receipt of millions of dollars in compensation by Berkshire's managers in connection with the sale

**ANSWER:** Berkshire admits that Vi-Jon provided financial projections in connection with the ESOP Transaction. Berkshire denies the fourth sentence in the footnote to the extent that it is inconsistent with source material cited therein. Berkshire denies the remaining allegations contained in this paragraph and its footnote.

78. Upon information and belief, Defendants failed to appropriately discount pandemic-driven sales figures in their valuation process. Instead, it appears that Defendants latched onto pandemic-driven sales figures to attempt to justify Berkshire's asking price, notwithstanding the temporary nature of the underlying market conditions. In a meeting with Vi-Jon's management in 2021, management informed a group of employees that included Plaintiff Lewis that 2020 profits were the company's "new baseline" for financial performance, including in its arrangements with creditors. This statement implies that the company created, and Defendants relied upon, financial forecasts that failed to appropriately discount temporary market conditions in the first half of 2020 in the process of negotiating the purchase price and arranging financing for the ESOP Transaction. Defendants' unreasonably optimistic forecasts resulted in an inflated sale price in excess of the fair market value of the company.

**ANSWER:** Berkshire lacks information sufficient to respond to the third sentence in this paragraph and therefore denies same. Berkshire denies the remaining allegations set forth in this paragraph.

**DEFENDANT'S KNOWLEDGE OF THE PROHIBITED TRANSACTION**

79. Defendants knew that the transaction was prohibited by ERISA. GreatBanc is a professional ESOP trustee and aware of ERISA's proscription against party-in-interest transactions involving employer stock.[12] While the underlying stock purchase agreement and

---

of Vi-Jon was likely dependent upon selling Vi-Jon for a high-enough price to exceed Berkshire GP's compensation hurdle.

[12] GreatBanc typically attempts to shift its fiduciary risk back to the sellers or the sponsor company to the maximum extent possible without violating ERISA's anti-exculpatory provision. *See* 29 U.S.C. § 1110(a)). The precise location of that line is the subject of recurring dispute. *See, e.g.*, *McMaken v. GreatBanc Tr. Co.*, 2019 WL 1468157, at *5

28

valuation documents are not available to Plaintiffs, it is customary for such documents to acknowledge that the ESOP transaction is a prohibited transaction, before reciting the claimed "adequate consideration" exception. Each Defendant likely reviewed and affirmed documents containing similar acknowledgements in this case.

**ANSWER:** Berkshire denies the ESOP Transaction was prohibited by ERISA. Upon information and belief, Berkshire admits GreatBanc is a professional ESOP trustee and aware of ERISA's proscription against certain party-in-interest transactions involving employer stock, but denies the ESOP Transaction was prohibited by ERISA. Berkshire denies that the underlying stock purchase agreement and valuation documents are not available to Plaintiffs, and Berkshire lacks information to respond to the remaining allegations and therefore denies same. **[double checking accuracy with GreatBanc]**

80. It also reasonable to infer that Berkshire and the Brunner Defendants knew that the sale price exceeded fair market value. Berkshire, through Berkshire GP and its individual managers that also manage Berkshire Firm, is in the business of valuing private companies. Earning attractive returns for its members and investors depends on Berkshire's ability to create favorable financial metrics in its portfolio companies and then find buyers that will place a high value on those metrics. Despite its efforts here, Berkshire failed to find a Vi-Jon buyer using its typical means. Berkshire thus knew that the market's appraisal of the underlying financial metrics did not support its asking price, yet proceeded to extract that price from the ESOP anyway.

**ANSWER:** Berkshire admits that its business includes valuing private companies. Berkshire denies the remaining allegations in this paragraph.

81. Berkshire also was in position to control the ESOP valuation process and select the financial metrics that would be considered. Berkshire Firm had three active members on the

---

(N.D. Ill. Apr. 3, 2019); *Hurtado v. Rainbow Disposal Co., Inc.*, 2018 WL 3372752, at *16 (C.D. Cal. July 9, 2018); *Harris v. GreatBanc Tr. Co.*, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013).

company's Board, plus a longtime agent that previously served as Vi-Jon's CEO and as the CEO of other Berkshire portfolio companies. Berkshire also installed a new CEO for the purpose of steering the company toward a sale. Berkshire could, and upon information and belief did, create or approve financial forecasts that failed to reasonably discount temporary market conditions.

**ANSWER:** Berkshire admits that Heslam, Brock-Wilson, and Murray were also affiliated with Berkshire and/or its affiliates. Berkshire denies the remaining allegations in this paragraph.

82. The Brunner Defendants also had knowledge of failed sales attempts and the ESOP valuation process. Any proposed sale of the company necessarily implicated the Brunner Trusts' minority stake. The Brunner Trusts, through their agent Brunner, were informed of failed attempts to the sell the company. Brunner also maintained a relationship with Berkshire Firm outside of Vi-Jon and invested Brunner Trust funds in other Berkshire investment vehicles. Brunner also served continuously on Vi-Jon's Board.

**ANSWER:**Berkshire lacks information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

83. The members of the board, including Brunner, had additional knowledge of failed sales attempts, received regular financial reports regarding the company, participated in the creation and administration of the ESOP, and was in [sic] position to create or approve financial forecasts used in connection with the ESOP valuation process.

**ANSWER:** Berkshire lacks information sufficient to form a belief as to the allegations in this paragraph and therefore denies same.

### HARM TO PLAINTIFFS AND THE CLASS

84. In leveraged deals like the ESOP Transaction, if the "purchase price [i]s inflated and the debt load [i]s unsustainable", the "losers" are the "employee participants in the new … ESOP." *Chesemore v. Fenkell*, 829 F.3d 803, 807 (7th Cir. 2016).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies the allegations.

85. Even if Vi-Jon could have fortuitously met Defendants' overly optimistic performance expectations after the ESOP Transaction, participants would be harmed by the inflated sale price. It takes more capital just to pay off the financing required to obtain the shares, limiting the funds that can be used to make the company (and thus, participants' shares) more valuable. It also takes longer to pay off the debt, which means that fewer shares are released to participants each year. Under the current term, Plan participants will not fully own the company until well after its youngest employees pass retirement age.

**ANSWER:** Berkshire denies the allegations in this paragraph.

86. The company, however, has struggled to meet Defendants' unreasonable expectations, further endangering participants' interests. In a late 2021 meeting with management attended by Plaintiff Lewis, management informed employees that the company was short of its 2021 performance expectations under key financial metrics. A shortfall would allow the company's lenders to raise its interest rates—protecting the lenders' investment at the expense of the equity holders, the Plan and its participants.

**ANSWER:** Berkshire denies that it or any other Defendants created unreasonable expectations in connection with the ESOP Transaction. Berkshire lacks information to form a belief as to the remaining allegations contained in this paragraph and therefore denies same.

87. Other recent events have caused Plaintiffs concern. In 2022, management informed employees, including Plaintiffs Laidig and Lewis, that the company is selling significant assets including real estate and equipment and leasing them back from the buyers. Management has given Plaintiffs the impression that such transactions are aimed at appeasing lenders after the company fell behind financial performance expectations in 2021. Plaintiffs are concerned that the company

is already on defense due to the excessive sale price and debt load and is being forced to make decisions that will detract from the long-term viability of the company and value of their shares.

**ANSWER:** Berkshire denies that the ESOP Transaction involved an excessive sale price or violation ERISA in any way. Further responding, Berkshire lacks information to form a belief as to the remaining allegations contained in this paragraph and therefore denies same.

88. Plaintiffs are further discouraged by what they see around the factory. An entire 750,000 square foot warehouse has been full of inventory at times, and the company has paused production multiple times due to the excess supply.[13] Worker turnover is also high, as the company appears to have little flexibility to increase employee compensation in a tight labor market. The ESOP participants now bear the risk that the company will not sustain sufficient value to provide the retirement benefits that the Plan was supposed to create.

**ANSWER:** Berkshire denies that the ESOP Transaction did not result in sufficient value to Plan participants and Berkshire denies that the ESOP Transaction violated ERISA in any way. Further responding, Berkshire lacks information to form a belief as to the remaining allegations contained in this paragraph and therefore denies same.

## PLAN-WIDE RELIEF

89. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the Plan pursuant to this statutory provision.

---

[13] This is consistent with media reporting on retail supply of hand sanitizer after demand subsided. *See* Jaewon Kang, *Retailers Couldn't Stock Hand Sanitizer Fast Enough. Now They Can't Give It Away*, WALL STREET JOURNAL (May 20, 2021 11:00 a.m. ET), https://www.wsj.com/articles/america-is-awash-in-hand-sanitizer-11621522829; Petula Dvorak, *Last year, hand sanitizer was a precious commodity. Now, they're giving it away*, WASHINGTON POST (June 24, 2021 2:02 p.m. ET), https://www.washingtonpost.com/local/last-year-hand-sanitizer-was-a-precious-commodity-now-theyre-giving-it-away/2021/06/24/351f1278-d504-11eb-9f29-e9e6c9e843c6_story.html.

**ANSWER:** Berkshire admits that Plaintiffs have brought a putative class action against Defendants, but denies that Plaintiffs are entitled to certify a class or obtain any relief individually or on behalf of a class. Berkshire denies the remaining allegations contained in this paragraph.

90. Plaintiffs seek recovery for injuries to the Plan sustained as a result of the prohibited transactions during the statutory period and seek equitable relief on behalf of the Plan as a whole.

**ANSWER:** Berkshire denies the allegations in this paragraph.

## CLASS ACTION ALLEGATIONS

91. Plaintiffs additionally seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

**ANSWER:** Berkshire admits that Plaintiffs have brought a putative class action against Defendants, but denies that Plaintiffs are entitled to certify a class or obtain any relief individually or on behalf of a class.

92. Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the Vi-Jon Employee Stock Ownership Plan at any time since its inception, excluding Defendants, the directors of Vi-Jon or of any entity in which a Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded person.

**ANSWER:** Berkshire admits that Plaintiffs have brought a putative class action against Defendants, but denies that Plaintiffs are entitled to certify a class or obtain any relief individually or on behalf of a class.

93. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. The Plan had over 1,000 participants as of the end of 2020.

33

**ANSWER:** Berkshire lacks information sufficient to respond to the second sentence of this paragraph and therefore denies same. Berkshire denies the remaining allegations contained in this paragraph.

94. <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

95. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

96. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

    a. Whether GreatBanc served as a trustee in the Plan's acquisition of Vi-Jon stock;

    b. Whether GreatBanc is a fiduciary with respect to the Plan;

    c. Whether GreatBanc caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Vi-Jon stock and take a loan from parties in interest;

    d. Whether GreatBanc engaged in a good faith valuation of Vi-Jon stock in connection with the ESOP Transaction;

34

e.  Whether GreatBanc caused the Plan to pay more than fair market value for Vi-Jon stock;

f.  Whether the ESOP Transaction satisfied the "adequate consideration" exemption in all respects;

g.  Whether Vi-Jon was a party in interest and gave a loan to the Plan;

h.  Whether Berkshire and the Brunner Defendants and other potential parties, were parties in interest;

i.  Whether Berkshire and the Brunner Defendants and other potential parties, knowingly participated in the prohibited stock transaction;

j.  Whether Berkshire and the Brunner Defendants, and other potential parties (Does), are liable as transferees of proceeds of the ESOP Transaction;

k.  The proper form of equitable and injunctive relief; and

l.  The proper measure of monetary relief.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

97.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

98.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as removal of GreatBanc as a fiduciary, rescission or amendment of the ESOP Transaction, or appointment of an independent fiduciary would be dispositive of non-party participants' interests. The accounting and restoration of property to the Plan that would be

35

required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

99. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**ANSWER:** Berkshire denies the allegations contained in this paragraph.

100. Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**ANSWER:** The statement contained in this paragraph is neither an averment nor an allegation to which a response is required.

**COUNT I**
**Causing Prohibited Transactions**
**29 U.S.C. § 1106(a)**
**Against GreatBanc**

36

101.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**  Berkshire incorporates its responses from the foregoing paragraphs as if fully stated herein.

102.    The ESOP Transaction constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a direct or indirect sale or exchange of any property with parties in interest, Berkshire and the Brunner Defendants. In the alternative, the ESOP Transaction constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a direct or indirect sale or exchange of any property with a party in interest, Vi-Jon. In the alternative, the ESOP Transaction violated 29 U.S.C. § 1106(a)(1)(D) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a transaction that constituted the direct or indirect use of assets of the Plan for the benefit of parties in interest, Berkshire and the Brunner Defendants.

**ANSWER:** Berkshire denies the allegations in this paragraph.

103.    The ESOP Transaction also constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(B) because GreatBanc, a Plan fiduciary, caused the Plan to enter into a credit transaction with a party in interest, Vi-Jon.

**ANSWER:** Berkshire denies the allegations in this paragraph.

104.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Berkshire and the Brunner Defendants, of any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to Berkshire and the Brunner Defendants as payment for Vi-Jon stock. The ESOP Transaction also violated 29 U.S.C. § 1106(a)(1)(D) because GreatBanc, a Plan fiduciary, caused the Plan to engage in a transaction that constituted the direct

or indirect use of assets of the Plan for the benefit of parties in interest, Berkshire and the Brunner Defendants.

**ANSWER:**This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Berkshire denies said allegations.

105.    Although Plaintiffs are not required to plead facts to negate Defendants' anticipated "adequate consideration" defense, see *Allen*, 835 F.3d at 676 ("We now hold squarely that … exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them."), the circumstances around the ESOP Transaction show that the sale price was excessive and is causing ongoing harm to the company, the Plan, and Plan participants. The Plan and the company must bear the excessive price through nearly 50 years of debt. The excessive price and resulting debt adversely affect the value of participants' retirement benefits. GreatBanc did not conduct an adequate, good faith, investigation into the value of the stock.

**ANSWER:** Berkshire denies the allegations in this paragraph.

106.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any improper profits, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:**  This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

107.    ERISA, 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:** Berkshire admits Plaintiffs seek the requested relief set forth in this paragraph, but denies Plaintiffs are entitled to any such relief against Berkshire.

108.    GreatBanc caused losses to the Plan resulting from the above-mentioned prohibited transactions, and is liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:** Berkshire denies the allegations in this paragraph.

## COUNT II
**Prohibited Transaction Transferee Liability**
**29 U.S.C. § 1132(a)(3)**
**Against Berkshire and the Brunner Defendants**

109.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:** Berkshire incorporates its responses from the foregoing paragraphs as if fully stated herein.

110.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" The Supreme Court and courts in this district have held that such "appropriate equitable relief" includes recovering proceeds of a prohibited transaction from a knowing participant in the transaction. *See Harris Trust*, 530 U.S. 238; *Fish*, 109 F. Supp. 3d at 1043.

**ANSWER:**  This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

111.    Berkshire and the Brunner Trusts, and Brunner indirectly through his interest in the Brunner Trusts, knowingly benefited from the ESOP Transaction by receiving cash or notes in exchange for their equity in Vi-Jon. Berkshire and the Brunner Defendants knew that their receipt of such consideration was caused by, and conditioned upon, the Plan buying Vi-Jon for $398

million—a prohibited transaction. *See supra* at ¶¶ 55, 57-60, 79-85. Berkshire and the Brunner Defendants orchestrated the ESOP Transaction for their own benefit after failing to sell Vi-Jon for the same price in the marketplace. Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Berkshire and the Brunner Defendants are liable to the Plan for undue proceeds of the ESOP Transaction.

**ANSWER:** Berkshire denies in the allegations in this paragraph.

**COUNT III**
**Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a), Against the Director Defendants and the Vi-Jon Entity Defendants Regarding the ESOP Transaction**

112. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Berkshire incorporates its responses from the foregoing paragraphs as if fully stated herein.

113. ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

114. ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

115. ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

116. The Director Defendants were members of the boards of the Vi-Jon Entity Defendants with authority to appoint and remove a fiduciary ESOP Committee and the fiduciary trustee and to control the fiduciary Plan Administrator, and thus each Director Defendant was a fiduciary with respect to the Plan at the time of the ESOP Transaction.

**ANSWER:** Berkshire denies the allegations in this paragraph.

117. Given the sale of their company to their employees through their company's ESOP; their positions as directors (and as an officer in the case of Bowe, Koulouris, Mekus and Grypp); their involvement in conceiving of, facilitating, and executing the ESOP Transaction; their approval of board resolutions and consents to facilitate the ESOP Transaction; their access to company financial information and provision of such information to the Trustee; and their appointment of the Trustee, the Director Defendants knew or should have known of the fiduciary breaches of the Trustee in connection with its faulty due diligence and imprudent approval of the stock purchase for more than fair market value, knowingly participated in the Trustee's fiduciary breaches, and enabled the Trustee's fiduciary breach by themselves failing to monitor or to take action on information known to them, as required of an appointing fiduciary.

**ANSWER:** Berkshire denies in the allegations in this paragraph.

41

118.    As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), the Director Defendants are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

119.    The Director Defendants failed to make reasonable efforts to remedy the Trustee's violations of ERISA associated with the ESOP Transaction despite knowing of such violations, such as preventing the Plan's overpayment, reimbursing the Plan, or bringing the matter to the attention of the Secretary of Labor.

**ANSWER:** Berkshire denies that it knew that the Trustee violated ERISA and denies the remaining allegations in this paragraph.

120.    There was publicly available information at the time the Vi-Jon Entity Defendants, through their board of directors, appointed GreatBanc as trustee that GreatBanc had been sued numerous times by both private plaintiffs and the Department of Labor related to its role as trustee in ESOP transactions.

**ANSWER:** Berkshire lacks information sufficient to admit or deny the allegations in this paragraph and to the extent an answer is required, Berkshire denies the allegations in this paragraph.

121.    There is no evidence that any of the Director Defendants sufficiently vetted GreatBanc before the Vi-Jon Entity Defendants retained GreatBanc.

**ANSWER:** Berkshire denies in the allegations in this paragraph.  Further responding, and as explained in the Motion to Dismiss the Amended Complaint (Dkt #__), Berkshire states that Plaintiffs in this paragraph have conflated the Boards of three separate Vi-Jon related entities—VJ Holdings Corp., VJCS Holdings, Inc. and Vi-Jon, Inc.—and that only the Director Defendants who

42

sat on the Board of VJ Holdings Corp. (Defendants Koulouris, Grypp and Mekus) maintained fiduciary duties to the ESOP during the ESOP Transaction.

122.    There are no minutes reflecting that the Director Defendants or Vi-Jon Entity Defendants adequately monitored GreatBanc during the ESOP Transaction process.

**ANSWER:** Berkshire denies that GreatBanc was not adequately monitored during the ESOP Transaction and Berkshire lacks information sufficient to admit or deny whether there are any minutes reflecting that Brunner, Bowe, Brock-Wilson, Delaney, Greiman, Heslam, Kolodzieski, LeGrand, Murray, Koulouris, Grypp, Mekus, VJCS Holdings, Inc., Vi-Jon, Inc., and/or VJ Holding Corp. adequately monitored GreatBanc during the ESOP Transaction process and to the extent a response is required, Berkshire denies the allegation. Certain allegations in this paragraph allege legal conclusions that require no response, but to the extent a response is required, Berkshire denies them

123.    The Director Defendants and Vi-Jon Entity Defendants created a structure in which GreatBanc would be retained by an entity with no assets and no business

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

124.    Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), the Director Defendants are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

**ANSWER:** This paragraph contains legal conclusions for which no response is required. To the extent a response is required, Berkshire denies said allegations.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel;

B. Declare that GreatBanc caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(A), (B), & (D);

C. Declare that such prohibited transactions did not satisfy all requirements for exemption under ERISA;

D. Declare Berkshire and the Brunner Defendants knowingly participated in such prohibited transactions in violation of ERISA;

E. Declare that the Members of the Board breached their fiduciary duties under ERISA to the Plan and the class members;

F. Declare that the Members of the Board are liable as co-fiduciaries for GreatBanc's breaches of fiduciary duty;

G. Remove GreatBanc as trustee of the Plan, to be replaced by an independent fiduciary;

H. Order GreatBanc to make good to the Plan, and/or any successor trust(s), losses resulting from violations of ERISA;

I. Impose a constructive trust on all payments received by the Berkshire and the Brunner Defendants as a result of the ESOP Transaction, and order Berkshire and the Brunner Defendants to account for such payments to the Plan;

J. Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries;

K. Remove the Members of the Board as Plan fiduciaries, enjoin them from acting as a fiduciary for any employee benefit plan that covers or includes any Vi-Jon employees or members of the Class, and appoint an independent fiduciary in place of the Members of the Board;

L. Approve a fair and equitable plan of allocation of any proceeds recovered on behalf of the Plan such that the Plan and its participants will be made whole;

M. In the alternative to Paragraphs H-K, order rescission of the ESOP Transaction;

N. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

O. Award prejudgment and post-judgment interest; and

P. Award such other and further relief as the Court deems just and equitable.

**ANSWER:** Berkshire denies that Plaintiffs are entitled to any of the above-stated relief.

## AFFIRMATIVE DEFENSES

Berkshire hereby sets forth the affirmative defenses on which it may rely in this matter. In referring to the following affirmative defenses, Berkshire does not intend to concede that it has the burden of proof relative to the matter asserted therein, or that any of the matters referred to is not a part of Plaintiffs' affirmative burden of proof.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Berkshire did not directly, indirectly, or proximately cause or contribute to any alleged damage, loss, or injury sustained by Plaintiffs or by the ESOP.

### SECOND AFFIRMATIVE DEFENSE

While Plaintiffs have not identified which specific prohibited transaction rules they contend were violated, the transaction at issue in this matter qualifies for one or more exceptions to the prohibited transaction rules under ERISA, including exemptions in ERISA contained at §§408(b)(2), (b)(3), (b)(12) and (b)(17) and 408(e), and by other relevant provisions of ERISA and regulations promulgated thereunder.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs lack standing to pursue the relief sought in their Complaint.

### FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs raise in this lawsuit issues, facts, allegations, or claims which were not presented with any claim and appeal to the ESOP Plan Administrator, Plaintiffs have failed to exhaust administrative remedies.

### FIFTH AFFIRMATIVE DEFENSE

45

To the extent there was any violation of ERISA (and there was not), it was without knowledge or intent.

## SIXTH AFFIRMATIVE DEFENSE

To the extent there was any violation of ERISA (and there was not), Plaintiffs are not entitled to the equitable relief they seek.

## RESERVATION OF RIGHTS

Berkshire presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, yet unstated affirmative defenses. Berkshire reserves the right to assert additional affirmative defenses in the event discovery or further investigation indicates that asserting additional affirmative defenses would be warranted.

WHEREFORE, Berkshire prays for judgment as follows:

1. That the Court enter judgment in favor of Berkshire, and against Plaintiffs;

2. That Plaintiffs take nothing by their Complaint;

3. For costs of suit herein, including reasonable attorneys' fees;

4. For such other and further relief as the Court deems just and proper.

Dated: June 4, 2025　　　　　　　　　Respectfully submitted,

//s/     *J. Christian Nemeth*

MCDERMOTT WILL & EMERY LLP

J. Christian Nemeth
Theodore M. Becker
444 W. Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: *tbecker@mwe.com*
Email: *jcnemeth@mwe.com*

46

*Counsel for Defendant Berkshire Fund VI, L.P.*

## CERTIFICATE OF SERVICE

I, J. Christian Nemeth, hereby certify that, on June 4, 2025, I caused the foregoing *Berkshire Fund VI Limited Partnership's Answer to Plaintiffs' Amended Complaint* to be filed electronically using this Court's CM/ECF system, thereby serving such filing on all registered participants identified in the Notice of Electronic Filing in this matter on this date.

/s/    *J. Christian Nemeth*
J. Christian Nemeth

47